# Exhibit A

Exhibit A

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| AROR-ARK ARK O'DIAH<br><br>*Plaintiff(s)*<br>v.<br>CHIEF JUSTICE JOHN G. ROBERTS, ET AL.<br><br>*Defendant(s)* | Civil Action No. 1:23-cv-00653 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* RICHARD WALSH, ESQ.
ATTN: HORING WELIKSON ROSS & DIGRUGILLIERS, P.C.
11 HILLSIDE AVENUE
WILLISTON PARK, NY 11596

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: AROR-ARK ARK O'DIAH, PRO SE PLAINTIFF.
C/O: TIMESPEED WORLDWIDE
3403 FOSTER AVE., APT 4B
BROOKLYN, NY 11210-6439

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: APR 2 1 2023

*Signature of Clerk or Deputy Clerk*

AO 85 (Rev. 02/17) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge

# UNITED STATES DISTRICT COURT

for the

| | | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| *Defendant* | ) | |

## NOTICE, CONSENT, AND REFERENCE OF A CIVIL ACTION TO A MAGISTRATE JUDGE

*Notice of a magistrate judge's availability.* A United States magistrate judge of this court is available to conduct all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of a final judgment. The judgment may then be appealed directly to the United States court of appeals like any other judgment of this court. A magistrate judge may exercise this authority only if all parties voluntarily consent.

You may consent to have your case referred to a magistrate judge, or you may withhold your consent without adverse substantive consequences. The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with your case.

*Consent to a magistrate judge's authority.* The following parties consent to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.

| *Printed names of parties and attorneys* | *Signatures of parties or attorneys* | *Dates* |
|---|---|---|
| | | |
| | | |
| | | |

### Reference Order

**IT IS ORDERED:** This case is referred to a United States magistrate judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Date: ____________

*District Judge's signature*

*Printed name and title*

Note: Return this form to the clerk of court only if you are consenting to the exercise of jurisdiction by a United States magistrate judge. Do not return this form to a judge.

RECEIVED
MAR - 9 2023
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA, WASHINGTON, DC**

-------------------------------------------------------------------x

AROR-ARK ARK O'DIAH,

Plaintiff,

Case: 1:23-cv-00653 Jury Demand
Assigned To : Moss, Randolph D.
Assign. Date : 3/9/2023
Description: Pro Se. Gen Civ (F-Deck)

V.

**JURY SPEEDILY TRIAL DEMANDED.**

CHIEF JUSTICE JOHN G. ROBERTS;
UNITED STATES SMALL BUSINESS ADMINISTRATION /A/K/A/ SBA;
SBA ADMININSTRATOR ISABEL CASILAS GUZMAN;
NYC SBA REGIONAL DISTRICT DIRECTOR BETH GOLDBERG;
SEPTEMBER 11 VICTIM COMPENSATION FUND SPECIAL
MASTER AUGUST FLENTJE; SEPTEMBER 11 VICTIM
COMPENSATION FUND OPERATION DIRECTOR KIMBERLY
C. BROWN; SOCIAL SECURITY ADMINISTRATION /A/K/A/ SSA,
AND SSA COMMISSIONER DR. KILOLO KUAKAZI;
UNITED STATES POSTAL SERVICE POSTMASTER GENERAL;
CHIEF JUDGE DEBRA ANN LIVINGSTON AND
ALL JUDGE IN THE U.S. COURT OF APPEALS FOR THE
SECOND CIRCUIT; JUDGE VALERIE CAPRONI AND ALL JUDGES
IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF NEW YORK IN MANHATTEN IN NEW YORK CITY;
JUDGE PAMELA C. CHEN AND ALL JUDGES IN THE U.S.
DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK;
JUDGE WILLIAM H. ALSUP AND ALL JUDGES IN THE U.S.
DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA IN SAN FRANCISCO AND OAKLAND IN
CALIFORNIA; FORMER CHIEF JUDGE THOMAS AND ALL
JUDGES IN THE U.S. COURT OF APPEALS FOR THE NINTH
CIRCUIT IN SAN FRANCISCO IN CALIFORNIA;
RETIRED JUDGE RANDALL ENG, AND RETIRED JUDGE
ARTHUR COOPERMANN AND ALL JUDGES IN THE NEW YORK STATE
SUPREME COURT APPELLATE DIVISION SECOND DEPARTMENT IN
BROOKLYN IN KINGS AND QUEENS COUNTIES IN NEW YORK;
NEW YORK CITY and NYC COMPTROLLER SCOTT M. STRINGER,
And NEW YORK CITY LAW DEPARTMENT CORPORATION COUNSEL
HONORABLE SYLVIA O. HIND-RADIX and NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT;
WESTERN UNION; GARY M. KAVULICH, ESQ.; AARP, AND BARCLAYS;

NEW YORK STATE, and NEW YORK STATE DEPARTMENT OF
TEMPORARY AND DISABILITY ASSISTANCE, and
NEW YORK STATE EXECUTIVE OFFICE OF CRIME VICTIM SERVICES;
T-MOBILE; STAPLE, INC.; NYU LANGONE HEALTH PULMONARY AND
SLEEP MED-BKLYN AND BORIS SAGALOVIC, MD;
WORLD TRADE CENTER HEALTH PROGRAM, AND CDC-NATIONAL
INSTITUTTE OF OCCUPATIONAL SAFETY AND HEALTH, and DIRECTOR;
NYC HEALTH + HOSPITALS/MCKINNEY; JAMAICA HOSPITAL MEDICAL
CENTER; DR. GLENN J. JAKOBSEN; DR. ZANE HOFFMANN;
NEW YORK STATE COMMISSIONER OF THE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION;
LOGISTICS HEALTH INCORPORATED; WILLAIM STREET CLINIC;
JPMORGAN CHASE BANK, N.A.; FedEx EXPRESS; OPTIMUM CABLE;
CSC HOLDINGS, LLC, A SUBSIDIARY OF ALTICE USA, INC.; CITY MD
BROOKLYN HEIGHT; FULTON VISION CENTER, LLC and OWNER;
RENAISANCE EQUITY HOLDINGS LLC, AND OWNER, and FLATBUSH
GARDENS; CARECREDIT /A/K/A/ CARECREDIT/SYNCHRONY BANK;
SYNCHRONY BANK; BRIAN DOUBLES; RICHARD WALSH, ESQ;
ALEXANDRA E. CLAUS, ESQ; AMY SECTER, ESQ; DARIN BILLIG, ESQ;
CURTIS JACKSON, ESQ; PARK & NGUYEN; STEVEN P. ORLOWSKI, ESQ;
CAPITAL ONE BANK, N.A.; NASSAU COUNTY, and NASSAU COUNTY
CHILD SUPPORT COLLECTION UNIT; TRANS UNION; EXPERIAN;
EQUIFAX CREDDIT INFORMATION SERVICES; NEW YORK-PRESBYTERIAN
HOSPITAL/COLUMBIA, and NEW YORK -PRESBYTERIAN HOSPITAL-
NEW YORK WEILL CORNELL MEDICAL CENTER; ALL THE JUDGES IN THE
NEW YORK STATE SUPREME COURTS IN KINGS AND QUEENS COUNTIES;
KAVULICH & ASSOCIATES, P.C.; AMERICAN EXPRESS; DISCOVER;
CHEMOURS COMPANY; HONEYWELL; QUEENS HOSPITAL MEDICAL
CENTER; ELMHURST HOSPITAL MEDICAL CENTER; LEXISNEXIS RIST
SOLUTION BUREAU LLC; ALL JUDGES IN NASSAU COUNTY FAMILY COURT,
**SUED IN THEIR INDIVIDUAL AND IN THEIR OFFICIAL CAPACITIES,**

Defendants.

-----------------------------------------------------------------------X

# COMPLAINT

I, Aror-Ark Ark O'Diah, I am the Pro Se Plaintiff, and I hereby submit these stated complaints against Each and All the Defendants named in this above-captioned action in their individual and official capacities.

**EACH AND ALL JUDGES NAMED IN THE U.S. COURT OF APPEALS FOR THE SECOND CIRCUIT, AND IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN MANHATTAN IN NEW YORK CITY AND IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK IN BROOKLYN IN NEW YORK AS DEFENDANTS CAN BE IDENTIFIED BY REFERENCES TO THE JUDICIAL MISCONDUCT COMPLAINT FILED AT THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT BY PROCEEDING REFERENCE DOCKET NUMBER BELOW:**

Re: *Judicial Conduct Complaints*, 02-22-90086-jm, 02-22-90087-jm, 02-22-90088-jm, 02-22-90089-jm, 02-22-90090-jm, 02-22-90091-jm, 02-22-90092-jm, 02-22-90093-jm, 02-22-90094-jm, 02-22-90095-jm, 02-22-90096-jm, 02-22-90097-jm, 02-22-90098-jm, 02-22-90099-jm, 02-22-90100-jm, 02-22-90101-jm, 02-22-90102-jm, 02-22-90103-jm, 02-22-90104-jm, 02-22-90105-jm, 02-22-90106-jm, 02-22-90107-jm, 02-22-90108-jm, 02-22-90109-jm, 02-22-90110-jm, 02-22-90111-jm, 02-22-90112-jm, 02-22-90113-jm, 02-22-90114-jm, 02-22-90115-jm, 02-22-90116-jm, 02-22-90117-jm, 02-22-90118-jm, 02-22-90119-jm, 02-22-90120-jm, 02-22-90121-jm, 02-22-90122-jm, 02-22-90123-jm, 02-22-90124-jm, 02-22-90125-jm, 02-22-90126-jm, 02-22-90127-jm, 02-22-90128-jm, 02-22-90129-jm, 02-22-90130-jm, 02-22-90131-jm, 02-22-90132-jm, 02-22-90133-jm, 02-22-90134-jm, 02-22-90135-jm, 02-22-90136-jm, 02-22-90137-jm, 02-22-90138-jm, 02-22-90139-jm, 02-22-90140-jm, 02-22-90141-jm, 02-22-90142-jm, 02-22-90143-jm, 02-22-90144-jm, 02-22-90145-jm, 02-22-90146-jm, 02-22-90147-jm, 02-22-90148-jm, 02-22-90149-jm, 02-22-90150-jm, 02-22-90151-jm, 02-22-90152-jm, 02-22-90153-jm, 02-22-90154-jm, 02-22-90155-jm, 02-22-90156-jm, 02-22-90157-jm, 02-22-90158-jm, 02-22-90159-jm, 02-22-90160-jm, 02-22-90161-jm, 02-22-90162-jm, 02-22-90163-jm, 02-22-90164-jm, 02-22-90165-jm, 02-22-90166-jm, 02-22-90167-jm, 02-22-90168-jm, 02-22-90169-jm, 02-22-90170-jm, 02-22-90171-jm, 02-22-90172-jm, 02-22-90173-jm, 02-22-90174-jm, 02-22-90175-jm, 02-22-90176-jm, 02-22-90177-jm, 02-22-90178-jm, 02-22-90179-jm

**PARTIES PLAINTIFF AND PARTIES DEFENDANTS NAME AND ADDRESS BELOW:**

**PLAINTIFF NAME AND MAILING ADDRESS AND PHONE:**
Aror-Ark Ark O'Diah
**c/o: TIMESPEED WORLDWIDE...**
3403 Foster Avenue, Apt 4B
Brooklyn, NY 11210-6439
Phone: (347) 614-8799
Email: aror@timespeedworldwideinfo.com
Email: GlobalJudicialWatch@gmail.com

**DEFENDANTS NAMES AND MAILING ADDRESSES BELOW:**

CHIEF JUSTICE JOHN G. ROBERTS
SUPREME COURT OF THE UNITED STATES
1 FIRST STREET, NE
WASHINGTON, DC 20543

UNITED STATES SMALL BUSINESS ADMINISTRATION;
SBA ADMINISTRATOR ISABEL CASILAS GUZMAN;
409 3RD STREET SW
WASHINGTON, DC 20416

SBA NYC REGIONAL DISTRICT DIRECTOR BETH GOLDBERG
SBA NYC REGIONAL DISTRICT OFFICE
26 FEDERAL PLAZA SUITE 3100
NEW YORK, NY 10278

SEPTEMBER 11 VICTIM COMPENSATION FUND SPECIAL MASTER AUGUST FLENTJE;
SEPTEMBER 11 VICTIM COMPENSATION FUND OPERATION DIRECTOR KIMBERLY BROWN,
SEPTEMBER 11 VICTIM COMPENSATION FUND CLAIM PROCESSING CENTER
1220 L STREET, NW, SUITE 100 – BOX 408
WASHINGTON, DC 20005-4018

SOCIAL SECURITY ADMINISTRATION /A/K/A/ SSA;
SSA COMMISSIONER DR. KILOLO KUAKAZI;
1300 D STREET, NW
WASHINGTON, DC 20024
**ATTN: LEGAL OFFICE.**

UNITED STATES POSTAL SERVICE;
UNITED STATES POSTMASTER GENERAL,
1050 CONNECTICUT AVENUE, NW, WASHINGTON, DC 20036-5303

CHIEF JUDGE DEBRA ANN LIVINGSTON, AND
ALL JUDGES IN THE U.S. COURT OF APPEALS FOR THE SECOND CIRCUIT;
U.S. COURT OF APPEALS FOR SECOND CIRCUIT
40 FOLEY SQUARE
NEW YORK, NY 10007

JUDGE VALERIE CAPRONI, AND
ALL JUDGES IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN MANHATTAN IN NEW YORK CITY;
500 PEARL STREET
NEW YORK, NY 10007

JUDGE PAMELA K. CHEN, AND
ALL JUDGES IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK;
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

JUDGE WILLIAM H. ALSUP, AND
ALL JUDGES IN THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN SAN FRANCISCO AND OAKLAND;
450 GOLDEN GAT AVENUE
SAN FRANCISCO, CA 94102

FORMER CHIEF JUDGE THOMAS, AND
ALL JUDGES IN THE U.S. COURT OF APPEALS FOR HE NINTH CIRCUIT IN SAN FRANCISCO IN CALIFORNIA
95 SEVENTH STREET
SAN FRANCISCO, CA 94103-1526

RETIRED JUDGE RANDALL ENG, AND
ALL JUDGE IN THE NEW YORK STATE SUPREME COURT APPELLATE DIVISION SECOND DEPARTMENT IN BROOKLYN IN KINGS AND QUEENS COUNTIES IN NEW YORK;
990 STEWART AVENUE, SUITE 300
GARDEN CITY, NY 11530

RETIRED JUDGE ARTHUR COOPERMAN AND
ALL JUDGES IN THE NEW YORK STATE SUPREME COURT APPELLATE DIVISION SECOND DEPARTMENT IN BROOKLYN IN KINGS AND QUEENS COUNTIES IN NEW YORK;
11011 QUEENS BOULEVARD, APT 10H
FOREST HILLS, NY 11375

RETIRED JUDGE RANDALL ENG, AND RETIRED JUDGE ARTHUR COOPERMAN, AND ALL JUDGES IN THE NEW YORK STATE SUPREME COURT APPELLATE DIVISION SECOND DEPARTMENT IN NEW YORK
**ATTN: NYS UNIFIED COURT SYSTEM – NYC OFFICE**
OFFICE OF COURT ADMINISTRATION (OCA)
25 BEAVER STREET, ROOM 852
NEW YORK, NY 10004

NEW YORK CITY;
NEW YORK CITY COMPTROLLER SCOTT M. STRINGER;
NEW YORK CITY LAW DEPARTMENT CORPORATION COUNSEL HONORABLE SYLVIA O. HIND-RADIX; NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT;
**ATTN: NYC LAW DEPARTMENT**
100 CHURCH STREET, 4TH FLOOR
NEW YORK, NY 10007

NEW YORK STATE;
NEW YORK STATE DEPARTMENT OF TEMPORARY AAND DISABILITY ASSISTANCE;
NEW YROK STATE EXECUTIVE OFFICE OF CRIME VICTIM SERVICES;
**ATTN: NYS COMPTROLLER TOM DiNapoli, and NYS AG LETITIA JAMES**
OFFICE OF THE COMPTROLLER / NYS AG OFFICE
110 STATE STREET
ALBANY, NY 12236

T – MOBILE
**ATTN: T – MOBILE CORPORATE OFFICE**
12920 SE 38TH STREET
BELLEVUE, WA 98006

STAPLE INC
**ATTN: STAPLE INC CORPORATE HEADQUARTER**
500 STAAPLES DRIVE
FARMINGHAM, MA 01702

NYU LANGONE HEALTH PULMONARY AND SLEEP MED-BKLYN, AND BORIS SAGALOVIC, MD;
2408 OCEAN AVENUE
BROOKLYN, NY 11229

WORLD TRADE CENTER HEALTH PROGRAM;
WILLIAM STREET CLINIC;
156 WILLIAM STREET, SUITE 401
NEW YORK, NY 10038

CDC-NATIONAL INSTITUTE OF OCCUPATIONAL SAFETY AND HEALTH, AND DIRECTOR;
PATRIOTS PLAZA 1
395 E STREET, SW, SUITE 9200
WASHINGTON, DC 20201

NYC HEALTH + HOSPITALS / MCKINNEY
594 ALBANY AVENUE
BROOKLYN, NY 11203

QUEENS HOSPITAL MEDICAL CENTER
82-68 164TH STREET
JAMAICA, NY 11432

JAMAICA HOSPITAL CENTER
8900 VAN WYCK EXPRESSWAY
NEW YORK, NY 11418

ELMHURST HOSPITAL MEDICAL CENTER
79-01 BROADWAY
ELMHURST, NY 11373

DR. GLENN J. JAKOBSEN
110-20 JAMAICA AVE.
JAMAICA, NY 11418

DR. ZANE HOFFMAN, DC
9314 QUEENS BOULEVARD
RIGO PARK, NY 11374

NEW YORK STATE COMMISSIONER OF THE DEPARTMENT OF CORRECTION AND COMMUNITY SUPERVISION;
1220 WASHINGTON AVENUE
BUILDING 9
ALBANY, NY 12226

LOGISTICS HEALTH INCORPORATED
3237 AIRPORT ROAD
LA CROSS, WI 54603

JPMORGAN CHASE BANK, N.A.
270 PARK AVENUE
NEW YORK, NY 10017

FedEx EXPRESS
**ATTN: FedEx Corporate Office**
3620 HACKS CROSS ROAD
BUILDING B, THIRD FLOOR
MEMPHIS, TN 38125

OPTIMUM CABLE;
CSC HOLDINGS, LLC, a Subsidiary of ALTICE USA, INC.;
1 COURT SQUARE WEST
LONG ISLAND CITY, NY 11101

CITY MD BROOKLYN HEIGHT;
135 MONTAGUE STREET
BROOKLYN, NY 11201

FULTON VISION CENTER, LLC, and OWNER;
435 FULTON STREET
BROOKLYN, NY 11201

RENAISSANCE EQUITY HOLDINGS LLC AND OWNER;
FLATBUSH GARDEN;
3301 FOSTER AVENUE
BROOKLYN, NY 11210

CARE CREDIT /A/K/A/ CARECREDIT/SYNCHRONY BANK;
SYNCHRONY BANK;
BRIAN DOUBLES;
170 ELECTION ROAD, SUITE 125
DRAPER, UTAH 84020

RICHARD WALSH, ESQ.
HORING WELIKSON ROSS & DIGTUGILIERS, P.C.
11 HILLSIDE AVENUE
WILLISTON PARK, NY 11596

ALEXANDRA E. CLAUS, ESQ.
MARTIN CLEARWATER & BELL, LLP
220 EAST 42ND STREET
NEW YORK, NY 10017

AMY SECTER, ESQ.
REED SMITH, LLP
RIVERFRONT PLAZA – WEST TOWER
901 EAST BYRD STREET, SUITE 1900
RICHMOND, VA 23219-4068

DARIN BILLIG, ESQ.
PARK & NGUYEN
1809 PAULING AVENUE, 2ND FLOOR, BRONX, NY 10462

STEVEN P. ORLOWSKI, ESQ.
BLEALEY PLATT & SCHMIDT, LLP
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NY 10601

CAPITAL ONE BANK, N.A.;
**ATTN: ESTATE OPERATION**
301 W 11THE STREET
WILLINGTON, DE 19801

NASSAU COUNTY; AND ALL JUDGES IN NASSAU COUNTY FAMILY COURT; AND
NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT;
**ATTN: OFFICE OF THE COUNTY ATTORNEY**
RALPH G. CASO EXECUTIVE AND LEGISLATIVE BUILDING
ONE WEST STREET
MINEOLA, NEW YORK 11501-4820

TRANS UNION;
**ATTN: CORPORATE OFFICE AND HEADQUARTER**
555 W. ADAMS STREET
CHICAGO, IL 60661

EXPERIAN;
**ATTN: CORPORATE HEADQUARTER**
475 ANTON BLVD
COSTA MESA, CA 92626

EQUIFAX INC.
1555 PEACHTREE STREET, N.W.
ATLANTA, GEORGIA 30309

NEW YORK-PRESBYTERIAN HOSPITAL/COLUMBIA
170 WILLIAM STREET
NEW YORK, NY 10038

NEW YORK-PRESBYTERIAN HOSPITAL-NEW YORK WEILL CORNELL MEDICAL CENTER
530 E 70TH STREET
NEW YORK, NY 10021

ALL JUDGES IN THE NEW YORK STATE SUPREME COURTS IN KINGS AND QUEENS COUTNIES;
**ATTN: NEW YORK UNIFIED COURT SYSTEM – NYC OFFICE**
OFFICE OF COURT ADMINISTRATION (OCA)
25 BEAVER STREET, ROOM 852, NEW YORK, NY 10004.

GARY M. KAVULICH, ESQ;
KAVULICH & ASSOCIATES, P.C.;
181 WESTCHESTER AVE., SUITE 500C
PORT CHESTER, NY 10573

WESTERN UNION
**ATTN: CORPORATE HEADQUARTERS**
7001 E. BELLEVIEW
DENVER, CO 80237

AMERICAN EXPRESS
**ATTN: CORPORATE HOME OFFICE**
200 VESEY STREET
NEW YORK, NY 10285-3106

DISCOVER
**ATTN: CORPORATE HEADQUARTERS**
2500 LAKE COOK ROAD
RIVERWOODS, IL 60015

AARP
601 E STREET NW
WASHINGTON, DC 20049

BARCLAYS
**ATTN: BARCLAYS BANK DELAWARE**
125 SOUTH WEST STREET
WILMINGTON, DE 19801

THE CHEMOURS COMPANY
1007 MARKET STREET
P.O. BOX 2047
WILMINGTON, DELAWARE 19899

HONEYWELL
**ATTN: CORPORATE HEADQUARTERS**
855 SOUTH MINT STREET
CHARLOTTE, NC 28202

LEXISNEXIS RIST SOLUTIONS BUREAU LLC
1000 ALDERMAN Dr
ALPHARETTA, GA 30003

# INTRODUCTION

I. On about September 21, 2022, or soon thereafter, I, Aror-Ark Ark O'Diah, Pro Se Plaintiff, filed 'JUDICIAL MISCONDUCT COMPLAINTS' against Each and All JUDGES in the United States Court of Appeals for the Second Circuit; and against Each and All JUDGES in the United States District Court for the Southern District of New York in Manhattan in New York City; and against Each and All JUDGES in the United States District Court for the Eastern District of New York in Brooklyn in New York because JUDGES in these COURTS unconstitutionally adopted, endorsed, sanctioned, implemented, and enforced the unconstitutional use of self-serving unconstitutional sanction ORDER to "INVALIDATE" and "TERMINATE" the United States Constitution. Also, JUDGES in these COURTS used the same unconstitutional sanction ORDER to "EVADE" and used to "SUSPEND" the United States Constitution, Laws and Statutory Provisions; and thereafter, used the same unconstitutional sanction ORDER to Blackballed, Blacklisted, Blackmailed, slandered, defamed, assassinated, and subject Pro Se Plaintiff Aror-Ark Ark O'Diah to libelous injuries by deliberate misrepresentation in reckless disregard for the truth by showing reckless disregard for the U.S. Constitution, Laws and Statutory Provision SOLELY used to prevent, denied and deprived Aror-Ark Ark O'Diah, Pro Se Plaintiff from having equal and meaningful ACCESS to all Courts in the United States of America but **"WITHOUT SUBSTANTIVE DUE PROCESS"** in discriminatory and retaliatory act in bad faith to cause Complainant Aror-Ark Ark O'Diah irreparable physical bodily injuries. And denied, deprived CIVIL and HUMAN Rights.

II. On about January 10, 2023, Chief Judge DEBRA ANN LIVINGSTON, also named as among the 94 JUDGES named in the 'JUDICIAL MISCONDUCT COMPLAINT' filed by Complainant Aror-Ark Ark O'Diah due to implicit participation in widespread and vast implicit 'inhumane' conspiracies to carried out intentional racial discrimination and intentional racial retaliations against Aror-Ark Ark O'Diah; whereby, Chief Judge issued another 'inhumane' lies as ORDER to covered up, by using deliberate misrepresentations, interferences, intimidations, harassment, hates, biases, prejudices, anti-Blackness and threats of irreparable harm ORDER in violation of **'Conflict-of-Interest'** that constituted violations of **'JUDICIAL CODE OF ETHICAL CONDUCT.'**

**EACH AND ALL JUDGES NAMED IN THE U.S. COURT OF APPEALS FOR THE SECOND CIRCUIT, AND IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN MANHATTAN IN NEW YORK CITY AND IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK IN BROOKLYN IN NEW YORK AS DEFENDANTS CAN BE IDENTIFIED BY REFERENCES TO THE JUDICIAL MISCONDUCT COMPLAINT FILED AT THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT BY PROCEEDING REFERENCE DOCKET NUMBER BELOW:**

Re: *Judicial Conduct Complaints*, 02-22-90086-jm, 02-22-90087-jm, 02-22-90088-jm, 02-22-90089-jm, 02-22-90090-jm, 02-22-90091-jm, 02-22-90092-jm, 02-22-90093-jm, 02-22-90094-jm, 02-22-90095-jm, 02-22-90096-jm, 02-22-90097-jm, 02-22-90098-jm, 02-22-90099-jm, 02-22-90100-jm, 02-22-90101-jm, 02-22-90102-jm, 02-22-90103-jm, 02-22-90104-jm, 02-22-90105-jm, 02-22-90106-jm, 02-22-90107-jm, 02-22-90108-jm, 02-22-90109-jm, 02-22-90110-jm, 02-22-90111-jm, 02-22-90112-jm, 02-22-90113-jm, 02-22-90114-jm, 02-22-90115-jm, 02-22-90116-jm, 02-22-90117-jm, 02-22-90118-jm, 02-22-90119-jm, 02-22-90120-jm, 02-22-90121-jm, 02-22-90122-jm, 02-22-90123-jm, 02-22-90124-jm, 02-22-90125-jm, 02-22-90126-jm, 02-22-90127-jm, 02-22-90128-jm, 02-22-90129-jm, 02-22-90130-jm, 02-22-90131-jm, 02-22-90132-jm, 02-22-90133-jm, 02-22-90134-jm, 02-22-90135-jm, 02-22-90136-jm, 02-22-90137-jm, 02-22-90138-jm, 02-22-90139-jm, 02-22-90140-jm, 02-22-90141-jm, 02-22-90142-jm, 02-22-90143-jm, 02-22-90144-jm, 02-22-90145-jm, 02-22-90146-jm, 02-22-90147-jm, 02-22-90148-jm, 02-22-90149-jm, 02-22-90150-jm, 02-22-90151-jm, 02-22-90152-jm, 02-22-90153-jm, 02-22-90154-jm, 02-22-90155-jm, 02-22-90156-jm, 02-22-90157-jm, 02-22-90158-jm, 02-22-90159-jm, 02-22-90160-jm, 02-22-90161-jm, 02-22-90162-jm, 02-22-90163-jm, 02-22-90164-jm, 02-22-90165-jm, 02-22-90166-jm, 02-22-90167-jm, 02-22-90168-jm, 02-22-90169-jm, 02-22-90170-jm, 02-22-90171-jm, 02-22-90172-jm, 02-22-90173-jm, 02-22-90174-jm, 02-22-90175-jm, 02-22-90176-jm, 02-22-90177-jm, 02-22-90178-jm, 02-22-90179-jm

## JURISDICTIONAL STATEMENTS

III. The Defendants implicitly and explicitly knowingly 'AGREE IN MINDS' to have jointly participated to carried out widespread and vast joint racially motivated egregious intentional discriminatory and retaliatory conspiratorial practices in bad faith used to denied and deprived this Pro Se Plaintiff Aror-Ark Ark O'Diah equal protection, liberty, properties, Courts access, to invoked Title 28 U.S.C. Section 455; and Title 28 U.S.C. Sections 352-364; and Title 18 U.S.C. Section 242; and USCA Const. Amendments 1, 4, 5, 6, 7, 8 and 14 to the U.S. Constitutions; and The Federal Civil Rights Acts of 1866 and 1964; and Title 42 U.S.C. Sections 1983, 1985, 1986.

IV. I, Aror-Ark Ark O'Diah, believes and hereby asserted that when federal and States Courts JUDGES jointly implicitly and explicitly communicated to Private or Public persons that he or she will not be arrested, punished, prosecuted or otherwise interfered with while engaging in misconduct that likely to endangered the life, liberty, or property of others by retaliatorily acts in bad faith, the JUDGE involved should be held responsible and accountable for violations of U.S.C.A. Const. Amendments 1, 4, 5, 6, 7, 8 and 14 to the U.S. Constitution for injury caused by the misconduct for violation of "**Substantive Due Process" Rights to** cause physical bodily injuries and properties damages and loss of Private Businesses. **See, Pena v. Deprisco, C.A. )2nd N.Y. Cir. 2005) 432 F.2d**

V. I, Aror-Ark Ark O'Diah, also believes and hereby asserted that when a person Subjected another person to deprivation of rights within the meaning of U.S.C.A. Const. Amendments 1, 4, 5, 6, 7, 8, and 14 to the U.S. Constitution, these omission constituted violations of title 18 U.S.C. Sections 242, if the JUDGE'S EGREGIOUSNESS and OMISSIONS invoked Title 28 U.S.C. Sections 455; particularly, if he or she does an affirmative act or participate in another acts or omit to perform an act which he or she is legally required to do that causes the deprivations of which this complaint is made. **See, Johnson v. Duff, 588.2d 740, 743 (9th Cir. 1978).**

VI. I, Aror-Ark Ark O'Diah, also believes and hereby asserts that when a perjurer's, meaning a particular person under color of state law in playing role in a scheme with Special Prosecutor and District Attorneys and JUDGES in making false statement which provided basis for criminal process, all the participants who jointly knowingly and intentionally acted discriminatively and retaliatorily in bad faith to deprived rights should be held responsible and accountable even if he or she was acting in judicial or private capacities in concert with Special Prosecutor and District Attorney. **See, Jennings v. Shuman, C.A. (Pa.) 1977, 567 F.2d 1213.**

VII. A liar should have never been allowed to become a JUDGE and a POLICE OFFICER; also, a violence Human Being should have never been allowed to become a JUDGE, and a POLICE OFFICER. And any Human Being having RACIST MINDS should have never been allowed to become a JUDGE and a POLICE OFFICER.

VIII. Chief Judge DEBRA ANN LIVINGSTON and former late Chief Judge ROBERT A. KATZMANN are 'liars' because both JUDGES use 'inhumane' lies, covered up, hates, biases, prejudices, intimidations, harassment in disguise, threats of irreparable harms and anti-Blackness racist ideologies and philosophies to hide the truth by showing reckless disregard for the truth and reckless disregard for the U.S. Constitution, Laws and Statutory Provision in bad faith in the United States Court of Appeals for the Second Circuit in New York City but **"without substantive due process"** based upon the identification of Pro Se Plaintiff National Origin. **And Chief Justice JOHN G. ROBERTS knew or should have known all about the Egregiousness and violations but FAILED to prevent the JUDGES from carrying out the implicit conspiracies.**

IX. Judge VALERIE CAPRONI is a 'liar' because Judge VALERIE CAPRONI use 'inhumane' lies, covered up, hates, biases, prejudices, intimidations, harassment in disguise, threats of irreparable harms and anti-Blackness racist ideologies and philosophies to hide the truth by showing reckless disregard for the truth and showing reckless disregard for the U.S. Constitution, Laws and Statutory Provisions in bad faith in the United State District Court for the Southern District of New York in Manhattan in New York City but **"without substantive due process"** based upon the identification of Pro Se Plaintiff's National origin.

X. Judge PAMELA K. CHEN and late Judge SANDRA J. FEUERSTEIN are 'liars' because both JUDGES use 'inhumane' lies, covered up, hates, biases, prejudices, intimidations, harassments, threats of irreparable harms and anti-Blackness racist ideologies and philosophies to hide the truth by showing reckless disregard for the truth and showing reckless disregard for the U.S. Constitution, Laws and Statutory Provisions in bad faith in the U.S. District Court for the Eastern District of New York in Brooklyn in New York based upon National Origin identifications, but "**without substantive due process**"; yet, JUDGES continue to persecute this Pro Se Plaintiff by deliberate misrepresentation to the General Public by intentionally discriminatively and retaliatorily lured JUDGES to use 'inhumane' lies damaged Plaintiff constitute violation of rights.

XI. Judge WILLIAM H. ALSUP and former Chief Judge THOMAS are 'liars' because both of these JUDGES use 'inhumane' lies, covered up, hates, biases, prejudices, intimidations, harassment in disguise, threats of irreparable harms and anti-Blackness racist ideologies and philosophies to hide the truth by showing reckless disregard for the truth and showing reckless disregard for the U.S. Constitution, Laws and Statutory Provisions in the U.S. District Court for the Northern District of California in San Francisco and Oakland in California, and in the U.S. Court of Appeals for the Ninth Circuit in San Francisco in California but **"without substantive due process"** based upon the identification of Pro Se Plaintiff's National Origin.

XII. Retired Judge RANDALL ENG, and Retired Judge ARTHUR COOPERMANN are 'liars' because both of these JUDGES use 'inhumane' lies, covered up, hates, biases, prejudices, intimidations, harassments in disguise, threats of irreparable harms and anti-Blackness racist ideologies and philosophies to hide the truth by showing reckless disregard for the truth and by showing reckless disregard for the U.S. Constitution, Laws and Statutory Provisions in the New York State Supreme Court Appellate Division Second Department in Brooklyn in Kings and Queens Counties in New York but **"without substantive due process"** based upon the identification of Pro Se Plaintiff's National Origin.

XIII. NEW YORK CITY COMPTROLLER, and NEW YORK CITY DEPARTMENT OF LAW CORPORATION COUNSEL, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and SEPTEMBER 11 VICTIM COMPENSATION FUND CLAIMS PROCESSING CENTER SPECIALL MASTER AND OPERATION DIRECTOR, and FedEx EXPRESS, and NEW YORK STATE, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE, and NEW YORK STATE EXECUTIVE OFFICE OF CRIME VICTIM SERVICES, and RENAISSANCE EQUITY HOLDINGS LLC, and FLATBUSH GARDEN OFFICE MANAGEMENT, and U.S. SMALL BUSINESS ADMINISTRATION, and SBA ADMINISTRATOR, and SBA IN NEW YORK CITY REGIONAL DISTRICT DIRECTOR, AND SBA EMPLOYEES, and U.S. POSTAL SERVICE POSTMASTER, and CAPITAL ONE BANK, N.A., and U.S. SOCIAL SECURITY ADMINISTRATION, COMMISSIONER AND EMPLOYEES, and OPTIMUM CABLE TV, and CITY MD BROOKLYN HEIGHTS, and CARECREDIT /A/K/A/ CARECREDIT/SYNCHRONY BANK, and SYNCHRONY BANK, and BRIAN DOUBLES, and FULTON

VISION CENTER, RICHARD WALSH, Esq., and CURTIS JACKSON, Esq., and AMY SECTER, Esq., and PARK & NGUYEN, and DARIN BILLIG, Esq., and STEVEN ORLOWSKI, Esq., in their individual and in their official capacities jointly implicitly and explicitly conspired to bribed and lured Chief Judge DEBRA ANN LIVINGSTON, and late former Chief Judge ROBERT A. KATZMANN, and Judge VALERIE CAPRONI, and Judge PAMELA K. CHEN, and Late Judge SANDRA J. FEUERSTEIN, and Judge WILLIAM H. ALSUP, and former Chief Judge THOMAS, and Retired Judge RANDALL ENG, and Retired Judge ARTHUR COOPERMANN to write unconstitutional sanction ORDER; and thereafter, placed the unconstitutional sanction ORDER inside Privates and Publics Businesses Establishment to harassed Pro Se Plaintiff in the United States of America. Also used the ORDER as self-serving unconstitutional sanction ORDER used to "INVALIDATE" and "TERMINATE" the United States Constitution, also used to "EVADE" and used to "SUSPEND" the United States Constitution, Laws and Statutory Provisions; and thereafter, unconstitutionally adopted, endorsed, sanctioned, implemented and enforced by All and Every and Each JUDGE **but "WITHOUT SUBSTANTIVE DUE PROCESS"** in bad faith used to targeted, taunted, singled out Pro Se Plaintiff in Persons and Privates Businesses to prevent, and deny and deprived Plaintiff Aror-Ark Ark O'Diah Black Freelance Journalist turned Whistleblower equal and meaningful ACCESS to All Federal and States Courts Nationwide, and these egregious, omission and violations have allowed these Government OFFICIALS and JUDGES to hide their own corrupted racist practices and judicial misconduct that rises above judicial malpractices to judicial high crimes but remain 'UNCHECKED' and remain 'CONCEALED' and remain 'UNREPORTED' in their showing reckless disregard for the truth and in their ongoing showing reckless disregard for the U.S. Constitution, Laws and Statutory Provisions used to denied and

deprived Plaintiff Aror-Ark Ark O'Diah and Private Businesses freedom of movement, liberty, properties, privileges, life, Civil and Human Rights, associations, assemble, free speech, freedom of expression, denied business loans, denied Housing lending and renting, conduct private businesses, immunities and pursues of happiness based upon the identification of Plaintiff as a Black Freelance Journalist turned Whistleblower and upon the identification of Pro Se Plaintiff's skin color, race, national origin; and these egregiousness and omission constituted violation of Plaintiff's CIVIL AND HUMAN RIGHTS, also constituted violations of 'CONFLICT-OF-INTEREST' that also constituted violation of "JUDICIAL AND PROFESSIONAL CODE OF ETHICAL CONDUCT."

XIV. All the Defendants named in this above-captioned action jointly and separately In their individual and in their official capacities knowingly, willingly, callously, viciously, maliciously, discriminatively and retaliatorily in bad faith implicitly and explicitly conspired to AGREE in Mind in disguise under color of state authorities to cause Aror-Ark Ark O'Diah irreparable physical bodily injuries by MULTIPLE ASSAULTS, FALSE ARRESTS, ILLEGAL SEARCHES AND SEIZURES, ILLEGAL INDICTMENTS, MALICIOUS PROSECUTIONS, UNJUST CONVICTIONS, AND FALSE IMPRISONMENTS, BY USE OF 'INHUMANE' LIES, COVERED UP, FALSE CHILD SUPPORT AND CREDIT COLLECTIONS BY USE OF DELIBERATE MISREPRESENTATION WITH MALICIOUS INTENTS TO DISCRIMINATES AND RETALIATES TO PERMANENTLY DEFAMED BY USE OF SLANDER AND LIBEL TO BLACKBALLED, BLACKLISTED AND BLACKMAILED Aror-Ark Ark O'Diah to denied and deprived **"SUBSTANTIVE DUE PROCESS" AND EQUAL ACCESS TO COURTS** Nationwide used to denied and deprived constitutional rights to properties, liberty, freedom of movement, free speech, freedom of expression, Private Business, Housing, rent, own Business, procure LOAN. **It's no longer okay to remain in silence and inaction against judicial injustices, hates, biases, prejudices, deliberate misrepresentations, antisemitism, anti-Blackness by use of 'inhumane' lies, covered up, intimidations, harassments, and threats of irreparable harms.**

## SUPPORTING FACTS

1. Based upon newly discovered evidence on January 10, 2023, September 2, 2021 and May 7, 2021, shows that all the federal JUDGES in the United States Court of Appeals for the Second Circuit in Manhattan in New York City including Chief Judge DEBRA ANN LIVINGSTON, and all the JUDGES in the United States Court of Appeals for the Ninth Circuit in San Francisco in California, including former Chief Judge THOMAS, and all the JUDGES in the United States District Court for the Southern District of New York in Manhattan in New York City, including Judge VALERIE CAPRONI, and all the JUDGES in the United States District Court for the Eastern District of New York in Brooklyn in New York, including Judge PAMELA K. CHEN, and all the JUDGES in the United States District Court for the Northern District of California in San Francisco in California, including Judge WILLIAM H. ALSUP, and all the JUDGES in the New York State Supreme Court Appellate Division Second Department in Brooklyn in Kings in New York, including retired Judge RANDALL ENG, and all the JUDGES in the New York State Supreme Court in Kings and Queens Counties in New York, including retired Judge ARTHUR COOPERMANN discriminatively and retaliatorily AGREED in bad faith to lured late Judge SANDRA J. FEUERSTEIN and late former Chief Judge ROBERTS A. KATZMANN to write unconstitutional sanction ORDERS unconstitutionally used as JUDGE'S Self-serving unconstitutional sanction ORDER used to "INVALIDATES" and used to "TERMINATES" and used to "EVADE" and used to "SUSPEND" the United States Constitution, Laws and Statutory Provisions, but **"WITHOUT SUBSTANTIVE DUE PROCESS"** used to targeted, taunted and singled out Plaintiff Aror-Ark Ark O'Diah to prevent, deny and deprived Pro Se Plaintiff equal and meaningful ACESS to all federal and states Courts, and further used to blackballed, blacklisted and blackmailed Pro Se Plaintiff Nationwide. 

2. As a result of the unconstitutional sanction ORDER used to "INVALIDATE" and used to "TERMINATES" and used to "EVADE" and used to "SUSPEND" the United States Constitution, Laws and Statutory Provisions but **"WITHOUT SUBSTANTIVE DUE PROCESS"** were implicitly and explicitly used to lured all the above-captioned named Defendants sued in their individual and in their official capacities to AGREE in disguise under color of state authorities to enter into implicit and explicit conspiracies with federal JUDGES and States Courts JUDGES in New York and in California to AGREE to violates this Pro Se Plaintiff Aror-Ark Ark O'Diah's Civil and Human Rights by doing the following stated below:

3. All the Defendants named in this above-captioned action unconstitutionally adopted, endorsed, sanctioned, implemented and enforced the JUDGES'S self-serving unconstitutional sanction ORDER used to "INVALIDATES" and used to "TERMINATES" and used to "EVADE" and used to "SUSPEND" the United States Constitution, Laws and Statutory Provisions upon the identification of this Pro Se Plaintiff's skin color, race and national origin but **"WITHOUT SUBSTANTIVE DUE PROCESS"** solely used to prevent, deny and deprived this Pro Se Plaintiff Aror-Ark Ark O'Diah and Private Businesses Constitutional rights to rent, buy, seek Business Loans, negotiates businesses, privilege, properties, liberty, free speech, assemble, associates, immunities, Plaintiff repeatedly subjected to false arrests, illegal searches and seizures, illegal indictments, malicious prosecutions, unjust convictions, illegal sentences, false imprisonment, ASSAULTED multiple times, intimidated, harassed, subjected to threats of irreparable harms via series of attempted murder schemes in disguise under color of state authorities.

4. The Defendants acted jointly and severally and individually in their individual and official capacities in bad faith repeatedly incorrectly wrote Pro Se Plaintiff names and incorrectly published this Pro Se Plaintiff name to the General Public by malicious intent to cause this Pro Se Plaintiff's in Person and Privates business hardship but **without substantive due process.**

5. Renaissance Equity Holding LLC and OWNER and FLATBUSH GARDENS refused to rent apartment to Pro Se Plaintiff based upon the JUDGE'S self-serving unconstitutional sanction ORDER place inside many Privates and Public Businesses Establishments and upon national origin identification but **without substantive due process**.

6. United States Small Business Administration, and Small Business Administration Administrator ISABEL CASILAS GUZMAN, and New York City Regional District Director BETH GOLDBERG refused to process COVID-19 EIDL Increase Reconsideration based upon the JUDGE'S self-serving unconstitutional sanction ORDER placed inside many privates and publics businesses establishments, and upon the identification of Pro Se Plaintiff's national origin but **without substantive due process.**

7. September 11 Victim Compensation Fund Claims Processing Center Special Master AUGUST FLETJE and Operation Director KIMBERLY C. BROWN refused to process September 11 Victim Compensation claim based upon the JUDGE'S self-serving unconstitutional sanction ORDER placed inside many Privates and Publics Businesses establishments, and upon the identification of this Pro Se National Origin but **without substantive due process.**

8. Social Security Administration and Social Security Administration Commissioner DR. KILOLO KUAKAZI improperly terminated SSI Claim and retirement benefit without substantive due process based upon the JUDGE'S self-serving unconstitutional sanction ORDER.

9. The United States Postal Service Postmaster General and U.S. Postal Employees Unconstitutionally adopted, endorsed, sanctioned, implemented and enforced the JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process by unlawfully searches and seizures of this Pro Se Plaintiff's Aror-Ark Ark O'Diah's legal mails, businesses mails, religious mail and personal mails and upon the identification of Pro Se National origin.

10. Chief Judge DEBRA ANN LIVINGSTON, and all JUDGES in the United States Court of Appeals for the Second Circuit adopted, endorsed, sanctioned, implemented and enforced the self-serving unconstitutional sanction ORDER but without substantive due process used to prevent, deny and deprived this Pro Se Plaintiff's Civil and Human Rights, and denied and deprived ACCESS and meaningful ACCESS to Courts Nationwide discriminatively and retaliatorily in bad faith upon the identification of Pro Se Plaintiff's National origin.

11. Judge VALERIE CAPRONI and All JUDGES in the United States District Court for the Southern District of New York in Manhattan in New York City unconstitutionally adopted, endorsed, sanctioned, implemented, and enforced the JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process used to prevent, deny, deprived this Pro Se Plaintiff's Civil and Human Rights, and used to denied and deprived ACCESS and meaningful ACCESS to Courts Nationwide discriminatively and retaliatorily in bad faith upon the identification of Pro Se Plaintiff's national origin.

12. Judge PAMELA K. CHEN, and all JUDGES in the United States District Court for the Eastern District of New York in Brooklyn in New York unconstitutionally adopted, endorsed, sanctioned, implemented and enforced the JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily.

13. Judge WILLIAM H. ALSUP, and all JUDGES in the United States District Court for the Northern District of California in San Francisco and Oakland in California unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's national origin.

14. Former Chief Judge THOMAS, and all the JUDGES in the United States Court of Appeals for the Ninth Circuit in San Francisco in California unconstitutionally adopted, endorsed, sanction, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's national origin.

15. Retired Judge RANDALL ENG, and all JUDGES in the New York State Supreme Court Appellate Division Second Department in Brooklyn in New York unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin.

16. Retired Judge ARTHUR COOPERMAN, and all JUDGES in the New York State Supreme Court in Kings and Queens Counties in New York unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin.

17. New York City, and New York City Comptroller SCOTT M. STRINGER, and New York City Law Department Corporation Counsel Honorable SYLVIA O. HIND-RADIX, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S Self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of Pro Se Plaintiff's skin color, race and national origin, and deny and deprived Housing, and obstructed renting to Pro Se Plaintiff, and denied and deprived processing this Pro Se Plaintiff's pending claims.

18. Western Union unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of Pro Se Skin Color, race and national origin used to deny and deprived Pro Se Plaintiff's money wiring services, and thereafter, also denied and deprived this Pro Se Plaintiff's Civil and Human Rights to his refund of money WESTEN UNION fraudulently took from this Pro Se Plaintiff.

19. Gary M. Kavulich, Esq of KAVULICH & ASSOCIATES, P.C. unconstitutionally adopted, endorsed, sanctioned, implemented, and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin used to blackballed, blacklisted and blackmail money from this Pro Se Plaintiff's via RENAISSANCE EQUITY HOLDING LLC by intimidation, harassment, threats of irreparable harms by fraudulence claim against this Pro Se Plaintiff's late Spouse YONETTE ANTOINETTE GRANT.

20. AARP, and BARCLAYS /A/K/A/ BARKCLAYS BANK unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive Due Process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's Skin Color, Race and National Origin by recklessly and maliciously and callously incorrectly published this Pro Se Plaintiff name to the General Public with malicious intent to defame, slander, assassinate, and subjected Pro Se Plaintiff to irreparable injuries by libel by falsifying Pro Se Plaintiff name, and refused to make necessary correction even after this Pro Se Plaintiff repeatedly call it to the attention of AARP, and BARCLAYS /A/K/A/ BARCLAYS BANK.

21. New York State, and New York State Department of Temporary and disability Assistance, and New York State Executive Office of Crime Victim Services unconstitutionally adopted, endorsed, sanctioned, implemented and enforce JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race, national origin, by denying and depriving this Pro Se Plaintiff's Civil and Human Rights to his TAX REFUND, with FAILURE to process crime victim claim via medically deliberate indifference to this Pro Se Plaintiff's Medical Conditions following multiple ASSAULTS and INJURIES caused by criminals.

22. T – MOBILE unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race, and national origin, by breach of covenant by adding five cell lines to Pro Se Plaintiff Wireless Service without Pro Se Plaintiff's authorization by use of fraud in disguise.

23. Staples, Inc., unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin by falsely accused this Pro Se Plaintiff of Stealing Typewriter Ribbon, and subjected this Pro Se Plaintiff to FALSE ARREST and UNLAWFUL DETENTION and maliciously used to subjected this Pro Se Plaintiff to defamation, slander via libel to cause injuries to Pro Se Plaintiff Human Being Humanities via character assassination.

24. NYU Langone Health Pulmonary and Sleep MED-BKLYN and BORIS SAGALOVIC, MD, unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith by fabricating this Pro Se Plaintiff's Blood Pressure by manipulation via malicious and fraudulence schemes used to subjected this Pro Se Plaintiff to suffer STROKE and HEART ATTACKS by falsifying Pro Se Plaintiff's Blood Pressure in reckless disregard for the truth and by showing reckless disregard for the United States Constitution, Laws and Statutory Provisions upon the identification of this Pro Se Plaintiff's skin color, race and national origin.

25. World Trade Center Health Program; and CDC-NATIONAL INSTITUTTE OF OCCUPATIONAL SAFETY AND HEALTH, and DIRECTOR; and NYC HEALTH + HOSPITALS/MCKINNEY; and JAMAICA HOSPITAL MEDICAL CENTER; and DR. GLEEN J. JAKOBSEN; and DR. ZANE HOFFMANN; and LOGISTICS HEALTH INCORPORATED; and WIILIAM STREET CLINIC, jointly and separately unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive

due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin used to deny and deprived the release of this Pro Se Plaintiff's medical records by obstructing the processing of this Pro Se Plaintiff's Claims at the September 11 Victim Compensation Fund Claims Processing Center. And failure to release this Pro Se Plaintiff's Medical Records by hiding this Pro Se Plaintiff Medical Records contributed to this Pro Se Plaintiff delay in health recovery, delayed of timely treatment, and causes Pro Se Plaintiff pains and suffering. Renaissance Equity Holding LLC refused to provide Apt Heat.

26. New York State and New York State Department of Correction and Community Supervision and Commissioner and Correctional Officers unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin by luring New York State Department of Correction and Community Supervision inmate ARTHUR FRAZIER to murder this Pro Se Plaintiff in their concealed attempt in disguise to deny and deprived this Pro Se Plaintiff the possibility of EXONERATION by denying and depriving this Pro Se Plaintiff ACCESS to All Courts Nationwide. Renaissance Equity Holding LLC refused to provide Hot Water.

27. JPMorgan Chase Bank, N.A.; and FedEx EXPRESS; and Optimum Cable; and CSC Holdings LLC, a Subsidiary of ALTICE USA, Inc.; and City MD Brooklyn Height; and Fulton Vision Center LLC and Owner; and Carecredit /a/k/a/ Carecredit/Synchrony Bank; and Synchrony Bank; and Brian Doubles; and Capital One Bank, N.A.; and Trans Union; and Experian; and Equifax Credit Information Services jointly and separately unconstitutionally adopted, endorsed, sanctioned,

implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin by knowingly using intimidations, harassment in disguise under color of state authorities to subjected this Pro Se Plaintiff to false credit collections, and also incorrectly reported this Pro Se Plaintiff name but refused to make correction even upon repeated appeals made by this Pro Se Plaintiff. And these Defendants deliberate Indifference and malicious acts amounted to reckless disregard for the truth and reckless disregard for the United States Constitution, Laws and Statutory Provision to cause this Pro Se Plaintiff pains and suffering, and also cause irreparable injuries to this Pro Se Plaintiff in Persons and to Privates Businesses. On the other hand, FedEx Express refused to delivered Pro Se Plaintiff's Legal Mail; and also destroyed Plaintiff's mails, and violated this Pro Se Plaintiff rights to medical Privacy by opening this Pro Se legal Mail, and actually read this Pro Se Legal Mails in systematic violations of this Pro Se Plaintiff's Civil and Human Rights to Privacy. This Pro Se Plaintiff was subjected to medically deliberate indifference by City MD Brooklyn Height and Fulton Vision Center LLC; while at the same time, Trans Union, and Experian, and Equifax were jointly incorrectly published this Pro Se Plaintiff's name to the General Public to cause this Pro Se Plaintiff hardship to rent, buy and obtain personal and Private Business Loan. On the other hand, JPMorgan Chase Bank, N.A. has been deliberately misrepresenting this Pro Se Plaintiff's name in DEBIT CARDS issued, and these omissions constituted violation of this Pro Se Plaintiff by libel, defamation, slander and by deliberate misrepresentation of this Pro Se Plaintiff's name to the General Public by assigning TWO NAMES TO this Pro Se Plaintiff without this Pro Se Plaintiff permission, consent and authorization.

28. Richard Walsh, Esq; and Alexandra E. Claus, Esq; and Amy Secter, Esq; and Darin Billig, Esq; and Curtis Jackson, Esq; and Park & Nguyen; and Steven P. Orlowski, Esq, jointly unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin to repeatedly subjected this Pro Se Plaintiff to unconstitutional hates, biases, prejudices by using 'inhumane' lies, covered up, intimidations, harassment in disguise and threats of irreparable harm to deter, coerced and silence this Pro Se Plaintiff from exercising all rights protected under the United States Constitution, Laws and Statutory Provision by denying and depriving this Pro Se Plaintiff ACCESS and meaningful ACCESS to Courts.

29. Nassau County, and Nassau County Child Support Collection Unit unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily maliciously in bad faith used to subjected this Pro Se Plaintiff to false child support arears collection, by putting lien on this Pro Se Plaintiff's Bank Checking Account to denied and deprived this Pro Se Plaintiff ACCESS to money needed to purchase Medication needed while Pro Se Plaintiff was repeatedly subjected to periodic recurring paralysis and disabilities and stroke and heart attacks.

30. New York-Presbyterian Hospital; and New York Weill Cornell Medical Center unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without due process discriminatively and retaliatorily in bad faith used to deny and deprived this Pro Se Plaintiff medical treatment while subjected to periodic recurring heart attack, stroke, pains.

31. All the JUDGES in the New York State Supreme Courts in the Counties of Kings and Queens in New York unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff's skin color, race and national origin used to denied and deprived this Pro Se Plaintiff's equal and meaningful ACCESS to New York State Courts after this Pro Se Plaintiff has been subjected to repeated false arrests, illegal searches and seizure of properties, illegal indictments, malicious discriminatory and retaliatory prosecutions, unjust convictions by use of false witnesses, fabricated testimonies with the use of unverified evidence placed in evidence in bad faith corruptly by unconstitutional use of 'TAINTED JURY' used to procured false imprisonment; and while illegally held in prison, inmate ARTHUR FRAZIER was lured and bribed to murder this Pro Se Plaintiff with malicious intents to deny and deprived this Pro Se Plaintiff the possibility of EXONERATION while JUDGES are using self-serving unconstitutional sanction ORDER to deny and deprived this Pro Se Plaintiff constitutional rights to have ACCESS to Courts to file complaint, motion and appeals to SET ASIDE, VACATE AND DECLARE NULL AND VOID unjust Convictions procured by use of false witnesses fabrications by these JUDGES showing reckless disregard for the truth and reckless disregard for the U.S. Constitution, laws and Statutory Provisions.

32. American Express; Discover; Chemours Company; and Honeywell unconstitutionally adopted, endorsed, sanctioned, implemented and enforced JUDGE'S self-serving unconstitutional sanction ORDER but without substantive due process discriminatively and retaliatorily in bad faith upon the identification of this Pro Se Plaintiff skin color, race and national origin to denied and deprived rights to negotiate business, supply good, buy.

## CLAIM #1: FIRST AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

1. Newly discovered evidence on January 10, 2023, September 21, 2022, May 7, 2021 and September 2, 2021, shows that effective from September 11, 2001, and continue to this present date, each and all of the Defendants named, implicitly and explicitly conspired with JUDGES, and POLICE OFFICERS, and HARDCORE CRIMINALS, via corrupted joint racially motivated practices in bad faith to use self-serving unconstitutional sanction Order but **without substantive due process** used to 'EVADE' the United States Constitution, Laws and Statutory provision; further used to denied and deprived Aror-Ark Ark O'Diah freedom of movement, free speech, freedom of expression, employment, housing, do business, and these omissions constituted violation of the First Amendment to the United States Constitution that cause Plaintiff physical irreparable bodily injuries, pains, suffering, loss of private businesses and loss of economic income. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #2: FOURTH AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

2. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date as ongoing, each and all the Defendants, implicitly and explicitly conspired with JUDGES, and POLICE OFFICERS, and HARDCORE CRIMINALS, but **without substantive due process** to unlawfully searched and seized Aror-Ark Ark O'Diah five Businesses Motor Vehicles worth $200,000.00 (Two hundred Thousand U.S. Dollar) and cash money in the amount of $400,000.00 (Four hundred Thousand U.S. Dollar), and unlawfully detain and use false witnesses to denied and deprived Aror-Ark Ark O'Diah due process, freedom of movement, properties, privileges, liberty, and pursues of happiness to cause Plaintiff physical bodily injuries, pains and suffering, loss of private businesses and loss of income, by fraudulent use of false child support collection, and these omissions constituted violation of the Fourth Amendment to the United States Constitution. **Relief sought is $100,000,000.00 (One hundred Million U.S. Dollar).**

## CLAIMS #3: FIFTH AMENDMENT CLAIMS AGAINST EACH AND ALL DEFENDANTS NAMED

3. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date as ongoing, all the Defendants named implicitly and explicitly conspired with JUDGES, and POLICE OFFICERS, and HARDCORE CRIMINALS, **without substantive due process** to use self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution, Laws and Statutory Provisions, and further used the same self-serving unconstitutional sanction order as unconstitutional surveillance and censorship used to targeted, taunted and singled out Aror-Ark Ark O'Diah discriminatively and retaliatorily by using 'inhumane' coercion, intimidation, harassments and threats of irreparable harms in disguise under color of state authorities to deter Aror-Ark Ark O'Diah by using 'inhumane' lies, deceit, cover up and judicial unfettered power corruptly to perpetuate racism used as terrorism used to terrorize Aror-Ark Ark O'Diah to force Aror-Ark Ark O'Diah to testify against himself for crime Aror-Ark Ark O'Diah NEVER committed by forcing Aror-Ark Ark O'Diah to admit to crime he NEVER committed; whereby, false witnesses testimonies were used to procured Aror-Ark Ark O'Diah false arrests, searches and seizures, illegal indictment, malicious prosecutions, unjust convictions, illegal sentences and false imprisonment used to denied and deprived Aror-Ark Ark O'Diah liberty, freedom, free speech, freedom of expression, properties, privileges, to cause Aror-Ark Ark O'Diah loss of private businesses, loss of income, cause physical bodily injuries, pains and suffering. And these omissions constituted violation of the Fifth Amendment to the United States Constitution.

**Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #4: SIXTH AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

4. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date as ongoing, all the Defendants named, implicitly and explicitly conspired with JUDGES, and POLICE OFFICERS, and HARDCORE CRIMINALS, but **without substantive due process** to use self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution, Laws and Statutory Provision likened to 'ENABLER' used to denied and deprived Aror-Ark Ark O'Diah Constitutional Rights to retain Private Attorney-Lawyer of his choice; whereby, the CITY OF NEW YORK, and NEW YORK STATE OFFICIALS, and JUDGES, and POLICE OFFICERS, and HARDCORE criminals conspired to assigned INEFFECTIVE COUNSEL; and soon thereafter, the INEFFECTIVE COUNSEL was corrupted, and lured to AGREE to convict Aror-Ark Ark O'Diah in the Defendants' own systematic violation of 'CONFLICT-OF-INTEREST' by corrupt designed to prevent Aror-Ark Ark O'Diah from testifying truthfully against corrupted JUDGES, against CITY OF NEW YORK, against POLICE OFFICER and against NASSAU COUNTY, and these omissions constituted violation of the Sixth Amendment to the United States Constitution that resulted to unjust conviction, illegal sentences and false imprisonment of Aror-Ark Ark O'Diah that were further used to denied and deprived Aror-Ark Ark O'Diah, liberty, freedom, properties, privileges, opportunities, and the pursues of happiness, that further cause Aror-Ark Ark O'Diah physical bodily irreparable injuries. These omissions constituted violation of the Sixth Amendment to the United States Constitution. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollars.**

## CLAIMS #5: SEVENTH AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS

5. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date as ongoing, all the Defendants named, implicitly and explicitly conspired with JUDGES, and POLICE OFFICERS, and HARDCORE CRIMINALS **without substantive due process** to use self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution, Laws and Statutory Provisions likened to 'ENABLER' that enable United States District Court for the Eastern District of New York in Brooklyn late JUDGE SANDRA J. FEUERSTEIN to unconstitutionally influenced NEW YORK STATE SUPREME COURT JUDGE ARTHUR COOPERMANN, and JUDGE RANDALL ENG in Queen County in New York to misrepresent O'Diah to selected Members of JURY; and thereafter, corruptly instructed the JURY to convict Aror-Ark Ark O'Diah on the JUDGE'S FALSE ASSERTIONS that Aror-Ark Ark O'Diah has been a 'PAIN' to All JUDGES in the United States of America because Aror-Ark Ark O'Diah has repeatedly wrote 'JUDICIAL MISCONDUCT COMPLAINT' as a FREELANCE JOURNALIST-WHISTLEBLOWER against Federal and States Courts JUDGES. The JURY selections were 'TAINTED' by judicial biases and prejudices. And thereafter, Aror-Ark Ark O'Diah was informed by 'INEFFECTIVE COUNSEL' assigned that MANY JUDGES wants Aror-Ark Ark O'Diah convicted not because Aror-Ark Ark O'Diah committed any crime but because Aror-Ark Ark O'Diah wrote many 'JUDICIAL MISCONDUCT COMPLAINTS' against JUDGES; hence, the JUDGES conspired to use false POLICE OFFICER put on witness stand to fabricated false ASSAULT CRIMINAL CHARGES after the POLICE OFFICER had admitted that Aror-Ark Ark O'Diah NEVER assaulted him. Aror-Ark Ark O'Diah was criminally framed up, and the JURY knew or should have known but JUDGE ARTHUR COOPERMAN told the JURY to convict Aror-Ark Ark O'Diah to stop Aror-Ark Ark O'Diah from filing Civil Rights violation Claims due to false arrest, searches and seizure, illegal indictments, malicious prosecutions, unjust convictions, illegal sentences, false imprisonments, five Businesses Motor Vehicle worth $200,000.00 (Two Hundred Thousand U.S. Dollar), and $400,000.00 (Four Hundred Thousand U.S. Dollar) seized **without due process**. These omissions constituted violation of the Seventh Amendment to the United States Constitution. **$100, 000,000.00 (One Hundred Million U.S. Dollar).** **Pages 16**

## CLAIMS #6: EIGHTH AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

6. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants named implicitly and explicitly conspired with corrupted JUDGES, POLICE OFFICERS, NASSAU COUNTY, HARDCORE CRIMINALS and LANDLORD VIA RENAISSANCE EQUITY HOLDINGS, LLC and OWNER and MANAGEMENT VIA FLATBUSH GARDENS having Office located at 3301 Foster Avenue, Brooklyn New York 11210, via corrupted joint racially motivated practices in bad faith were told that they will not be arrested, punish nor prosecuted if they can use every means possible to run Aror-Ark Ark O'Diah from the CITY OF NEW YORK; and FLATBUSH GARDEN was LURED to rely on the use of self-serving unconstitutional sanction ORDER placed inside many Privates and Publics Businesses Establishments but **without substantive due process** used to 'EVADE' the United States Constitution, Laws and Statutory Provision likened to 'ENABLER' that have enable corrupted JUDGES, POLICE OFFICERS, CITY OF NEW YORK EMPLOYEES AT THE NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT and RENAISSANCE EQUITY HOLDINGS, LLC., to subjected Aror-Ark Ark O'Diah to cruel and unusual punishment, and also used the same unlawful practices to denied renting to Aror-Ark Ark O'Diah, by filing harassment and maliciously written and worded eviction claims used to subjected Aror-Ark Ark O'Diah to cruel and unusual punishment by illegally planting BED BUGS on Aror-Ark Ark O'Diah BEDROOM, and the BEDBUGS bites and sucked Aror-Ark Ark O'Diah's Blood, and the repeated BEDBUG BITES cause Aror-Ark Ark O'Diah high blood pressure, and the high blood pressure has been repeatedly reaggravated because the CITY OF NEW YORK lured corrupted JUDGES, POLICE OFFICERS, HARDCORE CRIMINALS and LANDLORD, via RENAISSANCE EQUITY HOLDINGS, LLC, and OWNER via Management via FLATBUSH GARDENS agreed to harass Aror-Ark Ark O'Diah to coerce Aror-Ark Ark O'Diah to move from the Apartment. And these omissions constituted violation of the Eighth Amendment to the United States Constitution. The BEDBUG BITES repeatedly reaggravated Aror-Ark Ark O'Diah pre-existing medical conditions as cruel and unusual punishment created by the Defendants, and cause Aror-Ark Ark O'Diah, pains and suffering. **Reliefs sought is $100,000,000.00 (One Hundred Million Dollar).**

## CLAIMS #7: FOURTEENTH AMENDMENT VIOLATION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

7. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all Defendants named, implicitly and explicitly conspired with late JUDGE SANDRA J. FEUERSTEIN, and JUDGE ARTHUR COOPERMAN, and JUDGE RANDALL ENG, and JUDGE PAMELA K. CHEN, and late JUDGE ROBERT A. KATZMANN to write unconstitutional sanction ORDER discriminatively and retaliatorily written in bad faith, and planted the unconstitutional sanction ORDER inside many Privates and Publics Businesses Establishments, but **without Substantive due process**; and thereafter, used it as self-serving unconstitutional sanction Order to 'EVADE' the United States Constitution, Laws and Statutory Provisions likened to 'ENABLER' that have been unconstitutionally used as unconstitutional surveillance and censorship used to obstruct justice to denied and deprived Aror-Ark Ark O'Diah ACCESS to All Courts in the United States of America, also used to denied and deprived Aror-Ark Ark O'Diah **substantive due process**, properties, liberty, privileges, civil rights, Human rights, immunities, freedom of movement, freedom of expression, employment, conduct private businesses, secure Businesses Loan, rent apartment, purchase Businesses Motor Vehicles Loans, and further used to subjected Aror-Ark Ark O'Diah to pain, suffering, loss of private businesses and loss of economic income; whereby, NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT conspired with racist JUDGES to falsely imprison Plaintiff but **without substantive due process** solely to deny Plaintiff Civil Rights; and these omissions constituted violation of the Fourteenth Amendment to the United States Constitution. **Relief sought is $100,000,000.00 (One hundred million U.S. Dollar)**.

**CLAIMS #8: JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIES FOR DEPRIVATION OF CONSITUTIONAL RIGHT TITLE 42 U.S.C. SECTION 1983 CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

8. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants implicitly and explicitly participated to conspired with Late JUDGE SANDRA J. FEUERSTEIN, and Late JUDGE ROBERT A. KATZMANN to write unconstitutionally worded unconstitutional sanction ORDER discriminatively and retaliatorily in bad faith, and the unconstitutional sanction Order were used as self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provisions used to denied and deprived Aror-Ark Ark O'Diah all Constitutional Rights and Human Rights but **without substantive due process.** And these omissions constituted violation of Title 42 U.S.C. Sections 1983, deprivation of rights. **Relief sought is $100,000,000.00 (One hundred million U.S. Dollar).**

**CLAIMS #9: JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIES TO OBSTRUCT JUSTICE TITLE 42 U.S.C. SECTIONS 1985 CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

9. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that Effective from September 11, 2001, and continues to this present date, all the Defendants, implicitly and explicitly participated to conspired with Late JUDGE SANDRA J. FEUERSTEIN, and Late JUDGE ROBERT A. KATZMANN to write unconstitutionally worded discriminatively and retaliatorily in bad faith unconstitutional sanction ORDER planted inside many Privates and Publics Businesses Establishments used to targeted, taunted and singled out to terrorize Aror-Ark Ark O'Diah; whereby, the unconstitutional sanction ORDER is used as self-serving

unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provisions likened to 'ENABLER' by corrupt designed used to denied and deprived Aror-Ark Ark O'Diah ACCESS to All Courts in the United States of America, but for the main time, the DEFENDANTS named, and Late JUDGE SANDRA J. FEUERSTEIN, and Late JUDGE ROBERT A. KATZMANN, and JUDGE ARTHUR COOPERMANN, and JUDGE RANDALL ENG, and JUDGE PAMELA K. CHEN, and POLICE OFFICERS, and LANDLORD via RENAISSANCE EQUITY HOLDINGS, LLC, and OWNER, and NASSAU COUNTY via FLATBUSH GARDENS and HARDCORE CRIMINALS continue to 'ASSAULTS and cause Aror-Ark Ark O'Diah irreparable physical bodily injuries, and denied and deprived ACCESS to file Civil Complaint to seek judicial redresses. Aror-Ark Ark O'Diah continue to suffer excruciating pains but the DEFENDANTS JOINTLY relied on the unconstitutional sanction ORDER used to denied Aror-Ark Ark O'Diah constitutional rights by obstruction of justices. These omissions constituted violation of the Title 42 U.S.C. Section 1985, obstruction of justice**. Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #10: FOR FAILURE TO PREVENT JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIES TO DEPRIVE CONSTITUTIONAL RIGHTS VIOLATED 42 U.S.C. SECTION 1986 CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

10. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that Effective from September 11, 2001, the DEFENDANTS named and JUDGES participated jointly to conspired to denied and deprived Aror-Ark Ark O'Diah's Constitutional rights, and also FAILED to prevent; while, NASSAU COUNTY used fraud and violence to cause Plaintiff injuries **without substantive due process**. And these omissions constituted violation of 42 U.S.C. Section 1986. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar)** **Pages 20**

**CLAIMS #11: TORT ACTION FOR FREE SPEECH VIOLATIONS OF ARTICLE 1 SECTIONS 7 AND 8 NEW YORK STATE CONSTITUTION CLAIMED AGAINST Each and ALL DEFENDANTS NAMED**

11. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants with Late JUDGE SANDRA J. FEUERSTEIN, and Late JUDGE ROBERT A. KATZMANN, and JUDGE PAMELA K. CHEN, and JUDGE ARTHUR COOPERMANN, and JUDGE RANDALL ENG, and LANDLORD via RENAISSANCE EQUITY HOLDINGS, LLC, and OWNER via NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT and FLATBUSH GARDENS used fraud and violence by deceit, coercion, falsity, 'inhumane' lies, covered up, intimidation and threats via implicit corrupted practices used unconstitutionally to adopted, endorsed, sanctioned, implemented and enforced unconstitutionally written unconstitutional sanction ORDER worded discriminatively and retaliatorily in bad faith but **without substantive due process** used as self-serving unconstitutional sanction ORDER used as unconstitutional surveillance and unconstitutional censorship used to 'EVADE' the United States Constitution, Laws and Statutory Provisions; and further used as unconstitutional policies and conduct of NEW YORK CITY, and NASSAU COUNTY, and NEW YORK STATE by discriminatory design used to prevent, and used to inhibited Aror-Ark Ark O'Diah from speaking out about matters of public concern and seek remedy in the court systems. And these omissions constituted violation of Aror-Ark Ark O'Diah's right to free speech in violation of Article I Sections 7, and 8 of the New York State Constitution. And these omissions damaged Aror-Ark Ark O'Diah ability to conduct his Private Businesses, and causes business loss and loss of income. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #12: TORT FOR RETALIATION VIOLATION OF ARTICLE I SECTION 9 OF NEW YORK STATE CONSTITUTION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

12. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants and racist JUDGES, NASSAU COUNT, NEW YORK CITY, and many Privates and Publics Businesses Establishments unconstitutionally adopted, endorsed, sanctioned, implemented and enforced unconstitutional sanction ORDER unconstitutionally written discriminatively and retaliatorily in bad faith use as self-serving unconstitutional sanction Order used to 'EVADE' the United States Constitution, Laws and Statutory Provision as the policies and conduct of NEW YORK STATE constituted retaliation of the Aror-Ark Ark O'Diah as a result of Aror-Ark Ark O'Diah's Petitions for redress, in violation of Article I Section 9 of the New York State Constitution. As a result of the omissions, Aror-Ark Ark O'Diah incurred economic losses, businesses losses, pains and suffering. And **without substantive due process**. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #13: TORT FOR DEPRIVATION OF RIGHT TO EQUAL PROTECTION OF LAW VIOLATION OF ARTICLE I SECTION 11 OF NEW YORK STATE CONSTITUTION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

13. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all Defendants, and Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, AND Judge PAMELA K. CHEN, and Judge ARTHUR COOPERMANN, and Judge RANDALL ENG, and POLICE OFFICERS, and NASSAU COUNTY conspired to used self-serving unconstitutional sanctioned ORDER to

'EVADE' the United States Constitution, Laws and Statutory Provision; and further used to denied and deprived Aror-Ark Ark O'Diah equal protection because the CITY OF NEW YORK, and NASSAU COUNTY, and NEW YORK STATE OFFICIALS, and RACIST FEDERAL JUDGES have unconstitutionally adopted, endorsed, sanctioned, implemented and enforced the unconstitutional sanction ORDER as the policies and conduct of the NEW YORK STATE used to denied and deprived Aror-Ark Ark O'Diah of his right to equal protection of the laws in violation of Article I Section 11 of the New York State Constitution, as a result of these omissions, Aror-Ark Ark O'Diah continue to incurred economic damages including losses of Private Businesses, losses of income, damages to reputation, and subjected to political vendetta, pains and suffering. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #14: TORT FOR RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES IN VIOLATION OF ARTICLE I SECTIONS 12 OF NEW YORK STATE CONSTITUTION CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

14. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants, and JUDGES, and POLICE OFFICERS, and NASSAU COUNTY participated in widespread joint implicitly and explicitly Racial conspiracies to subjected Aror-Ark Ark O'Diah to unreasonably searches and seizure of Aror-Ark Ark O'Diah Five Privates Businesses Motor Vehicles worth in value $200,000.00 (Two Hundred Thousand U.S. Dollar), plus additional seizure of $400,000.00 (Four Hundred Thousand U.S. Dollar) cash, including many other properties **without Substantive Due Process**, by use of self-serving unconstitutional sanction Order used to 'EVADE' the United States Constitution, Laws and Statutory Provision as the policies and conduct of the Defendants

Jointly violated Aror-Ark Ark O'Diah's right to be free of unreasonable searches and seizures in violation of Article I Section 12 of the New York State Constitution by false child support collection. As a result of these omissions, Aror-Ark Ark O'Diah, suffered physical bodily injuries and business losses. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #15: TORT FOR USE OF EXCESSIVE FORCE CONSTITUTED COMMON LAW BATTERY CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

15. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, all the Defendants, and POLICE OFFICERS, and NASSAU COUNTY, and NEW YORK CITY and Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, hired many Hit Men and Hit Women planted inside many Privates and Publics Businesses Establishment via implicitly and explicitly conspiracies to participates to use self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provisions likened to 'ENABLER' that have enable HARDCORE CRIMINALS and POLICE OFFICERS and LANDLORD, via RENAISSANCE EQUITY HOLDINGS, LLC, and OWNER, NEW YORK CITY EMPLOYEES via FLATBUSH GARDENS acted in bad faith in disguise to excessively physically attacked Aror-Ark Ark O'Diah by MULTIPLE ASSAULTS to cause Aror-Ark Ark O'Diah irreparable physical bodily injuries, loss of tooth, cracked tooth, temporarily loss of eyesight, blurred vision, Burnt Skin, pains and suffering to suffered loss of private businesses and loss of income. The conduct of the CITY OF NEW YORK, and HARDCORE CRIMINALS, and NASSAU COUNTY were without Aror-Ark Ark O'Diah's consent and constituted common law battery by the use of excessive force on Aror-Ark Ark O'Diah. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).** **Pages 24**

**CLAIMS #16: TORT FOR PERSONAL VENDETTA RESULTED TO MALICIOUS PROSECUTION BY USE OF FALSE WITNESSES, FABRICATED TESTIMONIES, AND UNVERIFIED EVIDENCE BY DISCRIMINATORY AND RETALIATORY ACTS CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

16. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that Effective from September 11, 2001, and continue to this present date, all the Defendants, and POLICE OFFICERS lured HARDCORE CRIMINALS and Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and Judge VALERIE CAPRONI and NASSAU COUNTY, and New York City Comptroller SCOTT M. STRINGER, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT and LANDLORD via RENAISSANCE EQUITY HOLDINGS, LLC and OWNER via NEW YORK STATE and FLATBUSH GARDENS jointly participated in widespread implicit and explicit conspiracies to maliciously use self-serving unconstitutional sanction ORDER as policies used to 'EVADE' the United States Constitution, Laws and Statutory Provisions to subjected Aror-Ark Ark O'Diah to vendetta malicious prosecution to cause Aror-Ark Ark O'Diah irreparable physical ASSAULTS bodily injuries, and **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #17: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

17. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date as ongoing, all the Defendants, and CITY OF NEW YORK COMPTROLLER SCOTT M. STRINGER, in disguise implicitly and explicitly conspired to lured Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and POLICE OFFICERS, and Judge ARTHUR

COOPERMANN, and Judge RANDALL ENG, and NASSAU COUNTY, and LANDLORDS and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT via RENAISSANCE EQUITY HOLDINGS, LLC and OWNER via MANAGEMENT FLATBUSH GARDENS and many HARDCORE CRIMINAL planted inside many Private and Publics Businesses Establishments to Agree in mind to subjected Aror-Ark Ark O'Diah to multiple harassment, false arrests, detention, and assaulted to cause irreparable physical bodily injuries; and thereafter, used self-serving unconstitutional sanction ORDER **without substantive due process** were used to 'EVADE' the United States Constitution, Laws and Statutory Provision likened to 'ENABLER' used to denied and deprived Aror-Ark Ark O'Diah ACCESS to Courts Nationwide to seek judicial redress while Aror-Ark Ark O'Diah was repeatedly denied and deprived ACCESS to Healthcare while subjected to pains and suffering causing Aror-Ark Ark O'Diah hopelessness and helplessness while subjected to excruciating pains, private businesses losses, losses of economic income, denied rental, denied business loan, denied properties, denied freedom of movement, denied ACCESS to Courts, denied free speech. And these omissions constituted violation of Human Rights cause intentional infliction of emotional distress. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #18: TORT FOR IRREPABLE PHYSICAL BODILY INJURY AGAINST EACH AND ALL DEFENDANTS NAMED

18. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective September 11, 2001, and continue to this present date, All the Defendants, and NASSAU COUNTY lured HARDCORE CRIMINALS, CITY OF NEW YORK via RENAISSANCE EQUITY HOLDINGS, LLC, and OWNER, and FLATBUSH GARDEN and JUDGES in disguise to implicitly and

explicitly conspired to subjected Aror-Ark Ark O'Diah to multiple ASSAULTS by physical attacks to cause physical bodily injuries by pouring hazardous chemical reagent over Aror-Ark Ark O'Diah whole Bodies, and physically struck and knocked down and briefly unconscious, loss eyesight, and the injuries resulted to temporary DISABILITY, loss income, and loss businesses. And Aror-Ark Ark O'Diah suffered under excruciating pains without any help. And **without Substantive due process.** **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #19: FOR VIOLATION OF CIVIL RIGHT BY FALSE ARRESTS CLAIMED AGAINST EACH AND ALL THE DEFENDANTS NAMED

19. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continues to this present date, All the Defendants, and CITY OF NEW YORK COMPTROLLER SCOTT M. STRINGER, and POLICE OFFICERS, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE OFFICERS, and JUDGES, and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS, and U.S. SMALL BUSINESS ADMINISTRATION ADMINISTRATOR IN NEW YORK REGIONAL DISTRICT DIRECTOR'S SUBORDINATES EMPLOYEES, and HARDCORE CRIMINALS in disguise implicitly and explicitly conspired to subjected Aror-Ark Ark O'Diah to multiple false arrests, searches and seizures **without probable cause**, and denied and deprived Aror-Ark Ark O'Diah freedom of movement, liberty, properties, privileges, association, assemble, and cause Aror-Ark Ark O'Diah fears, worries, emotional distresses, mental torture, loss of businesses, loss of earning, trauma and the posttraumatic effect still persist. And **without substantive due process**. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #20: FOR VIOLATION OF CIVIL RIGHTS BY UNJUST CONVICTION BY USE OF FALSE WITNESS, FABRICATED TESTIMONIES AND FALSE POLICE REPORTS CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

20. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date, All the Defendants, and CITY OF NEW YORK COMPTROLLER SCOTT M. STRINGER, and POLICE OFFICERS, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE OFFICERS, and JUDGES, and NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS, and U.S. SMALL BUSINESS ADMINISTRATION ADMINISTRATOR'S IN NEW YORK CITY REGIONAL DISTRICT DIRECTOR'S SUBORDINATES EMPLOYEES lured HARDCORE CRIMINALS, and WORLD TRADE CENTER HEALTHCARE PROGRAM DIRECTOR AND COORDINATORS, and SEPTEMBER 11, 2001 VICTIM COMPENSATION FUND CLAIM PROCESSING CENTER SPECIAL MASTER and OPERATION DIRECTORS in disguise entered into implicit and explicit conspiracies to subjected Aror-Ark Ark O'Diah to multiple false arrests, searches and seizures; and thereafter, the Defendants jointly callously, falsely and deliberately misrepresented Plaintiff by slanderously and libelously identified him to be a **'TERRORIST' without probably cause** but solely to defame and assassinated Aror-Ark Ark O'Diah by paying false witnesses to fabricated testimonies via false police reports used to subjected Aror-Ark Ark O'Diah to malicious prosecution and unjust conviction, but newly discovered evidences shows that Aror-Ark Ark O'Diah was criminally framed up in retaliation because Aror-Ark Ark O'Diah wrote JUDICIAL MISCONDUCT COMPLAINT against JUDGES. And **denied him substantive due process**. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).** Pages 28

**CLAIMS #21: FOR VIOLATION OF CIVIL RIGHTS BY FALSE IMPRISONMENT BY USE OF FALSE WITNESSES AND FABRICATED TESTIMONIES AGAINST EACH AND ALL DEFENDANTS NAMED PARTICIPATED AND FAILED TO PREVENT**

21. Newly discovered evidence on January 10, 2023, and September 21, 2022, shows that effective from September 11, 2001, and continue to this present date, All the Defendants, and CITY OF NEW YORK COMPTROLLER SCOTT M. STRINGER, and POLICE OFFICERS, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE OFFICERS, and JUDGES, and NASSAU COUNTY, via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS, and U.S. SMALL BUSINESS ADMINISTRATION ADMINISRTATOR'S IN NEW YORK REGIONAL DISTRICT DIRECTOR'S SUBORDINATES EMPLOYEES lured HARDCORE CRIMINALS, and WORLD TRADE CENTER HEALTH CARE PROGRAM DIRECTOR AND COORDINATORS, and SEPTEMBER 11, 2001 VICTIM COMPENSATION FUND SPECIAL MASTER, and OPERATION DIRECTOR, and UNITED STATES POSTAL SERVICE, and FedEx EXPRESS, and CAPITAL ONE BANK, N.A., and OPTIMUM CABLE TV, and SYNCHRONY BANK, and CARECREDIT/SYNCHRONY BANK, and BRIAN DOUBLES, jointly acted in bad faith in disguise via implicit and explicit conspiracies to subjected Aror-Ark Ark O'Diah to multiple false arrests, searches and seizures, and falsely deliberately misrepresented Aror-Ark Ark O'Diah by slanderously and libelously stated and asserted that Aror-Ark Ark O'Diah is a **'TERRORIST' without probable cause**. And Aror-Ark Ark O'Diah was maliciously prosecuted and unjustly convicted by use of false witnesses known to be false used to subjected to seven years imprisonment on false criminal charges that alleged that Aror-Ark Ark O'Diah ASSAULTED PORT AUTHORITY POLICE OFFICER whom Aror-Ark Ark O'Diah did not know, never met, never have

any direct and indirect physical and verbal contact; but thereafter, Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN were lured to write unconstitutional sanction ORDER planted inside many Privates and Publics Businesses Establishment including All Federal and States Courts Nationwide, and further used the ORDER as racist Judge's self-serving unconstitutional sanction ORDER corrupted racist JUDGES used to 'EVADE' the United States Constitution, Laws and Statutory Provision that were further used to denied and deprived Aror-Ark Ark O'Diah all Constitutional Rights to file complaint and to take appeals that helped corrupted racist JUDGES and CITY OF NEW YORK and NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT to hide racism used as terrorism used to terrorize Aror-Ark Ark O'Diah, and further used to subjected Aror-Ark Ark O'Diah to seven years false imprisonment for crime Aror-Ark Ark O'Diah NEVER committed. Aror-Ark Ark O'Diah was sitting inside his Private Businesses SUV TOYOTA MOTOR VEHICLE properly parked in front of DELTA AIRLINE ARRIVAL TERMINAL AT JFK INTERNATIONAL AIRPORT IN JAMAICA IN QUEEN IN NEW YORK when Aror-Ark Ark O'Diah was falsely arrested, maliciously prosecuted and subjected to false imprisonment. Newly discovered evidence shows that Aror-Ark Ark O'Diah was criminally framed up by NASSAU COUNTY and JUDGES and NEW YORK STATE OFFICIALS because Aror-Ark Ark O'Diah filed JUDICIAL MISCONDUCT COMPLAINT against federal and States JUDGSE while Aror-Ark Ark O'Diah was performing his job as a FREELANCE JOURNALIST-WHISTLEBLOWER. Aror-Ark Ark O'Diah became legally disable, denied and deprived all Civil and Human Rights upon the identification of Aror-Ark Ark O'Diah's skin color, race, national origin and for his exercises of freedom of expression and free speech. And **denied substantive due process**. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #22: COMPENSATORY DAMAGES FOR PERSONAL INJURIES LOSS OF TOOTH, CRACKED TOOTH, BURNT SKIN, AND SCARS OF BURNT ALL OVER SKIN CLAIMS AGAINST EACH AND ALL DEFENDANTS NAMED.**

22. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for personal physical bodily injuries. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #23: FOR COMPENSATORY DAMAGES FOR MEDICAL EXPENSES CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

23. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for past, present and future medical expenses. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #24: FOR COMPENSATORY DAMAGES FOR PROPERTIES UNLAWFULLY SEARCHED AND SEIZED WITHOUT DUE PROCESS CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

24. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for properties unlawfully searched and seized **without substantive due process**. In pursues of false and fraudulence child support collection NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT ENFORCEMENT UNIT used 'inhumane' lies to lured a SCAMMER by FRAUD to unlawfully seized Plaintiff's properties. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #25: FOR LOSS OF INCOME CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

25. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for 22-years reliefs for loss of 22-years income. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #26: FOR PRIVATE BUSINESSES LOSSES AND DAMAGES AGAINST EACH AND ALL THE DEFENDANTS NAMED**

26. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for relief for Private Businesses losses and Damages. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #27: FOR PAINS AND SUFFERING CLAIMED AGAINST EACH AND ALL THE DEFENDANTS NAMED**

27. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for past, present and future pains and suffering. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).** NASSAU COUNTY and NEW YORK CITY and NEW YORK STATE seized Plaintiff's Five Private Businesses Motor Vehicles and $400,000.00 cash but **without due process.**

**CLAIMS #28: FOR LOSS OF CONSORTIUM-LOSS TOOTH AND BLURRED EYE-SIGHT CLAIMED AGAINST EACH AND ALL THE DEFENDANTS NAMED**

28. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for consortium-loss of tooth and blurred eye-sight. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #29: FOR LOSS OF OPPORTUNITY-EMPLOYMENT, BUSINESS LOAN, U.S. SMALL BUSINESS ADMINISTRATION COVID-19 (EIDL) DISASTER LOAN CLAIMED AGAINST EACH AND ALL THE DEFENDANTS NAMED**

29. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for loss of opportunity-employment, businesses loan, U.S. Small Business Administration Covid-19 (EIDL) denied because ALL DEFENDANTS participated in disguise to show reckless disregard for the truth, and shows reckless disregard for the U.S. Constitution, Laws and Statutory Provision via

blackballing, and blacklisting of Aror-Ark Ark O'Diah, and his Private Businesses to many PRIVATES AND PUBLICS BUSINESSES ESTABLISHMENT in disguise via maliciously acts in bad faith. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #30: FOR LOSS OF PRIVILEGE AND RIGHTS TO HOUSING DUE TO UNEQUAL AND INHUMANE MISTREATMENT TO CAUSE HUMILIATIONS, EMBARRASSMENT AND HIGH BLOOD PRESSURE AND ANXIETIES CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED

30. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for loss of privileges and rights to Housing due to unequal and 'inhumane' mistreatment to cause Aror-Ark Ark O'Diah humiliations, embarrassments, anxieties, emotional distress and high blood pressure. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #31: FOR DENIAL AND DEPRIVATION OF RIGHT TO RENT ACCOMMODATION OF CHOICE BY BLACKBALLED AND BLACKLISTED AND CLAIMS AGAINST EACH AND ALL DEFENDANTS NAMED

31. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for denial and Deprivations of rights to rent accommodation, to take business loan, to conduct businesses, to exercise freedom of movement, to own properties, because NASSAU COUNTY, and NEW YORK CITY, and NEW YORK STATE and all the DEFENDANTS named used 'inhumane' lies, covered up, blackmailing, blacklisting and blackballing to denied and deprived this Plaintiff the pursues of happiness by the DEFENDANTS jointly knowingly used false witnesses to fabricated false ASSAULT criminal charges used to kidnapped Plaintiff into prison for crime Plaintiff never committed. And **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #32: FOR DEFAMATION BY SLANDEROUS AND BY LIBELOUS INJURIES WHEN PLAINTIFF WAS MALICIOUSLY LABELLED A "TERRORIST" AND CLAIM AGAINST EACH AND ALL DEFENDANTS FOR FAILURE TO PREVENT**

32. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for defamation by slander and libel when unconstitutionally labelled a "TERRORIST" used to denied and deprived healthcare, freedom of movement, rent, accommodation, do businesses, Banking, Loan and SBA Loans and grants. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #33: FOR PHYSICALLY ASSAULTED TO CAUSE IRREPARABLE INJURIES LOSS OF TOOTH, CRAKED TOOTH AND TEMPORARY LOSS OF EYE VISION AND BLURRED EYE-SIGHT CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED FOR FAILURE TO PREVENT**

33. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for physical assault to cause Plaintiff irreparable injuries, including loss tooth, cracked tooth and temporary loss of eyesight, eye vision and blurred eye-sights. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #34: FOR BLACKBALLED, BLACKMAILED AND BLACKLISTED TO MANY PRIVATES AND PUBLICS BUSINESSES ESTABLISHMENTS RESULTED TO DENIED LENDING, DENIED LOANS, AND DENIED BUSNESSES ASSOCIATION AND DENIED SUPPLIES OF GOODS, AND CLAIM AGAINST EACH AND ALL DEFENDANTS NAMED**

34. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for damages caused by blackballing, blackmailing and blacklisting O'Diah and O'Diah's private businesses to many Privates and Publics Businesses Establishments, resulted to denied rent, lending, business loans, and denied businesses associations and denied supplies of merchandise goods and produced and products. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #35: FOR FRAUD IN DISGUISE CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

35. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for the omissions that amounted to fraud in disguise by using corrupted practices to unconstitutionally unduly influenced JUDGES to use self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution, Laws and Statutory Provision solely used to denied and deprived EQUAL ACCESS to the Courts, equal protection via unfairness that amounted to unequal justice by fraudulence schemes. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #36: FOR INTENTIONAL RACIAL DISCRIMINATION AGAINST EACH AND ALL DEFENDANTS NAMED FOR FAILURE TO PREVENT**

36. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for INTENTIONAL RACIAL DISCRIMINATION that resulted to disparages disparity 'inhumane' treatment by use of racial slurs and unconstitutional use of self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provision to procured unfair advantage to secure unequal access to Courts used to denied Aror-Ark Ark O'Diah equal protection and access to Courts upon the identification of skin color, race and national origin. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).** Because all the Defendants implicitly and explicitly jointly conspired to subjected this Pro Se Plaintiff to 'inhumane' mistreatment by acting in bad faith. NO HEAT INSIDE PLAINTIFF'S APARTMENT. NO HOT WATER INSIDE PLAINTIFF'S APARTMENT. AND FOR MORE THAN FIVE YEARS, THE APARTMENT OCCUPIED BY THIS Pro Se Plaintiff has been filled with vicious BED BUG and ROACHES and RATS that terrorize Pro Se Plaintiff both day and nights.

**CLAIMS #37: FOR INTENTIONAL RACIAL RETALIATIONS AGAINST EACH AND ALL DEFENDANTS NAMED FOR FAILURE TO PREVENT**

37. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for the omissions that amounted to INTENTIONAL RACIAL RETALIATION upon the identification of skin color, race, national origin by Defendants jointly using unconstitutional self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provision by retaliatory acts in bad faith because Aror-Ark Ark O'Diah exercise his freedom of expression, free speech to file civil rights action against ALL THE DEFENDANTS; whereby, NASSAU COUNTY via RENAISSANCE EQUITY HOLDINGS, LLC, and FLATBUSH GARDENS, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT colluded in disguise to jointly denied renting, and instigated unconstitutional eviction by joint racially motivated retaliatory acts in bad faith. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

**CLAIMS #38: FOR SHOWING RECKLESS DISREGARD FOR THE TRUTH, AND FOR SHOWING RECKLESS DISREGARD FOR THE UNITED STATES CONSTITUTION, LAWS AND STATUTORY PROVISIONS UPON THE IDENTIFICATION OF NATIONAL ORIGIN INVOKED USCA CONST. AMENDMENTS 1, 4, 5, 6, 7, 8, AND 14; TITLE 42 U.S.C. SECTIONS 1983, 1985 AND 1986; AND FEDERAL CIVIL RIGHTS ACTS OF 1866 AND 1964 VIOLATED. AND CLAIMS AGAINST EACH AND ALL DEFENDANTS**

38. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for the omissions that amounted to reckless disregard for the truth, and reckless disregard for the United States Constitution by using self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provision in bad faith in disguise attempt to secured unfairness in the Courts upon the identification of skin color, race and national origin. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar against all Defendants.**

**CLAIMS #39: FOR JOINT RACIALLY MOTIVATED MEDICALLY DELIBERATE INDIFFERENCE CLAIMED AGAINST EACH AND ALL DEFENDANTS NAMED**

39. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for the omissions that amounted to joint racially motivated medically deliberate indifference; whereby, Aror-Ark Ark O'Diah was being unconstitutionally enrolled into Medicare and Medicaid without Aror-Ark Ark O'Diah consent but done in reckless disregard for Aror-Ark Ark O'Diah rights to PRIVACY; and whereby, Aror-Ark Ark O'Diah was maliciously and deliberately misrepresented to MEDICAL DOCTORS AND HEALTHCARE PROVIDERS via libel, and slander with malicious intent to defame and to cause Aror-Ark Ark O'Diah threats of irreparable harm via medically deliberate indifference treatment in disparage disparity**. Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against all Defendants named.**

**CLAIMS #40: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT INTERFERENCE VIA CONSPIRACIES IN BAD FAITH VIOLATED RIGHT TO PRIVACY IN HEALTHCARE ENROLLMENT WITHOUT CONSENT AGAINST EACH DEFENDANT**

40. Wherefore, I, AROR-ARK ARK O'DIAH, hereby demand for reliefs for the omissions that amounted to joint racially motivated implicit and explicit interferences via systematic violation of rights to PRIVACY in healthcare MEDICARE and MEDICAID enrollment without Plaintiff consent and authorization, because Aror-Ark Ark O'Diah was NEVER a MEDICARE and MEDICAID Recipient, and there was no time nor day did Aror-Ark Ark O'Diah ever granted permission and authorization to be enrolled, but Aror-Ark Ark O'Diah was shocked in dismal, and was humiliated and embarrassed to learnt that his name was been forwarded to

MEDICARE and MEDICAID without consent. Plaintiff Aror-Ark Ark O'Diah, hereby demand that his name and his personal information should be REMOVE, and should have NEVER been given to MEDICARE and to MEDICAID. Plaintiff is not interested in receiving MEDICARE and Medicaid. And any concealed attempt to submit Plaintiff's name and Plaintiff's personal information to MEDICARE and to MEDICAID amounted to the violations of my PRIVACY RIGHTS. And these omissions constituted violation of Plaintiff's PRIVACY RIGHTS. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against all Defendants named**

## CLAIMS #41: FOR JOINT RACIALLY MOTIVATED IMPLICIT EXPLICIT CONSPIRACY BY INTIMIDATION, RELIEF SOUTH $100,000,000.00 AGAINST EACH DEFENDANT

41. Newly discovered evidence on January 10, 2023, September 21, 2022, August 30, 2022, December 6, 2021, May 7, 2021, and September 2, 2021, shows that effective from September 11, 2001, and continue to this present date, THE CITY OF NEW YORK, and CITY OF NEW YORK COMPTROLLER SCOTT M. STRINGER, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE OFFICERS, NASSAU COUNTY, RENAISSANCE EQUITY HOLDINGS, LLC, and FLATBUSH GARDENS MANAGEMENT, and MANY HEALTHCARE PROVIDERS, and CITY MD BROOKLYN HEIGHT, and JAMAICA HOSPITAL MEDICAL CENTER, and NEW YORK PRESBYTERIAN HOSPITAL, and NYC HEALTH + HOSPITALS/MCKINNEY, and FLATBUSH GARDENS SECURITY AND OWNER, and CAPITAL ONE BANK, N.A., and SYNCHRONY BANK, N.A., and CARECREDIT/SYNCHRONY BANK, and BRIAN DOUBLES, and JUDGES, and NEW YORK DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and SEPTEMBER 11, 2001 VICTIM COMPENSATION FUND SPECIAL MASTER AND OPERATION DIRECTOR, and WORLD TRADE CENTER HEALTH PROGRAM

DIRECTOR AND COORDINATOR, and JPMORGAN CHASE BANK, N.A., AND STAPLE STORES, AND NYU LANGONE HEALTH PULMONARY AND SLEEP MED-BKLYN AND BORIS SAGALOVICH, MD, and NEW YORK STATE COMMISSIONER OF THE DEPARTMENT OF CORRECTION AND CUMMUNITY SUPERVISION, and LOGISTIC HEALTH INCORPORATION, and WILLIAM STREET CLINIC, and UNITED STATES POSTAL SERVICE, and FULTON VISION CENTER, LLC, and OPTIMUM CABLE TV, and CSC HOLDINGS, LLC, A SUBSIDIARY OF ALTICE USA, INC., and LATE JUDGE SANDRA J. FEUERSTEIN, and LATE JUDGE ROBERT A. KATZMANN, and JUDGE PAMELA K. CHEN, and JUDGE ARTHUR COOPERMANN, and JUDGE RANDALL ENG, and STATE OF NEW YORK, and UNITED STATES DEPARTMENT OF SOCIAL SECURITY ADMINISTRATION, and JUDGE DEBRA ANN LIVINGSTON, and JUDGE VALERIE CAPRONI, and STATE OF NEW YORK EXECUTIVE DEPARTMENT OF VICTIM SERVICES, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE, and U.S. SMALL BUSINESS ADMINISTRATION ADMINISTRATOR, and SBA NYC REGIONAL DISTRICT DIRECTOR'S SUBORDINATE EMPLOYEES, and FedEx EXPRESS and MANY HARDCORE CRIMINALS planted inside many Privates and Publics Businesses Establishment in disguise under color of State Authorities implicitly and explicitly conspired to subjected Aror-Ark Ark O'Diah to intimidation whereby Aror-Ark Ark O'Diah was subjected to multiple false arrests, detentions, illegal searches and seizures, illegal indictment by use of false witnesses and fabricated testimonies, maliciously prosecuted, unjustly convicted, illegally sentenced to SEVEN YEARS FALSE IMPRISONMENT while Judge ARTHUR COOPERMANN and Judge RANDALL ENG said that Aror-Ark Ark O'Diah is "a pain to All Judges in the United States of America because Aror-Ark Ark O'Diah keep writing judicial misconduct complaint;" and thereafter, Late

Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN were unduly influenced to write unconstitutional sanction ORDER used by JUDGES as self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provisions to prevent, deny and deprive Aror-Ark Ark O'Diah from filing complaint, grievance, and take appeals. Of course, Aror-Ark Ark O'Diah was sitting inside his Private Businesses SUV TOYOTA MOTOR VEHICLE properly parked in front of DELTA AIRLINE ARRIVAL TERMINAL at JFK INT'L AIRPORT when he was falsely arrested, ASSAULTED, SUBJECT TO IRREPARABLE INJURIES.

**CLAIMS #42: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIESS BY THREATS OF IRREPARABLE HARMS CLAIM AGAINST EACH AND ALL DEFENDANT**

42. AROR-ARK ARK O'DIAH incorporates all the pleadings and statement and claims From covered pages (i) starting from paragraph number (I) through paragraphs numbered-forty-One on pages numbered-thirty-nine into this paragraph numbered forty-two as if they were pleaded and claims stated in this paragraph numbered-forty-two on this page numbered-forty. And states as follows: that based upon newly discovered evidence on January 10, 2023, September 21, 2022 shows that effective from September 11, 2001, and continues to this present date, All the Defendants and MANY OF ITS EMPLOYEES acting in bad faith jointly conspired with all the Defendants named in New York State Supreme Court in Kings County including All the Defendants named in this Federal Civil Action jointly subjected Aror-Ark Ark O'Diah to the threats of irreparable harms; whereby, Aror-Ark Ark O'Diah suffered under 'inhumane' ASSAULT, AND AS RESULT OF THE ASSAULT LOSS TOOTH, BROKEN TOOTH, CRACKED TOOTH, LOSS VISION AND LOSS EYESIGHT TEMPORARILY, AND SUFFERED PAINS

FROM BURNT SKIN DUE TO MALICIOUSLY PHYSICALLY ASSAULTS AND HAZARDOUS CHEMICALS REAGENT POURED ALL OVER PLAINTIFF'S BODILY BY ASSAULTER. And BEDBUG was poured on Aror-Ark Ark O'Diah's Bed after Aror-Ark Ark O'Diah fell asleep, and the BEDBUG Bites resulted to fear of irreparable harm because the BEDBUGS BITES has contributed to Aror-Ark Ark O'Diah's Blood abnormality, and high blood pressure that has resulted to periodic recurring physical paralysis, mental torture, strokes, heart attacks, emotional distress, worries, anxieties, pains, suffering, loss of businesses, and loss of income. And Aror-Ark Ark O'Diah filed complaint before the NEW YORK CITY COMMISSION ON HUMAN RIGHTS But the NEW YORK CITY COMMISSIONER ON COMMISSION FOR HUMAN RIGHTS EXPRESSES CONFLICT-OF-INTEREST on the assertion that the CITY OF NEW YORK and JUDGES are participant in reckless disregard to Aror-Ark Ark O'Diah's rights to be free from repeated threats of irreparable harms. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar).**

## CLAIMS #43: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT HARASSMSNT IN DISGUISE, RELIEF SOUGHT HUNDRED MILLION U.S. DOLLAR

43. Aror-Ark Ark O'Diah, hereby incorporated all the statement of claims on pages Numbered (i) starting from paragraph numbered-(I) through paragraph numbered-Forty-two above on this paragraph numbered-Forty-three as if they were plead in this page; and states that Newly discovered evidence on January 10, 2023, shows that effective from September 11, 2001, and continue to this present date that All the Defendants participated in joint implicit and explicit conspiracies to harassed Aror-Ark Ark O'Diah to coerced Aror-Ark Ark O'Diah to give up the exercises of his Civil Right and Human Right. **Relief sought is: $100,000,000.00 against Each and All Defendants named.**

**CLAIMS #44: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIES VIA DEPRIVATION OF CONSTITUTIONAL RIGHTS UPON THE IDENTIFICATION OF SKIN COLOR, RACE AND NATIONAL ORIGIN**

44. Plaintiff AROR-ARK ARK O'DIAH, hereby incorporate all the statement of claims on pages numbered-(i) starting from paragraph numbered-Introduction through paragraph numbered-Forty-Three above as if they were stated and pleaded in this paragraph numbered-Forty-four, and states the following in addition: Newly discovered evidence on January 10, 2023, shows that effective from September 11, 2001, continue to this present date, NASSAU COUNTY implicitly and explicitly conspired unconstitutionally with late Judge SANDRA J, FEUSERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and Judge VALERIE CAPRONI, and Judge DEBRA ANN LIVINGSTON and many of the Defendants named in this above-captioned action to lured these JUDGES to write unconstitutional sanction Order in bad faith discriminatively and retaliatorily **without substantive due process**, and the unconstitutional sanction ORDER was planted inside many Privates and Publics Businesses Establishments. The unconstitutional sanction ORDER was used by THE CITY OF NEW YORK, and JUDGES, and the DEFENDANTS as self-serving unconstitutional sanction ORDER used to 'EVADE' the United States Constitution, Laws and Statutory Provision callously to prevent, deny and deprived Aror-Ark Ark O'Diah exercises of his Constitutional Rights to seek judicial readdress, and also used as unconstitutional surveillances and censorship used to blackballed, blacklisted, blackmailed, harass, threatened, intimidated, deny and deprived freedom of movement, freedom of association, freedom of expression, freedom of speech, freedom of assembly, liberty, property, conduct private business, denied and deprived ACCESS to Courts Nationwide

upon the identification of Aror-Ark Ark O'Diah's race, skin color, national origin and in retaliation because Aror-Ark Ark O'Diah filed grievances petition via judicial misconduct complaint, and the unconstitutional sanction ORDER was used libelously and slanderously to defame and assassinated Aror-Ark Ark O'Diah in person, reputation, character, businesses, and was also used to deny and deprived the ability and capability to conduct privates businesses, and these omissions constituted violation of Aror-Ark Ark O'Diah's deprivation of Constitutional rights; more so, after Aror-Ark Ark O'Diah was subjected to multiple false arrests, illegal searches and seizures, illegal indictment by use of false witnesses and fabricated testimonies, and unverified evidence via malicious prosecutions, unjust convictions, illegal sentences and seven years false imprisonment **without probable cause** but by discriminatory and retaliatory acts in bad faith **without substantive due process**. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) claims against Each and All Defendants named**

## CLAIMS #45: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT CONSPIRACIES TO DENIED AND DEPRIVED EQUAL ACCESS TO COURTS, AND USE OF SELF-SERVING UNCONSTITUTIONAL SANCTION

45. AROR-ARK ARK O'DIAH, incorporates all the statements of claims stated on page labelled-(i) starting from paragraph labelled-(I) through paragraphs numbered-forty-four above through page numbered-forty-three as if they were pleaded, and stated in this paragraph numbered-forty-five, and states the following in addition: Newly discovered evidence on January 10, 2023, and continue to this present date shows that effective from September 11, 2001, and continues thereafter, NASSUA COUNTY and CITY OF NEW YORK and EMPLOYEES in

disguise under color of State Authorities implicitly and explicitly conspired with MANY JUDGES; whereby, Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and Judge VALERIE CAPRONI, and Chief Judge DEBRA ANN LIVINGSTON, and Retire State Court Judge ARTHUR COOPERMAN, and Judge RANDALL ENG, unconstitutionally discriminatively and retaliatorily in bad faith AGREE to adopt, endorsed, sanctioned, implemented and enforced unconstitutionally written unconstitutional sanction ORDER in bad faith **without Substantive due process** and used the unconstitutional sanction Order as self-serving unconstitutional sanction ORDER planted inside many Privates and Publics Businesses Establishments and unconstitutionally used to 'EVADE' the United States Constitution, Laws and Statutory Provision to prevent, deny and deprived Aror-Ark Ark O'Diah ACCESS to All Courts in the United States of America Nationwide but after Aror-Ark Ark O'Diah was subjected to multiple false arrests, searches and seizures, illegal indictments, malicious prosecution, unjust convictions, illegal sentences and seven years false imprisonment **without substantive due proves;** whereby, Aror-Ark Ark O'Diah has been denied and deprived his properties, CASH MONEY, liberty, freedom of expression, assemble, association, life, pursues of happiness, rental, businesses loans, assaulted; whereby, Aror-Ark Ark O'Diah and Privates Businesses were blackballed, blacklisted, blackmailed and placed on unconstitutional surveillances and Censorship by the use of the unconstitutional sanction ORDER used libelously and slanderously to defamed Aror-Ark Ark O'Diah to damaged Aror-Ark Ark O'Diah in person and Businesses. **And relief sought is: $100,000,000.00 (One Hundred Million U.S. Dollar) against Each and All Defendants named. Because Chemour Company and Honeywell denied Plaintiff businesses.**

**CLAIMS #46: FOR JOINT RACIALLY MOTIVATED IMPLICIT AND EXPLICIT SYSTEMATIC ATTEMPTED TO RETALIATES, DISCRIMINATES, BY EXTORTION, AND BY ACTUAL EXTORTION VIA COURTS FILING FEE, AND OVER-CHARGES OF RENTAL VIA DELIBERATE MISREPRESENTATION**

46. AROR-ARK ARK O'DIAH, hereby incorporate all the statements of claims on pages labelled-(i) starting from paragraphs labelled-(I) through paragraphs numbered-Forty-Five on page numbered-forty-Four as if they were stated and pleaded in this paragraph numbered-Forty-Six, and states the following in addition: Newly discovered evidence on January 10, 2023, and continues thereafter shows that effective from September 11, 2001, and continues thereafter, THE CITY OF NEW YORK AND NASSAU COUNTY in disguise under color of State Authorities acted in bad faith via widespread joint racially motivated implicit and explicit conspiracies to actually conspired to influenced NEW YORK STATE via LANDLORDS that Aror-Ark Ark O'Diah is a "TERRORIST" and told LANDLORDS that Aror-Ark Ark O'Diah has been prevented, denied and deprived all constitutional and statutory rights to file any complaint in the United States of America by the unconstitutional use of the self-serving unconstitutional sanction ORDER planted in All Courts, and inside many Privates and Publics Businesses Establishments; and as result, the CITY OF NEW YORK DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT tell LANDLORD via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS and NASSAU COUNTY and All the Defendants named in this above-captioned Civil Action to subjected Aror-Ark Ark O'Diah to become multiple victims of EXTORTION, OVER-CHARGES OF RENTAL, COURTS CHARGES **WITHOUT DUE PROCESS,** and also subjected to deliberate misrepresentation. And these omissions constituted violation of

Aror-Ark Ark O'Diah rights to be free from EXTORTION, COURTS FILING FEE OVER-CHARGES, RENTAL OVER-CHARGES, and repeatedly subjected Aror-Ark Ark O'Diah to unconstitutional eviction proceedings initiated by use of EXTORTION INTENT, OVER-CHARGES, BLACKBALLING, BLACKMAILLING, BLACKLISTING, COURTS FILING FEES OVER-CHARGED, via deliberate misrepresentation to cause Aror-Ark Ark O'Diah pains and suffering. **<u>And Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against Each and all Defendants named</u>**

## <u>CLAIMS #47: FOR VIOLATION OF WHISTLEBLOWER PROTECTION ACT BY DISCRIMINATION, RETALIATION, LIBELOUS ACTS IN BAD FAITH</u>

47. AROR-ARK ARK O'DIAH, hereby incorporates all statements of claims on pages labelled-(i) starting from paragraphs labelled-(I) through Paragraphs numbered-forty-Six on Page numbered-forty-Five above as if they were stated and pleaded in this paragraphs numbered-Forty-Seven, and states the following in addition: Newly discovered evidence on January 10, 2023, shows that effective from September 11, 2001, and continues thereafter, to this present date, All the Defendants, and Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and Judge VALERIE CAPRONI, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT EMPLOYEES, and NASSAU COUNTY via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS MANAGEMENT, and ALL THE DEFENDANTS named in this above-captioned Civil Action acted discriminatively and retaliatorily in bad faith in disguise under color of State Authority via jointly implicit and explicit conspiracies to write joint racially motivated unconstitutional sanction ORDER but after deliberately misrepresented Aror-Ark Ark O'Diah as a **<u>"TERRORIST"</u>** and also

identified Aror-Ark Ark O'Diah as a "WHISTLEBLOWER." And newly discovered evidence shows that the main purpose of writing the unconstitutional sanction ORDER planted inside many Privates and Publics Businesses Establishment was by racially motivated discriminatory and retaliatory acts in bad faith used to stop, prevent, deny and deprived Aror-Ark Ark O'Diah from exercising his rights protected under the WHISTLEBLOWER'S PROTECTION ACT because the unconstitutional sanction ORDER was used to 'EVADE' the United States Constitution, Laws and Statutory Provision that have enable THE CITY OF NEW YORK and NASSAU COUNTY and JUDGES and All the Defendants to blackballed, blackmailed, blacklisted and subjected Aror-Ark Ark O'Diah to libelous and slanderous injuries via defamation used to discredit Aror-Ark Ark O'Diah via deliberate misrepresentation to cause Aror-Ark Ark O'Diah irreparable physical bodily injuries by ASSAULT designed by the CITY OF NEW YORK via NASSAU COUNTY that contributed to Aror-Ark Ark O'Diah rental hardship, financial hardship, private businesses losses, and losses of economic income. And causing Aror-Ark Ark O'Diah pains and suffering. And these omissions constituted violation of the WHISTLEBLOWER PROTECTION ACT. **And relief sought is $100,000,000.00 (One hundred Million U.S. Dollar) against Each and All Defendants named.**

## CLAIMS #48: FOR VIOLATIONS OF HUMAN'S RIGHTS BY NEW YORK CITY COMMISSIONER ON HUMAN RIGHTS COMMISSION OBSTRUCTING DUE PROCESS, FAILED TO INVESTIGATE ABUSES DUE TO CONFLICT-OF-INTEREST

48. AROR-ARK ARK O'DIAH, hereby incorporates all the statements of claims on pages Labelled-(i) starting from paragraphs labelled-(I) through paragraphs numbered-forty-seven on this page numbered-forty-seven above as if they were stated and pleaded in this

paragraph numbered-forty-eight, and states the following in addition: Newly discovered evidence on January 10, 2023, and continues thereafter to this present date shows that effective from September 11, 2001, and continues thereafter to this present date, All the Defendants, including THE CITY OF NEW YORK and NASSAU COUNTY via the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and FEDERAL AND STATES COURTS JUDGES IN NEW YORK, and NEW YORK STATE via RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDENS PROPERTY MANAGEMENT, AND ALL THE DEFENDANTS named in this above-captioned Action Civil Cases discriminatively and retaliatorily in bad faith implicitly and explicitly conspired to unconstitutionally to unduly influenced the CITY OF NEW YORK COMMISSIONER HAVING THE JURISDICTION AND OVERSIGHT OVER COMMISSION ON HUMAN RIGHT COMPLAINTS to deny and deprived Aror-Ark Ark O'Diah equal protection upon the identification of Aror-Ark Ark O'Diah's National Origin, and RESULTED to refusal to investigate series and many of Human Rights violations complaint filed by Aror-Ark Ark O'Diah about discriminations and retaliations in Housing, Renting, EIDL Applications Processing, false arrests, and multiple ASSAULTS and PHYSICAL BODILY INJURIES. But newly discovered evidence shows that the CITY OF NEW YORK COMMISSIONER ON COMMISSION FOR HUMAN RIGHTS knew or should have known that JUDGES were using self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution, Laws and Statutory Provision to enable JUDGES to denied and deprived Aror-Ark Ark O'Diah equal protection, and because of 'CONFLICT-OF-INTEREST' the CITY OF NEW YORK COMMISSIONER FOR COMMISSION ON HUMAN RIGHT refused to investigate the abuses and inhumane cruel and unusual punishment inflicted on and against Aror-Ark Ark O'Diah, effective from September 11, 2001, and continue

without stop to this present date. And this omission constituted violation that amounted to 'CONFLICT-OF-INTEREST' because the CITY OF NEW YORK COMMISSIONER FOR THE COMMISSION ON HUMAN RIGHT refused to investigate hate crimes committed by federal and states Courts JUDGES; even though, THE CITY OF NEW YORK COMMISSIONER FOR COMMISSION OF HUMAN RIGHTS knew or should have known that "NOBODY IS ABOVE THE LAW," and "NOBODY IS ABOVE THE RULE OF LAW AND ORDER." As a result of these omission, Aror-Ark Ark O'Diah, continue to remain in pains and suffering due to deprivation of Human Rights. **And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against Each and All Defendants named**

**CLAIMS #49: FOR PSYCHOLOGICAL PARALYSIS DUE TO RECURRING FALSE ARRESTS, ASSAULTS, HARASSMENTS, SEARCHES AND SEIZURES OF PERSONAL, BUSINESSES, AND FAITH BASED RELIGION RELIGIOUS MAILS WITH MALICIOUS INTENT TO OBSTRUCT JUSTICE VIA NASSAU COUNTY**

49. AROR-ARK ARK O'DIAH, hereby incorporates all the statements of claims stated and pleaded on page labelled-(i) starting from paragraph labelled-(I) through paragraphs numbered-forty-eight above on page numbered-forty-eight into this paragraph numbered-forty-nine as if they were stated and pleaded in this paragraphs numbered-forty-nine, and states the following in addition: Newly discovered evidence on January 10, 2023, shows that effective from September 11, 2001, and continues thereafter to this present date, THE CITY OF NEW YORK, and ALL THE DEFENDANTS named in this above-captioned Civil Actions Complaints implicitly and explicitly conspired to unconstitutionally AGREE in disguise under color of State Authority to use self-serving unconstitutional sanction ORDER to 'EVADE' the United States Constitution,

Laws and Statutory Provision by corrupted callous design in bad faith to prevent, deny and deprived Aror-Ark Ark O'Diah from the exercises his Constitutional and Statutory Provision Rights; while, Aror-Ark Ark O'Diah was being subjected to multiple false arrests, searches and seizures, illegal indictments, malicious prosecutions, unjust convictions, illegal sentences and seven years false imprisonment; whereby, false witnesses, fabricated testimonies, 'inhumane' lies, frauds, judicial unfettered power, deliberate misrepresentations, frauds, cover-up and unverified evidence were used libelously and slanderously to defamed, blackballed, blacklisted and blackmailed Aror-Ark Ark O'Diah that were also repeatedly used to subjected Aror-Ark Ark O'Diah to psychological recurring paralysis, due to multiple false and malicious arrests, assaults, harassment, threats, intimidations, searches and seizures of personal and businesses properties, and further used to denied and deprived access to faith based religion religious associations, businesses, and personal mails seized by UNITED STATES POSTAL SERVICE; via NASSAU COUNTY, and RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GADENS PROPERTY MANAGEMENT by the participation of FedEx EXPRESS, and UNITED STATES SMALL BUSNESS ADMINISTRATION ADMINSTRATOR'S IN NEW YORY CITY REGIONAL DISTRICT DIRECTOR'S SUBORDINATES OFFICES, and SEPTEMBER 11, VICTIMS COMPENSATION FUND SPECIAL MASTER, and OPERATION DIRECTOR. And these omissions constituted violation of Aror-Ark Ark O'Diah's constitutional protected rights that continue to cause Aror-Ark Ark O'Diah pains and suffering, loss of businesses, loss of income, deprivations of constitutional rights that causes emotional distresses. **And Relief sought is $100,000,000.00 (One hundred Million U.S. Dollar) against Each and all Defendants named.**

**CLAIMS #50: FOR UNCONSTITUTIONAL SURVEILLANCES AND CENSORSHIP BY USE OF SELF-SERVING UNCONSTITUTIONAL SANCTION ORDER USED TO 'EVADE' THE U.S. CONSTITUTION, LAWS AND STATUTORY PROVISION TO PERPETUATE RACIALLY MOTIVATED HATE CRIMES, BIASES, PREJUDICES, ANTI-BLACKNESS WITHOUT DUE PROCESS SOLELY TO RETALIATES, AND DISCRIMINATES**

50. AROR-ARK ARK O'DIAH, hereby incorporates all the statements of claims stated and pleaded on page labelled-(i) starting from paragraphs labelled-(I) through paragraphs numbered-forty-nine above on page numbered-forty-nine into this paragraphs numbered-fifty as if they were stated and pleaded in this paragraphs numbered-fifty, and states the following in addition: Newly discovered evidence on January 10, 2023, shows that effective from September 11, 2001, and continues thereafter to this present date, All the Defendants, and their EMPLOYEES, and Late Judge SANDRA J. FEUERSTEIN, and Late Judge ROBERT A. KATZMANN, and Judge PAMELA K. CHEN, and Judge VALERIE CAPRONI, and Chief Judge DEBRA ANN LIVINGSTON, and Judge WILLIAM H. ALSUP, and Chief Judge THOMAS, and Retired Judge ARTHUR COOPERMANN, and Retired Judge RANDALL ENG, NASSAU COUNTY and RENAISSANCE EQUITY HOLDINGS, LLC., and FLATBUSH GARDEN PROPERTY MANAGEMENT, and All THE DEFENDANTS named in this above-captioned Civil Actions Complaints discriminatively and retaliatorily implicitly and explicitly conspired to write unconstitutional sanction Order; and thereafter, unconstitutionally used the unconstitutional sanction ORDER as self-serving unconstitutional sanction ORDER unconstitutionally adopted, endorsed, sanctioned, implemented and enforced <u>**without substantive due process**</u> used to 'EVADE' the United States Constitution, Laws and Statutory Provision; and thereafter, further used as unconstitutional surveillance and censorship discriminatively and retaliatorily against Aror-Ark Ark O'Diah but

after Aror-Ark Ark O'Diah wrote and filed 'JUDICIAL MISCONDUCT COMPLAINT' against JUDGES. The unconstitutional sanction ORDERS were used as GUARANTEE to protect Racist NASSAU COUNTY FAMILY COURT JUDGES, racist JUDGES, racist BANKS AND THEIR EMPLOYEES, Racist HALTHCARE PROVIDERS, racist MEDICAL DOCTORS, racist CREDIT REPORTING BUREAUS, Racist UNITED STATES POSTAL SERVICE EMPLOYEES, Racist UNITED STATES SMALL BUSINESS ADMINSTRATION ADMINSTRATOR'S IN NEW YORK CITY REGIONAL DISTRICT DIRECTOR AND THEIR SUBORDINATES EMPLOYEES planted inside many Privates and Publics Businesses Establishment used to lured and encouraged and influenced HARDCORE CRIMINALS to use racism used as terrorism used to terrorize Aror-Ark Ark O'Diah, via 'inhumane' hate crimes committed against Aror-Ark Ark O'Diah's Human Being Humanities to cause Aror-Ark Ark O'Diah irreparable physical bodily injuries, private businesses loss, loss of economic income, pains and suffering. And these omissions constituted violations of Civil and Human Rights**. And relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against Each and All Defendants named**

**CLAIMS#51: FOR VIOLATION OF SUBSTANTIVE DUE PROCESS AND BY DELIBERATE MISREPRESENTATION OF PLAINTIFF'S NAME TO THE GENERAL PUBLIC WITHOUT DUE PROCESS TO INVOKED USCA CONST. AMENDMENTS 1, 8, AND 14 TO THE U.S. CONSTITUTION CLAIMS AGAINST NASSAU COUNTY, ALL JUDGES IN NASSAU COUNTY FAMILY COURT AND NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT AND ALL CREDIT REPORTING BUREAUS, AND ALL BANKS NAMED IN THIS ABOVE-ACTION**

51. On about February 6, 2023, and continue thereafter, NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT and NEW YORK STATE place a lien on Plaintiff's checking account but **without substantive due process** to denied and deprived Plaintiff

Aror-Ark Ark O'Diah ACCESS his Bank Checking Account to get money to purchase medication needed while Plaintiff was subjected to periodic recurring paralysis due to injuries caused by SEPTEMBER 11 TERRORIST ATTACKED. AND THE TRAUMA of not having ACCESS to Bank Checking Account contributed to anxieties, emotional distress and extreme trauma that reaggravated heart attack and stroke. And these omissions constituted violation of Plaintiff's rights. **And relief sought against NASSAU COUNTY, NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT AND NEW YORK STATE IS $100,000,000.00 (ONE HUNDRED MILLION U.S. DOLLAR.)**

52. Newly discovered evidence on February 10, 2023, shows that on about June 29, 2012, and October 25, 2013, NASSAU COUNTY FAMILY COURT, and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT and NEW YORK STATE held and heard secret Family Court Proceeding but **without Substantive Due Process** because Plaintiff was NEVER served any NOTICE relating to the NASSAU COUNTY FAMILY COURT Proceeding while Plaintiff was unconstitutionally held in the NEW YORK STATE DEPARTMENT OF CORRECTION AND CUMMUNITY SUPERVISION from January 26, 2007, through December 27, 2013, or thereafter.

53. In the period of September 11, 2001, through present, Plaintiff Aror-Ark Ark O'Diah, continue to suffer under periodic recurring physical disability due to SEPTEMBER 11, 2001, WORLD TRADE CENTER TERRORIST ATTACKS where Plaintiff suffered severe injuries.

54. On January 26, 2007, through December 27, 2013, Plaintiff was legally and physically disable because Plaintiff was unconstitutionally held in the New York State Department of Correction and Community Supervision; whereby, NASSAU COUNTY, and NASSAU COUNTY

CHILD SUPPORT COLLECTION UNIT, and NEW YORK STATE knew or should have knew, or should have known that Plaintiff have no liberty of movement, and have no freedom of movement, and Plaintiff was NEVER served any NASSAU COUNTY FAMILY COURT proceedings held and heard on June 29, 2012, and October 25, 2013. And these omissions constituted violation of this Plaintiff right to substantive due process. And **Relief sought is $100,000,000.00 (ONE HUNDRED MILLION U.S. DOLLAR) against NASSAU COUNTY and NEW YORK STATE.**

55. Effective from October 25, 2000, NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT and NEW YORK STATE have been unconstitutionally seeking false and fraudulence child support collection from this Plaintiff but **without substantive process** because Plaintiff have NEVER seen the child, and no DNA PATERNITY TEST to establish paternal relationship; yet, NEW YORK STATE, and NEW YORK CITY and NASSAU COUNTY have unconstitutionally misused THE PORT AUTHORITY OF NEW YORK and NEW JERSEY POLICE OFFICER to unlawfully searched and seized Plaintiff's FIVE PRIVATE BUSINESSES MOTOR VEHILCES worth $200,000.00 (Two Hundred thousand U.S. Dollar), and cash in the amount of $400,000.00 and repeatedly subjected Plaintiff to multiple false arrest, and brutally beaten and injured and false imprisonment in the period of October 25, 2000 through June 22, 2006, but **without substantive due process.** Plaintiff belief that these omissions constituted violations of rights protected under the Fourteenth Amendment to the U.S. Constitution, and Title 18 U.S.C. Sections 242; and Federal Civil Rights Acts of 1866 and 1964; and Title 42 U.S.C. Sections 1983, 1985 and 1986, for deprivation of rights and failure to prevent. **Relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) against NASSAU COUNTY, NEW YORK STATE and NEW YORK CITY.**

56. All the Banks and Financial Institutions named, including the Credit Reporting Bureaus and Privates Attorneys named in this above-caption action incorrectly knowingly and deliberately maliciously incorrectly reported Plaintiff's name, and further knowingly and deliberately and maliciously published Plaintiff's name incorrectly to the general Public libelously and slanderously with malicious intent to harass, intimidate, tarnish and subjected Plaintiff to threat of irreparable harm to cause Plaintiff hardship in person and to private businesses by the Defendants knowingly showing reckless disregard for the truth by callously misrepresented Plaintiff to Privates and Public Businesses Establishment, and the misrepresentation resulted to denial of business loan and business association as a result, HONEYWELL and CHEMOUR COMPANY refused to do business with Plaintiff and with Plaintiff Privates Businesses. And Plaintiff beliefs that these omissions constituted violation to Plaintiff's constitutional right in the pursues of happiness. And **relief sought is $100,000,000.00 (One Hundred Million U.S. Dollar) each of the Attorney and their Law Firm, and against each of the BANK and their Associates named.**

**CLAIMS #52: BREACH OF CONTRACT BY FRAUD AND BY DISCRIMINATORY AND RETALIATORY PRACTICES IN BAD FAITH IN DISGUISE VIA INHUMANE MISTREATMENT, AND THIS CLAIM IS AGAINST NASSAU COUNTY; T – MOBILE; NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE; AND NEW YORK STATE EXECUTIVE DEPARTMENT OF CRIME VICTIM SERVICES AND SOCIAL SECURITY ADMINISTRATION FOR SYSTEMATIC VIOLATION OF SUBSTANTIVE DUE PROCESS USCA CONST. AMENDMENTS 8 AND 14 VIOLATED**

57. Plaintiff Aror-Ark Ark O'Diah hereby incorporate all the pleading and statement from cover page (i) to this Page number-fifty-five as they were stated in the paragraph numbered-fifty-seven.

58. On about two years ago, Plaintiff purchased Cell Phone wireless services for four service Lines from T – Mobile for the monthly cost of about $167.17 but as thereafter a year, T – Mobile increase month payment to $170.17.

59. On about January 4, 2023, Plaintiff received a text from T – Mobile with a charge of more the $400.00 with additional five lines added to Plaintiff's Business Cell Phone Lines without Plaintiff knowledge, and without consent and without Plaintiff authorization.

60. On January 4, 2023 through March 6, 2023, Plaintiff conduct investigation only to found That T – Mobile knowingly fraudulently connect five additional Cell Lines used by unknown person to Plaintiff and added to charges to Plaintiff's Businesses lines.

61. Newly discovered evidence shows that T – Mobile fraudulently added additional five Cell Phone lines bills to Plaintiff's and Businesses bill; and this mean that Plaintiff was paying for additional five Cell line for that Plaintiff never used.

62. Plaintiff beliefs that T – Mobile breach the contract originally signed, and Plaintiff beliefs that these breaches amounted to fraud; WHEREFORE, Plaintiff hereby demand for **relief in the amount of $100,000,000.00 (One Hundred Million U.S. Dollar**) damages against T – Mobile for fraud.

63. On the period of September 11, 2001, to present, Plaintiff has been subjected to periodic recurring paralysis, heart attacks, stroke and disabilities created by September 11, 2001, terrorist attack at the World Trade Center in Manhattan in New York; and a result, Plaintiff have not earn income from employment not from business for the past 22 years due to periodic recurring disability.

64. On about year 2018, Administrative Law Judge at the Social Security Administration GRANTED Plaintiff Appeals and awarded Plaintiff SSI claims.

65. On about June 10, 2021, NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE and SOCIAL SECURITY ADMINISTRATION discriminatively and retaliatorily implicitly and explicitly conspired in bad faith to AGREE to discontinued SSI payment to Plaintiff while Plaintiff was still subjected to periodic recurring paralysis, heart attacks, stroke and life-threatening periodic recurring disabilities but **without substantive due process.**

66. On about May 7, 2021, and September 2021, Plaintiff was physically ASSAULTED by Multiple Physical attacks by unknown criminals, and Plaintiff continue to suffer severe injuries and excruciating pains and suffering in addition to pre-existing medical condition created by September 11, 2001, WORLD TRADE CENTER TERRORIST ATTACKS resulting to periodic recurring paralysis, heart attack and strokes and periodic recurring disability.

67. Plaintiff applied for NEW YORK STATE EXECUTIVE DEPARTMENT OF CRIME VICTIM SERVICE but SOCIAL SECURITY ADMINISTRATION, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE, and NASSAU COUNTY, and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT jointly implicitly and explicitly discriminatively and retaliatorily conspired to obstruct the processing of CRIME VICTIM BENEFIT because NASSAU COUNTY, and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT want the CRIME VICTIM BENEFIT CLAIM for a child Plaintiff never knew, never met, have never seen, and no DNA paternity test to establish any paternal relationship. **WHEREFORE**, Plaintiff hereby beliefs that these Defendants omissions constituted violation of Plaintiff's constitutional right to due process.

Wherefore, Plaintiff hereby **demand for equitable compensation in the amount of $100,000,000.00 (One Hundred Million U.S. Dollar)** against NASSAU COUNTY and NASSAU COUNTY CHILD SUPPORT COLLECT UNIT, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE, and NEW YORK STATE EXECUTIVE DEPARTMENT OF CRIME VICTIM SERVICE for failure to process Plaintiff's Crime Victim Claims by acting in bad faith by discrimination and retaliation upon the identification of Plaintiff's National origin.

**TOTAL RELIEF SOUGHT AGAINST EACH DEFENDANT NAMED IN THE ABOVE-CAPTION ACTION**

68. **WHEREFORE**, Plaintiff Aror-Ark Ark O'Diah, hereby pray, asked, request and demand that this Honorable Court **GRANT** All the relief sought in each claim as already stated against each and all of the Defendants named jointly and separately in their individual and official capacities in this above-captioned action, and as also stated below as follows:

(a) $100,000,000.00 (One Hundred Million U.S. Dollar) be awarded in favor of Plaintiff Aror-Ark Ark O'Diah against each Defendant named in this above-caption action in each claim as stated from claim#1 through Claim#52 above;

(b) And NASSAU COUNTY, and NASSAU COUNTY CHILD SUPPORT COLLECTION UNIT, and NEW YORK STATE and ALL KNOWN and UNKNOWN PERSONS be barred from seeking Child Support Collection from this Plaintiff Aror-Ark Ark O'Diah because Aror-Ark Ark O'Diah did not know the child, have NEVER seen the child, and there has been no DNA Paternity test to establish relationship and **Plaintiff has been denied and deprived substantive due process;**

(c) And SOSCIAL SECURITY ADMINISTRATION be directed to retroactively pay Plaintiff SSI that was discontinued in bad faith **without substantive due process;**

(d) And NEW YORK STATE, and NEW YORK STATE DEPARTMENT OF TEMPORARY AND DISABILITY ASSISTANCE, and NEW YORK STATE EXECUTIVE DEPARTMENT OF CRIME VICTIM SERVICE be directed to pay Plaintiff Crime Victim Claim, and these Defendant be further directed to refund to Plaintiff all Tax Refund unconstitutionally withheld **without substantive due process** for fraudulently alleged child support collection arears but without any paternity to established any relationship to this Plaintiff;

(e) And SEPTEMBER 11, VICTIM COMPENSATION FUND CLAIM PROCESSING CENTER SPEACIAL MASTER AND OPERATION DIRECTOR be directed to process Plaintiff's claims **without further delays;**

(f) And All Healthcare Facilities named Defendants, and all Medical Doctors named as Defendants in this above-captioned action in custody of Plaintiff's medical records and medical reported be directed to release Plaintiff's medical records to enable SEPTEMBER 11 VICTIM COMPENSATION FUND PROCESSING CENTER process Plaintiff's claims under the rule of law and order **in favor of substantive due process without further delay;**

(g) And SOCIAL SECURITY ADMINISTRATION be directed to process Plaintiff's pending claims under "widow benefit" and lump sum claim under "spousal death benefit" without further delay under the rule of law and order;

(h) And All and Every and each Courts ORDERS issued and entered used as surveillances and

censorship discriminatively and retaliatorily used to prevent, denied and deprived Plaintiff's from the exercises of his constitutional rights that were further used to denied and deprived Plaintiff equal ACCESS to All Courts in the United States of America must be SET ASIDE, VACATED, DECLARE NULL AND VOID, and must be EXPUNGE from Plaintiff's records;

(i) And all criminal convictions fraudulently created by false arrests carried out in bad faith Whereby false witnesses fabricated testimonies and unverified coerced and false Police reported were used to procured the conviction, that convictions must be SET ASIDE, VACATED, DECLARE NULL AND VOID, and must be EXPUNGE from the Plaintiff's record;

(j) And RENAISSANCE EQUITY HOLDINGS LLC and OWNER, and FLATBUSH GARDENS be directed to refund to Plaintiff EXCESS and OVER CHARGE RENT under Section 8 paid in the contract issued and entered for the period of January 2020 through December 2020; and eviction in City of New York Housing Court be barred, and award to Plaintiff $100,000,000.00 (One Hundred Million U.S. Dollar) for the irreparable injuries caused by this Defendants in disguise under color of state law via housing discriminations and retaliation;

(k) And all harassment, and intimidations, and threats of irreparable harms by discriminatory and retaliatorily practices in disguise under color of State law be barred;

**<u>JURY SPEEDILY TRIAL DEMANDED</u>**

69. Speedily Trial By Jury Demanded.

## CONCLUSION

70. **WHEREFORE,** I, Aror-Ark Ark O'Diah, hereby pray, request, ask and demand that Equitable reliefs, and compensatory damages, and punitive damages and actual damages be GRANTED as stated in each claims# 1 through Claims#52 including all the reliefs sought against Each Defendant because the Defendants jointly and separately subjected this Pro Se Plaintiff to 'inhumane' mistreatment in systematic violations of the United States Constitution, Laws and Statutory Provisions.

Dated: March 8, 2023.

Respectfully Submitted By:

Aror-Ark Ark O'Diah

**Aror-Ark Ark O'Diah, Pro Se Plaintiff**
TIMESPEED WORLDWIDE...
3403 Foster Avenue, Apt. 4B
Brooklyn, NY 11210-6439
Office Phone: (347) 365-1307
Office Mobile: (347) 614-8799
Office Fax: (347) 765- 4128
Email: aror@timespeedworldwideinfo.com
Email: GlobalJudicialWatch@gmail.com
Website: https://www.timespeedworldwide.com
Website: https://www.timespeedworldwide.org
Facebook: https://www.facebook.com/aror.odiah.7/.
YouTube: https://www.youtube.com/@aror-arkodiah

# VERIFICATION

71. I, **AROR-ARK ARK O'DIAH,** certify and hereby declares under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. Sections 1746, and say that all the statements of claims stated STARTING from Cover Sheet (i) page through this page numbered-sixty-two including all the paragraphs and including supporting facts and statement of claims and claims are true and correct to **Aror-Ark Ark O'Diah's** Knowledge and best recollection. EXECUTED ON MARCH 8, 2023, BROOKLYN, COUNTY OF KINGS, NEW YORK.

Respectfully Submitted By:

Dated: March 8, 2023.

**Aror-Ark Ark O'Diah, Pro Se Plaintiff**

TIMESPEED WORLDWIDE GLOBAL JUDICIAL WATCH MORAL HEALTH SERVICE SYSTEMS, INC.
3403 FOSTER AVENUE, APT. 4B, BROOKLYN, NY 11210-6439. U.S.A.

JEAN RENEL SAINT JOUR
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Kings County
01SA6067297
MY COMMISSION EXPIRES 12/10/2025

SWORN TO BEFORE ME ON THIS
8th DAY OF MARCH, 2023.

**NOTARY PUBLIC**

# Exhibit B

Exhibit B

2017 WL 2735549
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

Aror Ark O'DIAH, Plaintiff,
v.
Richard CORDRAY et al., Defendants.

Civil Action No. 17–966 (UNA)
|
Signed June 13, 2017
|
Filed 06/23/2017

**Attorneys and Law Firms**

Aror Ark O'Diah, Brooklyn, NY, pro se.

MEMORANDUM OPINION

Tanya S. Chutkan, United States District Judge

*1 This matter is before the Court on its initial review of plaintiff's *pro se* complaint and application for leave to proceed *in forma pauperis*. The Court will grant the *in forma pauperis* application and dismiss the case because the complaint fails to meet the minimal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

*Pro se* litigants must comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F.Supp. 237, 239 (D.D.C. 1987). Rule 8(a) of the Federal Rules of Civil Procedure requires complaints to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Ciralsky v. CIA*, 355 F.3d 661, 668–71 (D.C. Cir. 2004). The Rule 8 standard ensures that defendants receive fair notice of the claim being asserted so that they can prepare a responsive answer and an adequate defense and determine whether the doctrine of *res judicata* applies. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). "[A] complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet [Rule 8's] liberal pleading requirement." *T.M. v. D.C.*, 961 F.Supp.2d 169, 174 (D.D.C. 2013).

Plaintiff is a resident of Brooklyn, New York. His lengthy list of defendants includes high-level federal and New York state officials and public entities, federal and state judges in New York, and several private businesses. Plaintiff seeks $1 billion from "each 36 defendants named jointly and separately," for a total of $36 billion in damages. Compl. Caption.

Plaintiff's perplexing allegations suggest a vast conspiracy to defame and discriminate against him, but they fail to provide each defendant with adequate notice of a viable claim. Moreover, no wrongful activity appears to have occurred in the District of Columbia; therefore, this court would not be the proper venue for litigating any such claims. *See* 28 U.S.C. § 1391(b) (designating the proper venue under the circumstances presented as the judicial district in the State where a substantial part of the events occurred). Given the complaint's deficiencies, the court finds that transferring the case to an appropriate court in New York would not "be in the interest of justice." 28 U.S.C. § 1406(a). Consequently, this case will be dismissed. A separate order accompanies this Memorandum Opinion.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2735549


© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit C

Exhibit C

2002 WL 1941179
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Aror Ark O'DIAH, Plaintiff,
v.
NEW YORK CITY, the Puro Water Group, Richard Ehlers, New York State, Nassau County, Tsunis & Gasperis, Sears Roebuck and Company, Village of Flower Hill, New York State Department of Motor Vehicles, PA Transit Port Authority of Allegheny County in Pittsburgh, Equifax Credit Information, Experian, IPC International Corp., Trans Union, Allied Spectaguard, Collectech, Inc., Credit Management Company, Mercy Hospital of Pittsburgh, South Hills Ent., I.C. Systems, Inc., Jae Chil Kim Rehab., Ford Motor Credit Corporation, Michigan State University, Pierce Hamilton and Stern, Northern Glen Apartment Homes, Volkswagen Credit Inc., Volkswagen of America Inc., Nassau County Attorney, Nassau District Attorney, the United States Court of Appeals for the Second Circuit, NCO Financial Systems, Mercy Providence, New York State Workers Compensation Board, Braunstein and Chase, L.L.P., City of Boston, U.S. Filter Inc., Piping Rock Natural Water, and Leonard Wexler, Defendants.

No. 02 CIV. 274(DLC).
|
Aug. 21, 2002.

**Synopsis**

Action was brought against private and public entities asserting statutory and constitutional claims, as well as claims for harassment and libel, arising from alleged conspiracy to discriminate against and harass plaintiff based on race, national origin, Christian values, and Republican party affiliation. On defendants' motion to dismiss, the District Court, Cote, J., held that: (1) res judicata barred pursuit of some, but not all, claims; (2) sovereign immunity protected New York Department of Motor Vehicles (DMV) and Workers' Compensation Board from liability; (3) conclusory allegations regarding conspiracy between private defendants and public officials failed to state § 1983 conspiracy and civil rights conspiracy claims; (4) private right of action against furnishers of credit information did not exist under Fair Credit Reporting Act (FCRA); (5) supplemental jurisdiction would not be exercised over state law claims; and (6) issuance of filing injunction against plaintiff would be proper.

Motions granted in part and denied in part.

**Attorneys and Law Firms**

Aror Ark O'Diah, pro se, Timespeed Information, Hicksville.

Rachel A. Seligman, Assistant Corporation Counsel, New York City Law Department, New York, for Defendant New York City.

Elliot D. Bernak, Jackson Lewis LLP, Woodbury, for Defendant Puro Water Group, Inc., sued herein as The Puro Water Group and U.S. Filter Inc.

Mary D. Tierney, Michael T. Clifford & Associates, PLLC, Riverhead, for Defendant the Honorable Richard A. Ehlers, sued herein as Richard Ehlers.

Benjamin J. Lee, Assistant Attorney General, New York, for Defendants New York State, New York State Department of Motor Vehicles, sued herein as New York State Department of Motor Vehicle, and New York State Workers' Compensation Board.

Nelly Stotland, Office of the Nassau County Attorney, Mineola, for Defendants Nassau County, Nassau County Attorney, and Nassau County District Attorney, sued herein as Nassau District

Attorney.

Roy S. Dragotta, Tsunis, Gasparis & Dragotta, LLP, Hauppauge, Long Island, for Defendant Tsunis & Gasparis, LLP, sued herein as Tsunis and Gasperis.

Mark S. Mancher, Jackson Lewis LLP, Woodbury, for Defendant Sears Roebuck and Company.

Michael A. Miranda, Miranda & Sokoloff, LLP, Mineola, for Defendant Village of Flower Hill.

Nicholas J. Evashavik, Evashavik & Evashavik, Pittsburgh, PA, for Defendant Port Authority of Allegheny County, sued herein as PATransit Port Authority of Allegheny County in Pittsburgh.

Christine Marie Fecko, Ross & Hardies, New York, for Defendant Equifax Credit Information.

Sevan Ogulluk, Jones, Day, Reavis & Pogue, New York, for Defendant Experian.

Kevin T. Hughes, Lord, Bissell & Brook, New York, for Defendant IPC International Corp., sued herein as IPC International.

Bruce S. Luckman, Timothy P. Creech, Satzberg, Trichon, Kogan & Wertheimer, P.C., Philadelphia, PA, for Defendant Trans Union.

Francine N. Silverstein, Duane Morris LLP, New York, for Defendants Allied Spectaguard, Mercy Hospital of Pittsburgh, sued herein as Mercy Hospital, and Mercy Providence Hospital, sued herein as Mercy Providence.

Michael C. O'Malley, Ohrenstein & Brown, LLP, Garden City, for Defendant Collectech Inc.

Carl A. Ronald, Tucker Arensburg PC, Pittsburgh, PA, for Defendant South Hills Ent.

Kenneth A. Elan, Esq., New York, for Defendant I.C. System, Inc., sued herein as I.C. Systems Inc.

Mark G. Ledwin, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, for Defendant Ford Motor Credit Company, sued herein as Ford Motor Credit Corporation.

Michael J. Kiley, Office of the General Counsel, Michigan State University, East Lansing, MI, for Defendant Michigan State University.

Carl T. Grasso, Hertzfield & Rubin, P.C., New York, for Defendants Volkswagen Credit Inc. and Volkswagen of America Inc.

Kevin Barry McHugh, Jacobowitz, Garfinkel & Lesman, New York, for Defendant NCO Financial Systems.

David J. Breen, Assistant Corporation Counsel, City of Boston Law Department, Boston, MA, for Defendant City of Boston.

OPINION AND ORDER

COTE, District J.

*1 Plaintiff *pro se* Aror Ark O'Diah ("O'Diah") filed this action on January 11, 2002, asserting claims against thirty-eight defendants, including statutory and constitutional claims, as well as claims for harassment, libel, and "moral and racial turpitude." O'Diah's principal claim appears to be that all of the defendants conspired to discriminate against and harass him based on his race and national origin, as well as his Christian values and Republican party affiliation. Specifically, O'Diah alleges that the defendants conspired to make false representations that the plaintiff owes child support and other monies, which resulted in unfavorable credit reports, garnishment of the plaintiff's wages, repossession of his automobile, eviction, and other problems. O'Diah also makes more particular allegations concerning specific incidents of harassment by certain defendants. The principal incidents alleged include false credit reporting, police harassment, brutality and false arrest, and denial of access to courts and administrative bodies. The plaintiff's complaint references alleged wrongs against him committed in four states over the last six years.[1] The alleged co-conspirators are individuals, corporations, former employers, judges, the Second Circuit Court of Appeals, and state and local governmental bodies.

Twenty-three defendants have moved to dismiss the complaint for various reasons including failure to state a claim and *res judicata*.[2] For the various reasons that follow, the motions to dismiss are

granted. O'Diah is given leave to replead certain claims.

BACKGROUND

The plaintiff has previously filed lawsuits against some of the defendants in this action. In an action against the Port Authority of Allegheny County (the "Port Authority") in the Court of Common Pleas of Allegheny County, the plaintiff asserted claims based on the same events alleged in this action. In two separate actions in the United States District Court for the Eastern District of New York, he asserted claims against several defendants arising out of the same events alleged in this action.

*1996 Allegheny County Suit Against Port Authority*

O'Diah filed an action regarding a September 7, 1996 bus accident in Allegheny County against the Port Authority, in which he alleged the same facts and injuries he alleges in this action with respect to the same bus accident. In both suits he claims essentially that the Port Authority promised to pay his medical bills and then did not, and that such failure to pay injured his credit. The Allegheny County action was dismissed with prejudice for failure to comply with a Court Order on August 11, 1999. The Commonwealth Court of Pennsylvania affirmed the decision of the trial court by Order of March 2, 2000, and O'Diah's petition for appeal to the Pennsylvania Supreme Court was denied on August 22, 2000.

*Eastern District Actions*

In an action filed in the Eastern District of New York on December 7, 1999 (No. 99 Civ. 8010) ("1999 Eastern District Action"), O'Diah asserted claims against the following defendants also named in this action: U.S. Filter, Inc. ("U.S.Filter"); Piping Rock Natural Water ("Piping Rock"); IPC International Corporation ("IPC"); the City of Boston; Michigan State University; the Port Authority; and Volkswagen of America Inc. ("Volkswagen"), based on the same incidents that underlie the claims in the instant action.

*2 O'Diah alleged that the Port Authority had failed to pay his medical expenses in connection with a bus accident as promised and that, as a result, reports of unpaid bills were made to credit reporting agencies. He alleged that Michigan State University denied him equal access to University transportation and made false reports to credit reporting agencies that he had defaulted on student loans. He alleged that his vehicle was vandalized in Boston, and that he was assaulted by a Boston police officer at a train station. O'Diah alleged that IPC had wrongfully terminated his employment, owed him unpaid wages, and made misrepresentations about him to his employers. He alleged that U.S. Filter had wrongfully terminated his employment and that his car was vandalized on corporate property. He alleged that a defect in his Volkswagen caused an accident, and that Volkswagen failed to replace the vehicle as promised. Finally, O'Diah alleged that Piping Rock "influenced" U.S. Filter to fire him. The claims asserted by O'Diah in the 1999 Eastern District Action included deprivation of constitutional rights, violation of the Civil Rights Act of 1964, violation of Sections 1983 and 1985 of Title 42, United States Code, breach of fiduciary duty, unpaid wages, gross negligence, and libel.

The claims against IPC, the City of Boston, Michigan State University, the Port Authority and Volkwagen, among others, were dismissed with prejudice to their refiling in the Eastern District on March 28, 2000.[3] Motions to dismiss by U.S. Filter and related entities, and by Piping Rock and individuals associated with these defendants were denied. On April 18, 2000, O'Diah filed a notice of appeal from the March 28 Order dismissing some of the defendants with prejudice in the Eastern District. The appeal was dismissed on September 26, 2000, when the Second Circuit determined that it lacked jurisdiction because the action had not yet been terminated as to all parties.

While the 1999 Eastern District Action was still pending with respect to defendants U.S. Filter, Piping Rock and related entities and individuals,[4] plaintiff filed a second action in the Eastern District on October 31, 2000 (No. 00 Civ. 6519) ("2000 Eastern District Action"). That action asserted claims against the following defendants

also named in this action: Puro Water Group ("Puro") d/b/a U.S. Filter and Culligan, Long Real Estate Limited Partnership d/b/a Northern Glen Apartment Homes ("Northern Glen"), The Hon. Richard Ehlers ("Judge Ehlers"), Tsunis & Gasparis LLP ("Tsunis"), Sears Logistic Service Inc.,[5] Allied Spectaguard ("Allied"), The Hon. Leonard Wexler ("Judge Wexler"), Volkswagen, the Port Authority, IPC, the City of Boston, Michigan State University, and Nassau County.

The claims against these defendants included claims asserted against them in the instant suit. O'Diah alleged that Puro influenced Northern Glen to file a false eviction claim, made misrepresentations about him to his employers, and that his car was vandalized while on Puro's property. He alleged that Northern Glen, Tsunis, and Judge Ehlers conspired to evict him although he owed no rent, and reported him to credit collection agencies. He alleged that he was assaulted at Sears Logistic Services by a co-worker and that his employment was terminated in retaliation for complaints he had made about discrimination. O'Diah alleged that he was coerced to quit his job with IPC, that IPC owed him unpaid wages, and that his car was vandalized while parked at the mall where he worked for IPC. He alleged that Judge Wexler conspired to harass him and to deny him equal protection of the laws and access to the courts, and obstructed justice by dismissing the 1999 Eastern District Action. He alleged that his Volkswagen automobile was involved in an accident because of a manufacturing defect which was concealed by the auto manufacturer. Finally, O'Diah alleged police brutality against the City of Boston based on the train station incident. The claims asserted by O'Diah included unconstitutional harassment, product liability, personal injury, lost wages, libel and housing discrimination.[6]

***3** While the 2000 Eastern District Action was pending, through an order entered in the 1999 Eastern District Action on May 17, 2001 ("May 17 Order"), the claims against U.S. Filter, Piping Rock, and related entities and individuals were dismissed with prejudice for failure to prosecute, based on the plaintiff's refusal to submit to a deposition, his failure to respond properly to defendants' discovery requests, and his failure to attend court-ordered conferences. The Clerk of Court was directed to close the case, and judgment was entered in the 1999 Eastern District Action with respect to all defendants on May 30, 2001.

Through an order issued in the 2000 Eastern District Action on May 24, 2001 (the "May 24 Order"), the court dismissed the claims against a number of defendants, including the following defendants also named in this action: IPC, the City of Boston, Michigan State University, the Port Authority, and Volkswagen, with prejudice to their re-filing in the Eastern District, but without prejudice to their filing in the "proper jurisdiction." The May 24 Order also dismissed with prejudice the claims against Judges Ehlers and Wexler pursuant to the doctrine of absolute judicial immunity. Finding that O'Diah had not sustained his burden of pleading his claim that all of the remaining defendants conspired to violate his constitutional rights, the court granted O'Diah leave to file an amended complaint within thirty days, and instructed the plaintiff to show in that amended pleading that there was a valid reason for joinder of his claims within the meaning of Rule 20, Fed.R.Civ.P., and to show that an Eastern District court had jurisdiction over the defendants remaining in the action. O'Diah never filed an amended pleading.[7]

On June 15, 2001, O'Diah filed a notice of appeal with the Court of Appeals for the Second Circuit, seeking review of the March 28 and May 17 Orders as well as the judgment in the 1999 Eastern District Action. His appeal was dismissed on July 11, 2001, for failure to pay the filing fee.

DISCUSSION

A. *Res Judicata*

The plaintiff's claims against Puro, U.S. Filter, Sears, and all of plaintiff's claims against the Port Authority with the exception of one defamation claim relating to Michigan State University, must be dismissed on the ground of *res judicata*.[8] Under the federal doctrine of *res judicata,* a final judgment on the merits of a federal action bars the parties or their privies "from relitigating claims that were or could have been raised in [the] prior action against the same defendant." *LTec Elec. Corp. v.*

*Cougar Elec. Org., Inc.,* 198 F.3d 85, 87 (2d Cir.1999) (per curiam). *See also Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir.), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L–Tec,* 198 F.3d at 88.

Under the Full Faith and Credit Act, "judicial proceedings of any court of any [ ] State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Consequently, the proceedings brought in Allegheny County against the Port Authority are given the same preclusive effect that they would be given by the Pennsylvania courts. *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 87 (2d Cir.2000). Under Pennsylvania law, "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1429 (3d Cir.1994) (citation omitted). In Pennsylvania, "[a]pplication of the doctrine of *res judicata* requires the concurrence of four elements. They are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made." *Id.* (citing *City of Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 559 A.2d 896, 901 (Pa.1989)); *see also Yamulla Trucking & Excavating Co. v. Justofin,* 771 A.2d 782, 784 (Pa.Super.Ct.), *appeal denied,* 566 Pa. 686, 784 A.2d 119 (Pa.2001) (citations omitted). While there is "no bright-line test" for determining when the causes of action in two suits are identical under Pennsylvania law for *res judicata* purposes, the criteria relevant to making this determination include:

> ***4** (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1065 (3d Cir.1991) (citation omitted).

*Puro and U.S. Filter*

O'Diah's claims against U.S. Filter, Piping Rock and related entities and individuals were dismissed with prejudice in the 1999 Eastern District Action for failure to prosecute. Prior to these dismissals, O'Diah's claims against all other defendants had been dismissed. Judgment was entered with respect to all defendants in the 1999 Eastern District Action on May 30, 2001. A dismissal for failure to prosecute constitutes a final adjudication on the merits, *see* Rule 41(b), Fed.R.Civ.P., and requires the dismissal of O'Diah's claims against U.S. Filter on the ground of *res judicata.* The judgment in the 1999 Eastern District Action also requires the dismissal of O'Diah's claims against Puro, an affiliate of U.S. Filter, on the ground of *res judicata.*[9] The factual allegations in the three federal complaints indicate that O'Diah is targeting the same alleged conduct when he names either U.S. Filter or Puro.

*Sears*

Sears Logistic Service Inc. ("Sears Logistic") was named as a defendant in the 2000 Eastern District Action. Although Sears is the named defendant in this action, the allegations in both complaints make it clear that O'Diah's claims address the same alleged conduct by the same entity. Sears Logistic filed an answer in the 2000 Eastern District Action on January 17, 2001, thus preventing O'Diah from voluntarily dismissing his claims against it pursuant to Rule 41(a), Fed.R.Civ.P. O'Diah's claims against Sears Logistic were later dismissed through the May 24 Order, and he did not replead those claims within thirty days as the order permitted.[10] In the May 24 Order, the court warned O'Diah that his "failure to comply" with the order "may result in dismissal of [the] action pursuant to Rule 41(b)," Fed.R.Civ.P. As previously noted, final judgment was not entered on the docket in the 2000 Eastern District Action.

A judgment must be final in order to have preclusive effect, and finality for purposes of *res judicata* is generally the same as that required for

appealability under the final judgment rule. *See Pure Distrib., Inc. v. Baker,* 285 F.3d 150, 156–57 (1st Cir.2002) (collecting cases); *Burge v. Parish of St. Tammany,* 187 F.3d 452, 467 (5th Cir.1999); *Shamley v. ITT Corp.,* 869 F.2d 167, 170 (2d Cir.1989); *First Alabama Bank of Montgomery v. Parsons Steel, Inc.,* 825 F.2d 1475, 1480 & n. 5 (11th Cir.1987); *Acha v. Beame,* 570 F.2d 57, 63 (2d Cir.1978). This general practice, however, does not mandate the elevation of form over substance. As the Second Circuit has noted in the context of collateral estoppel, "final ... is a word of many meanings." *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961) (citation omitted). When determining whether a judgment should be considered final with respect to a claim, the Restatement (Second) of the Law of Judgments notes that "a judgment will ordinarily be considered final in respect to a claim ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement." *See also Lummus,* 297 F.2d at 89 (Finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); *U.S. v. McGann,* 951 F.Supp. 372, 380 (E.D.N.Y.1997) (citing *Lummus* and holding that a grant of partial summary judgment was sufficiently final to have *res judicata* effect).

*5 Following the May 24 Order in the 2000 Eastern District Action, O'Diah could have amended his complaint in accordance with the court's order, or could have requested the entry of final judgment by the district court so that he could appeal the order. O'Diah followed neither course. He was warned that failure to comply with the court's directive could result in dismissal pursuant to Rule 41(b), Fed.R.Civ.P., and the filing of an answer by Sears prevented O'Diah from exercising any right to dismiss his claims voluntarily pursuant to Rule 41(a), Fed.R.Civ.P. The district court's failure to enter an order dismissing all claims with prejudice after the thirty days for repleading had passed and to enter final judgment in the action should not prevent the prior dismissal of O'Diah's claims against Sears from having *res judicata* effect. Any other conclusion would be wasteful of judicial resources, impose an unfair burden on defendants, and encourage plaintiffs to ignore court orders and file multiple suits to litigate the same injuries. The fundamental principle underlying the doctrine's application is the simple idea that a litigant should have one full and fair opportunity to litigate his claims. It cannot be said that O'Diah has not had this opportunity. Accordingly, O'Diah's claims against Sears are dismissed with prejudice pursuant to the doctrine of *res judicata.*

*Port Authority*

In the Allegheny County action, O'Diah asserted two claims against the Port Authority arising from the same bus accident alleged in this action, and the Port Authority's subsequent failure to pay O'Diah's medical bills as allegedly promised: "gross negligence in bad faith," and "bad faith breach of statutory responsibility in violation of fiduciary duty to pay medical bill." Of the four elements required by Pennsylvania courts for the application of the doctrine of *res judicata,* the only one which is not clearly established is the identity of the cause(s) of action, a defect which is largely attributable to the deficiencies in the drafting of the pleadings. It is evident that the wrong for which redress is sought, the material facts and necessary evidence, and the theory of recovery are identical. Consequently, with the exception of one defamation claim relating to Michigan State University that will be addressed below, the claims against the Port Authority are barred by *res judicata.*

B. *Immunity*

*New York State Defendants*

All of O'Diah's claims against New York State and the New York State Department of Motor Vehicles ("DMV"), and all but one of his claims against the New York State Workers' Compensation Board (the "Workers' Compensation Board"), are barred by the Eleventh Amendment. O'Diah alleges that New York State violated 42 U.S.C. § 1983 ("Section 1983") by engaging in a conspiracy to have the plaintiff fired from his jobs at Sears and Allied, to influence Nassau County and the New York City police department to harass the plaintiff, to encourage a

co-worker at Sears to assault the plaintiff, and to garnish plaintiff's wages from Sears. O'Diah further alleges that New York State violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), by providing false information and making false credit reports regarding unpaid child support to Northern Glen, Ford Motor Credit Corp. ("Ford"), Sears, IPC, U.S. Filter, Puro, Allied, Volkswagen and "several financial houses." O'Diah has also alleged that New York State made false statements about him to Puro, Northern Glen, Ford, IPC, Allied, and Sears.

*6 O'Diah alleges that the Workers' Compensation Board violated Section 1983 and the Civil Rights Act of 1964 by engaging in a conspiracy to encourage the plaintiff's co-worker at Sears to attack him and to delay adjudication of plaintiff's workers' compensation claims, one of which appears to concern the alleged assault by the co-worker. O'Diah also alleges that the Workers' Compensation Board violated Section 1983 by denying him equal access to its forum and violated the FCRA by making misrepresentations to the public concerning the plaintiff's debts.

O'Diah alleges that the DMV violated Section 1983 by engaging in a conspiracy with Nassau County and the New York City police department to harass plaintiff by issuing traffic tickets and taking his driver's license. O'Diah also alleges that the DMV has violated the FCRA by making misrepresentations to the public concerning the plaintiff's debts. In an attempt to tie the disparate incidents and events alleged in the complaint together for the purposes of this action, O'Diah also asserts a conspiracy claim against all defendants, including the New York State defendants, under 42 U.S.C. § 1985 ("Section 1985").

The Supreme Court has interpreted the Eleventh Amendment to mean that States, as sovereigns, are immune from suit in federal court absent consent or valid abrogation of that immunity by Congress. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). The immunity extends to state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

Both the DMV and the Workers' Compensation Board are state entities for purposes of Eleventh Amendment immunity. *See Smith v. Schwartz,* No. 98 Civ. 2838(RJD), 1999 WL 294733, at *1 (E.D.N.Y. Mar.22, 1999) (Workers' Compensation Board); *CBF Trustee v. Hymans,* No. 96 Civ. 9557(JFK), 1998 WL 91123, at *4 (S.D.N.Y. Mar.2, 1998) (DMV); *Estes–El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau,* No. 95 Civ. 3454(JFK), 1997 WL 342481, at *3 (S.D.N.Y. June 23, 1997) (DMV); *Smith v. Workers' Compensation Bd. of State of N.Y.,* No. 89 Civ. 2748(ADS), 1990 WL 47778, at *2–3 (E.D.N.Y. Apr.3, 1990), *aff'd,* 923 F.2d 844 (2d Cir.1990) (Workers' Compensation Board).[11]

Since neither New York nor its agencies have consented to this suit in federal court, the defendants are subject to suit in federal court only if Congress effectively abrogated the States' sovereign immunity. The federal statutes implicated by O'Diah's allegations against these defendants include Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964. Section 1983 does not abrogate a state's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). O'Diah's Section 1985 conspiracy claims against the New York State defendants must be dismissed because "[i]t is well settled that a state and its agencies are not 'persons' under ... Section 1985." *Santiago v. State Dep't of Corr.,* 725 F.Supp. 780, 783 (S.D.N.Y.), *rev'd on other grounds,* 945 F.2d 25 (2d Cir.1991); *see also Chadha v. Connecticut Med. Exam'rs Bd.,* No. 99 Civ. 874(EBB), 1999 WL 1067805, at *3 (D.Conn. Oct.29, 1999). Because Congress enacted the FCRA pursuant to its authority under the Commerce Clause, Congress is not empowered to abrogate a state's Eleventh Amendment immunity through the FCRA. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Hale v. Mann,* 219 F.3d 61, 67 (2d Cir.2000) ("After *Seminole Tribe* the only potential source for congressional abrogation is the Fourteenth Amendment."). Congress did, however, abrogate Eleventh Amendment immunity when enacting the Civil Rights Act of 1964. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 448, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

*7 Accordingly, all of O'Diah's claims against New York State and the DMV must be dismissed with prejudice to refiling them in federal court. With the exception of O'Diah's claim against the Workers' Compensation Board for violations of the Civil Rights Act of 1964, the plaintiff's claims against this defendant are also dismissed with prejudice to refiling them in federal court. O'Diah's allegations of a Civil Rights Act violation will be discussed in greater detail below.

*Judge Ehlers and Village of Flower Hill*

O'Diah has alleged that Judge Ehlers and Judge Byrne, "a State Court Judge at the Village of Flower Hill," violated his constitutional and civil rights based on his national origin and race in violation of the Civil Rights Act of 1964. The plaintiff has also alleged that Judge Ehlers conspired with Northern Glen to remove O'Diah from his apartment based on false charges of failure to pay rent and child support, and because O'Diah is a supporter of the Republican party's moral values and Christian principles. Judge Ehlers conducted a hearing in a landlordtenant dispute between the plaintiff and the owners of Northern Glen, and rendered an adverse decision against the plaintiff on July 5, 2000. To the extent O'Diah has named the Village of Flower Hill as a defendant in this action in order to address judicial conduct by Judge Byrne, his claims against this defendant are dismissed with prejudice. O'Diah's claims against Judge Ehlers also must be dismissed with prejudice.

A judge is absolutely immune from civil liability for his judicial acts. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles,* 502 U.S. at 10 (citation omitted). This judicial immunity is an immunity from suit, and is not limited to immunity from an ultimate assessment of damages. *Id.* at 11. In addition, judicial immunity is not overcome by allegations of bad faith or malice, nor by a judicial action taken in error or in excess of authority. *Id.* To the extent that O'Diah is seeking to assert his conspiracy claim and/or a Section 1983 claim against the Village of Flower Hill for actions not related to judicial conduct, those claims are addressed below.

C. *Jurisdiction*

O'Diah contends that there is both diversity and federal question jurisdiction over his claims. O'Diah alleges that he is a resident of the State of New York. At least seven of the defendants named in this action are also resident in New York State. Consequently, there is no diversity jurisdiction over his claims. *See Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002) (complete diversity required for diversity jurisdiction).

***8** In his opposition to the motions to dismiss filed by several defendants, O'Diah claims that he maintains "residents [sic] concurrently in the States of New York, Pennsylvania, and Massachusetts." Even if O'Diah could establish that he is a domiciliary of Pennsylvania or Massachusetts instead of New York, that would not create diversity since he has also named residents of both of those jurisdictions as defendants in this lawsuit. Accordingly, the only basis for subject matter jurisdiction is the federal causes of action alleged in the plaintiff's complaint.

D. *Federal Question Claims*

O'Diah asserts claims under Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964. Because O'Diah's complaint fails to state a claim under any of these statutes, his federal claims must be dismissed.

A court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). In considering the motion, the court must "accept as true all allegations in the complaint," *Hayden v. County of*

*Nassau*, 180 F.3d 42, 47 (2d Cir.1999), and "draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, the plaintiff still fails to plead the basic elements of a cause of action. Where a party is proceeding *pro se,* the court must "construe [the] pleadings broadly, and interpret them to raise the strongest arguments they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (citation omitted); *see also Cucco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000).

1. *Section 1983 claims*

a. *Non–Government Defendants*

A number of the defendants in this action are private entities rather than governmental bodies or officers. In order to state a claim under Section 1983, a plaintiff must allege that he was injured by "either a state actor or a private party acting under color of state law," *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir.2002), and that such conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993).

O'Diah appears to allege that the private defendants acted under color of state law by conspiring with the governmental defendants. O'Diah's conclusory allegations are insufficient to state a Section 1983 claim against any of the private defendants. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324 (citation omitted). As the Second Circuit recently observed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim." *Id.* (citation omitted). The plaintiff's allegations provide no details of time and place, and fail to describe "the factual basis necessary to enable defendants intelligently to prepare their defense." *Id.* at 325 (citation omitted); *see also Dwares*, 985 F.2d at 100 (details of time and place). Leave to replead plaintiff's Section 1983 conspiracy claims will not be granted for the reasons discussed below in connection with plaintiff's Section 1985 conspiracy claims.

b. *Government Defendants: Nassau County Defendants, New York City, City of Boston, and Village of Flower Hill*

*9 O'Diah alleges that on October 25, 2000, the Nassau County Police arrested him without cause, undressed him, cuffed and chained him to a stationary metal pole where he remained for more than eleven hours, and placed him in jail for 21 hours without cause. The plaintiff was allegedly told that his detention related to his failure to pay child support and his requests to contact a lawyer were denied. O'Diah also alleges that Nassau County and the Nassau County Police have joined with the New York City Police in an effort to harass him, in part through the issuance of meritless traffic tickets. O'Diah alleges that the DMV has been involved in a joint effort with Nassau County to harass him and take away his driver's license. O'Diah also alleges that the Nassau County Attorney and District Attorney have withheld the names and contact information of the families of five robbers who took $25 from the plaintiff in Garden City on January 11, 2001. O'Diah alleges that he was assaulted by a Boston police officer at the Boston train station, while waiting for a train to New York. He alleges that he was pulled to the station floor, thrown against the station's double glass doors, and thrown against a stationary construction truck outside of the station. O'Diah alleges that Judge Bryne, a judge in the Village of Flower Hill, violated his constitutional rights in an unspecified way.

Liberally construing the complaint, O'Diah appears to assert a Section 1983 claim against Nassau County for police harassment, false arrest and imprisonment, against New York City for police harassment, and against the City of Boston for police brutality. Section 1983 does not create any substantive rights. It is, instead, the procedural mechanism for bringing an action based on an underlying violation of a federal right. *Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756 (2d Cir.1998). It is unnecessary to resolve, however, whether the complaint sufficiently identifies in each instance a federal

right that has been violated since the plaintiff's claims against each of these defendants suffer from other infirmities.

In a suit brought under Section 1983, municipalities cannot be held liable unless the plaintiff can prove that the unconstitutional action was taken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] ... [or] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (brackets in original); *see Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995) ("an actionable claim under § 1983 against a county or municipality depends on a harm stemming from a municipality's policy or custom"). In order to state a Section 1983 claim against these defendants, then, the plaintiff must allege that the city's or county's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" caused the injury. *Monell,* 436 U.S. at 694; *see Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (municipal corporation).[12]

***10** The plaintiff has not pled a *Monell* claim against any of these defendants. The complaint makes no mention of any practice or custom espoused by New York City, the City of Boston, the Village of Flower Hill, or Nassau County, nor does the complaint allege facts tending to support an inference that such a policy or custom exists.

In the case of the City of Boston, the plaintiff has alleged one incident of police brutality. In the case of Nassau County, the plaintiff has alleged one incident of false arrest and imprisonment. O'Diah has made no specific allegations against the Village of Flower Hill. While O'Diah has alleged harassment through the issuance of traffic tickets against Nassau County and New York City, these allegations of ongoing harassment do not state a *Monell* claim because they are unsupported by any factual allegations. While the plaintiff enjoys all favorable inferences from facts that have been pleaded for purposes of a motion to dismiss, this does not permit "conclusory statements to substitute for minimally sufficient factual allegations." *Elec. Communications Corp. v. Toshiba Am. Consumer Prods., Inc.,* 129 F.3d 240, 243 (2d Cir.1997). A *pro se* plaintiff's "conclusory allegation ... without evidentiary support or allegations of particularized incidents, does not state a valid claim." *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990); *see also Ciambriello,* 292 F.3d at 324 (Section 1983); *Barrett v. Harwood,* 189 F.3d 297, 303 (2d Cir.1999), *cert. denied,* 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000) (same); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (same).

The plaintiff's Section 1983 claims against these Government defendants are dismissed with prejudice. O'Diah has not asked for leave to replead his Section 1983 claims against the Government defendants, and the motions to dismiss filed by these defendants set out in detail the pleading inadequacies in any *Monell* claim the plaintiff seeks to assert. O'Diah did not respond to these inadequacies in his opposition and unauthorized sur-reply, both of which simply repeat the conclusory allegations in the complaint. As noted in *supra* note 12, O'Diah may file in the jurisdiction in which the alleged violation occurred a lawsuit against the individual government officers who were personally involved in any violation of plaintiff's rights under federal law.

O'Diah has also alleged that the Nassau County District Attorney refused to provide him with contact information for the five robbers who attacked him in Garden City on January 11, 2001, information O'Diah sought in order to seek assistance from the robbers and their families in paying the medical bills he incurred as a result of the attack. The Nassau County District Attorney has moved to dismiss on the ground, *inter alia,* that O'Diah's allegation does not state any violation of law. In his opposition and sur-reply, O'Diah did not address this argument and does not identify a federal right that was violated by the District Attorney's alleged conduct.[13] Accordingly, O'Diah's claim against the Nassau County District Attorney for failure to provide contact information for the robbers is dismissed with prejudice.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2. *Section 1985 Conspiracy Claim Against All Defendants*

***11** Section 1985 of Title 42, United States Code, provides in relevant part that:

> If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). To assert a claim under Section 1985(3), a plaintiff must allege that the defendants have, with racial or other class-based discriminatory animus, conspired to deprive the plaintiff of a constitutional or other federal right. *See LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 426–27 (2d Cir.1995); *Spencer v. Casavilla,* 903 F.2d 171, 175 (2d Cir.1990). Allegations of conspiracy must be pled with particularity and will not withstand a motion to dismiss if they are conclusory and vague. *Ciambriello,* 292 F.3d at 325 (Section 1983 conspiracy claim).

In an attempt to tie together the disparate incidents alleged in the complaint, O'Diah has alleged that all of the defendants conspired to deprive him of his constitutional rights and property based upon his "Christian values, moral views, political affiliation with the Republican party, national origin" and race, principally through the dissemination of false credit information. O'Diah has also alleged a number of satellite conspiracies, involving participation by certain of the named defendants. For example, the plaintiff has alleged that New York State and Nassau County "influenced" Volkswagen and/or Volkswagen Credit Inc. ("Volkswagen Credit") to make a false credit report against him, and that the Workers' Compensation Board has conspired with his employers and an attorney at Braunstein & Chase ("Braunstein") to deny him equal access to its forum. O'Diah has also alleged that the defendants have engaged in a conspiracy having as its objects his murder and the kidnaping and brain-washing of his teenage daughter.[14]

O'Diah has not alleged facts to demonstrate an agreement between any of the named defendants. Indeed, O'Diah has not alleged facts supporting any connection between the defendants. The complaint is devoid of any allegations regarding with whom each defendant conspired, when or where any agreement was made, or the precise nature of such an agreement. In sum, the allegations in the complaint are not sufficient to state a claim under Section 1985 against all of the defendants jointly, or against groups of defendants. Accordingly, O'Diah's Section 1985 claim based on a conspiracy to commit the crimes above is dismissed with prejudice.

***12** O'Diah has not asked for leave to replead his claims. In any event, leave to replead would not be appropriate. The motions to dismiss set out in detail the pleading inadequacies in the complaint, particularly with respect to the plaintiff's conspiracy claim. O'Diah submitted an opposition and an unauthorized sur-reply in response to these motions to dismiss, both of which simply repeat the conclusory allegations in the complaint. Moreover, O'Diah was already given a chance to replead his conspiracy claim against a number of the defendants named herein through the May 24 Order in the 2000 Eastern District Action. He declined to do so. While leave to replead is liberally granted to *pro se* litigants, leave need not be granted here in light of the likely futility of such a grant, as well as the several opportunities already given to the plaintiff to articulate the factual bases for his conspiracy claims.

3. *FCRA Claim Against All Defendants*

O'Diah alleges that the defendants, both jointly and individually, motivated by "racial stereotyping," violated the FCRA by reporting false credit information to other defendants, and by representing the plaintiff as a "bad debtor" to the general public. Specifically, O'Diah alleges that a number of these misrepresentations involved child support obligations and failure to pay medical bills. O'Diah alleges that he discovered these false credit reports on September 4, 2001.

The FCRA places distinct obligations on three types of entities: consumer reporting agencies,

users of consumer reports, and furnishers of information to consumer reporting agencies. *See* 15 U.S.C. § 1681, *et seq.*; *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F.Supp.2d 1186, 1192 (D.Kan.2002); *Thomasson v. Bank One, Louisiana, N.A.*, 137 F.Supp.2d 721, 722 (E.D.La.2001). The defendants who have moved to dismiss the complaint are furnishers of credit information for purposes of the FCRA.

The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s–2(a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information. Section 1681s–2(a) provides in relevant part as follows:

> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate....
>
> A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer ... that specific information is inaccurate; and (ii) the information is, in fact, inaccurate....
>
> A person who ... has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

***13** 15 U.S.C. §§ 1681s–2(a)(1) and (2).

The category of duties in subsection (b) governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency. Subsection (b) states as follows:

> After receiving notice [from a credit reporting agency] pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s–2(b)(1).

There is no private cause of action under Section 1681s–2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials. 15 U.S.C. § 1681s–2(d); *see also Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir.2002); *Aklagi*, 196 F.Supp.2d at 1192; *Hasvold v. First USA Bank, N.A.*, 194 F.Supp.2d 1228, 1234 (D.Wyo.2002); *Scott v. Amex/Centurion S & T*, Nos. 3:01 Civ. 1594–H—3:01 Civ. 1602–H, 2001 WL 1645362, at *4 (N.D.Tex. Dec.18, 2001); *Fino v. Key Bank of New York*, No. 00 Civ. 375E, 2001 WL 849700, at *4 (W.D.Pa. July 27, 2001); *Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F.Supp.2d 1275, 1283 (M.D.Ala.2001); *Quigley v. Pennsylvania Higher Educ. Assistance Agency*, No. 00 Civ. 1661, 2000 WL 1721069, at *2 (N.D.Cal. Nov. 8, 2000); *Olexy v. Interstate Assurance Co.*, 113 F.Supp.2d 1045, 1047 (S.D.Miss.2000).

Although there has been some disagreement, the majority of courts to have considered the issue have concluded that consumers may pursue claims for willful or negligent noncompliance with Section 1681s–2(b). *See, e.g., Nelson*, 282 F.3d at 1060; *Aklagi*, 196 F.Supp.2d at 1193; *Hasvold*, 194 F.Supp.2d at 1236; *Scott*, 2001 WL 1645362, at *4; *Fino*, 2001 WL 849700, at *5; *Wexler v. Banc of America Auto Fin. Corp.*, No. 00 Civ. 865, 2001 WL 428155, at *2 (N.D.Ill. Apr. 26, 2001); *Thomasson*, 137 F.Supp.2d at 723 (collecting cases); *Whitesides v. Equifax Credit Info. Servs., Inc.*, 125 F.Supp.2d 807, 812 (W.D.La.2000); *McMillan v. Experian Info. Servs., Inc.*, 119

F.Supp.2d 84, 88 (D.Conn.2000); *Olexy,* 113 F.Supp.2d at 1047–48; *but see Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 502 (W.D.Tenn.1999). Those courts that have concluded that a private right of action exists under Section 1681s–2(b) have required a plaintiff to show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed. *See, e.g., Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639–40 (5th Cir.2002).[15] Since the complaint claims a violation of subsection (a) only, it is unnecessary to determine whether a private right of action exists under subsection (b).

***14** O'Diah has alleged that the defendants, jointly and individually, have falsified credit reports against him, and recklessly disregarded his concerns when he contacted them to correct their reports.[16] Because there is no private right of action under subsection (a), O'Diah's claims pursuant to the FCRA must be dismissed. Dismissal is with prejudice. The plaintiff has not asked for leave to replead; the motion papers of several of the defendants explained the deficiencies in the plaintiff's pleading with respect to his claims under the FCRA; and neither the plaintiff's opposition nor his sur-reply attempted any answer to these deficiencies.

4. *Federal Civil Rights Act of 1964*

The only specific mention of the Civil Rights Act of 1964 in the complaint is O'Diah's allegation that Judges Ehlers and Wexler, the Village of Flower Hill, the Workers' Compensation Board, and the attorneys at Tsunis and at Braunstein engaged in a "joint systematic violation" of plaintiff's "rights protected by the Federal Civil Rights Act of 1964, based upon the identification of the plaintiff [sic] national origin, motivated by racial stereotyping in disregard." O'Diah appears to allege that the violation committed by these defendants involved a denial of due process and equal protection of the laws. In the complete absence of any factual allegations it is impossible to evaluate whether the plaintiff may be able to state a claim pursuant to the Civil Rights Act of 1964 against these defendants.

In its motion to dismiss, Tsunis explains that O'Diah's complaint fails to state a claim for a Civil Rights Act violation because it fails to allege any state action on the part of Tsunis that would sustain a due process or equal protection claim. In his opposition and sur-reply, O'Diah does not provide any facts in response to the pleading deficiency noted by Tsunis. Because O'Diah has not requested leave to replead his Civil Rights Act claim against Tsunis and because he was given fair notice of the deficiencies in pleading this claim in Tsunis's motion to dismiss, O'Diah's Civil Rights Act claim against Tsunis is dismissed with prejudice.

O'Diah's Civil Rights Act claim against the Workers' Compensation Board is dismissed without prejudice to filing an amended pleading as described in a scheduling order issued in connection with this Opinion.[17] Should no amended pleading be filed in compliance with that order, this claim will be dismissed with prejudice.

E. *State Law Claims*

The state law claims asserted by O'Diah in this action appear to include claims of wrongful termination from employment, breach of fiduciary duty,[18] libel, defamation, slander, gross and reckless negligence, and violations of some state's lemon law.[19] This Court's exercise of jurisdiction over O'Diah's state law claims is an exercise of supplemental jurisdiction. For the reasons that follow, each of these claims must be dismissed.

*Choice of Law*

***15** A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *See N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir.1999); *see also Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 607 (2d Cir.), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001) (federal choice of law analysis to be applied only where a significant federal policy is implicated). Using a flexible "interest analysis" approach, New York courts apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute. *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 301 (2d Cir.2000). Under this formulation,

"the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* With the exception of O'Diah's claims of libel, slander, and defamation against Mercy Hospital of Pittsburgh ("Mercy Pittsburgh") and Mercy Providence Hospital ("Mercy Providence"), his claim of wrongful termination against IPC, and his claims of negligence and lemon law violations against Volkswagen, all of his state law claims arise out of events that took place in New York.

*Wrongful Termination—New York Law*

Liberally construing O'Diah's complaint, he may be alleging that he was unlawfully fired from his employment with defendant Allied.[20] This claim must be dismissed because New York does not recognize the tort of wrongful discharge. *Lobosco v. New York Tel. Co.,* 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001); *DePetris v. Union Settlement Ass'n, Inc.,* 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (1995); *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *see also Rooney v. Tyson,* 127 F.3d 295, 296–97 (2d Cir.1997). Absent an arrangement establishing a fixed duration, an employment relationship is "presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason." *Lobosco,* 96 N.Y.2d at 316, 727 N.Y.S.2d 383, 751 N.E.2d 462. An at-will employee may only maintain an action to recover damages for wrongful discharge if he can establish detrimental reliance on an express written limitation upon the employer's otherwise unfettered right to terminate his employment at any time. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333–36, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *see also Murphy,* 58 N.Y.2d at 300–01, 461 N.Y.S.2d 232, 448 N.E.2d 86. There is no indication in the complaint that O'Diah's employment with Allied was for a fixed duration. Nor has O'Diah alleged facts indicating that he relied upon any express written limitation on the right of Allied to terminate his employment at any time.[21]

Allied has asked that this Court decline to exercise supplemental jurisdiction over any state law claims asserted against it. O'Diah has not opposed the application. O'Diah's federal conspiracy and FCRA claims against Allied have been dismissed with prejudice, and O'Diah's federal claims are the only basis for this Court's exercise of subject matter jurisdiction. Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3); *Rocco v. New York State Teamsters Conference Pension & Retirement Fund,* 281 F.3d 62, 72 (2d Cir.2002), *petition for cert. filed* May 14, 2002 (No. 01–10222); *see also Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("where the federal claims are dismissed before trial, the state claims should be dismissed as well"). Because any state law claim for wrongful discharge asserted against Allied is entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over it and the claim is dismissed without prejudice to being refiled in a separate action.

*Wrongful Termination—Massachusetts*

***16** O'Diah was employed by IPC in Massachusetts. IPC has moved to dismiss O'Diah's wrongful termination claim against it for improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P.

On a motion to dismiss for improper venue, the plaintiff has the burden of establishing that he has chosen the proper venue. *TBV Holdings Ltd. v. Schey,* No. 02 Civ. 1122(BSJ), 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002); *Cent. Nat'l–Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F.Supp.2d 675, 677 (S.D.N.Y.2002). Because all defendants in this action do not reside in the same state, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). While some of O'Diah's claims are asserted against defendants located in this judicial district or arise out of events that may have taken place in this judicial district, "[i]n a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted." *Solow Bldg. Co., LLC v. ATC Assoc. Inc.,* 175 F.Supp.2d 465, 469 (E.D.N.Y.2001) (citation omitted); *see also U.S. Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.), *aff'd,* 23 Fed. Appx. 81 (2d Cir.2001), *cert. denied,* 535 U.S. 1079, 122 S.Ct. 1963, 152 L.Ed.2d 1023 (2002). Dismissal of an improperly venued claim is not warranted,

however, "if it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief." *Solow*, 175 F.Supp.2d at 469 (citation omitted).

While O'Diah has attempted to tie all of his various claims together with allegations of a conspiracy and of FCRA violations, O'Diah's conspiracy and FCRA claims have been dismissed with prejudice as to all defendants, and thus cannot provide a basis for retention of jurisdiction in this district. Aside from these two overarching claims, there are no allegations in the complaint to connect O'Diah's claim of wrongful termination against IPC to this district. Accordingly, O'Diah's wrongful termination claim against IPC is dismissed with prejudice to the extent plaintiff should seek to refile it in a venue other than Massachusetts.

*Defamation, Libel, and Slander Claims*

O'Diah has alleged that false credit information dispersed to the public by Mercy Pittsburgh, Mercy Providence, I.C. Systems, Inc. ("I.C.Systems"), and Nassau County constituted defamation, libel, and slander. O'Diah alleges that he discovered that the defendants had issued false credit reports about him on August 24, 2001.[22] The plaintiff was treated at Mercy Pittsburgh and Mercy Providence in Pennsylvania following the alleged Port Authority bus accident.[23] I.C. Systems is a debt collection company that was hired by defendant Jae Chil Kim Rehab. to collect on a debt for services rendered in Pennsylvania. New York and Pennsylvania both have a one year statute of limitations for actions sounding in defamation. *See* 42 Pa.C.S.A. § 5523; N.Y. C.P.L.R. § 215(3).

***17** O'Diah has not alleged in any detail the nature or substance of the statements of which he complains, nor has he alleged when, where, or in what manner they were made. New York and Pennsylvania each impose strict pleading requirements on claims sounding in defamation, including that the particular words complained of be set out at least in part, and that the approximate timing, manner, and publication of the statement be alleged. *See* N.Y. C.P.L.R. Rule 3016(a); *Demas v. Levitsky*, 291 A.D.2d 653, 738 N.Y.S.2d 402, 408 (3d Dep't 2002); *see also Lawrence v. City of Bethlehem*, No. 97 Civ. 1824, 1997 WL 793012, at *4 (E.D.Pa. Dec. 4, 1997); *Lynch v. Borough of Ambler*, No. 94 Civ. 6401, 1995 WL 113290, at *5 (E.D.Pa. Mar.15, 1995). A defamation action brought in federal court, however, is governed by Rule 8 of the Federal Rules of Civil Procedure, and not by particularized state pleading requirements. *See Odom v. Columbia Univ.*, 906 F.Supp. 188, 196 (S.D.N.Y.1995) (citing *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986)); *but see Luethke v. Seagram Co.*, No. 00 Civ. 7946(DC), 2000 WL 1880324, at *3 (S.D.N.Y. Dec.28, 2000) (dismissing defamation claim for failure to comply with New York pleading requirements).

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Rule also requires that "[e]ach averment of a pleading shall be simple, concise, and direct ." Fed.R.Civ.P. 8(e)(1). "Under the Rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." ' *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)).

O'Diah's allegations fail to disclose sufficient information to permit these defendants to understand what the plaintiff is complaining about let alone to determine if he has any legal basis for recovery. Accordingly, O'Diah's claims of defamation, slander, and libel against these defendants must be dismissed for failure to comply with the pleading requirements of Rule 8.

The motion to dismiss by Nassau County may not have given the plaintiff sufficient notice that it was asserting a pleading deficiency with regard to his claims of defamation, slander, and libel. These claims against Nassau County will be dismissed without prejudice to the filing of an amended pleading in compliance with the scheduling order to be issued by this Court. Failure to comply with that scheduling order will result in dismissal with prejudice.

The claims for defamation, libel and slander against I.C. Systems are dismissed with prejudice. This defendant's motion papers sufficiently identified the pleading deficiency. O'Diah's opposing papers did not cure the deficiency or

request any opportunity to replead these claims.

*18 The defendants Mercy Pittsburgh and Mercy Providence (collectively the "Mercy Defendants") have asked that this Court decline to exercise supplemental jurisdiction over the defamation-related state law claims asserted against them. O'Diah has not opposed this appliation. O'Diah's federal conspiracy and FCRA claims against the Mercy Defendants have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction over remaining state law claims. Because the state law claims sounding in defamation asserted against the Mercy Defendants are entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over them and they are dismissed without prejudice to being refiled in a separate action.

In addition to claims concerning false credit reports, O'Diah has alleged other instances of certain defendants' conveying false information about him to other defendants, often with no detail as to when such exchanges occurred or of what such exchanges consisted. He alleges that Nassau County, Piping Rock,[21] the City of Boston, and New York State conveyed false information about him to several defendants, including that he had been "bad-mouthing" his employer's products, owed child support, and had spoken out against the Democratic Party. O'Diah further alleges that the Port Authority informed Michigan State University that O'Diah has an "irreparable illness" and that accommodating him in University housing would cause trouble.

To the extent these allegations also seek to assert claims sounding in defamation, they must also be dismissed for failure to comply with the pleading requirements of Rule 8. As noted above, O'Diah may replead any defamation and related claims against Nassau County, in compliance with this Court's scheduling order. Failure to comply with that order will result in the dismissal with prejudice of any defamation and related claims against Nassau County. Because all of O'Diah's claims against New York State must be dismissed with prejudice on immunity grounds, O'Diah may not refile any defamation or related claims against New York State in any federal court.

The City of Boston has moved to dismiss any outstanding claims for improper venue. The plaintiff has not opposed this motion. For the reasons already discussed in connection with a similar motion made by IPC, this motion is granted. The claims against the City of Boston for defamation or conveying false information are dismissed with prejudice to refiling in any venue other than Massachusetts.

The plaintiff's defamation claim against the Port Authority regarding statements it allegedly made to Michigan State University is the only claim asserted against the Port Authority which may not be dismissed on the ground of *res judicata.* O'Diah may replead this single claim against the Port Authority in compliance with this Court's scheduling order. Failure to comply with that order will result in dismissal with prejudice.

*Conversion*

*19 O'Diah alleges that Ford "took" his car because the State of New York and Nassau County were threatening to sell the car for child support owed by the plaintiff. In connection with its motion to dismiss, Ford states that it repossessed the plaintiff's vehicle in Massachusetts on August 8, 2000, because the plaintiff defaulted in making payments on the vehicle.

Under Massachusetts law, the tort of conversion requires "an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce,* 288 F.3d 1, 11 (1st Cir.2002) (citations omitted); *see also Cadle Co. v. Schlichtmann,* 267 F.3d 14, 21 (1st Cir.2001), *cert. denied,* 535 U.S. 1018, 122 S.Ct. 1607, 152 L.Ed.2d 622 (2002). An action for conversion requires "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property." *Kelley,* 288 F.3d at 12 (citations omitted). A good faith, reasonable belief that one has a legal right to possession of goods is not a defense to a claim of conversion. *Id.* O'Diah has alleged simply that Ford "took" his car.

It is not clear whether O'Diah seeks to assert a claim for conversion against Ford, but this Court

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

declines to exercise supplemental jurisdiction over any such claim. O'Diah's federal conspiracy and FCRA claims against Ford have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. Any state law claim for conversion is entirely severable from the claims remaining in this action. Accordingly, at the request of Ford and without opposition from O'Diah, this Court declines to exercise supplemental jurisdiction over any such claim and it is dismissed without prejudice to being refiled in a separate action.

*Gross Negligence, Reckless Negligence, and Lemon Law Violation*

O'Diah alleges that the defects in a Volkswagen Passat caused an accident which resulted in $10,000 in damages and physical injury to his son. The plaintiff alleges that after he discovered the defect in the vehicle, apparently prior to the accident, Volkswagen attempted to repair the vehicle on four occasions. O'Diah appears to assert claims against Volkswagen for "gross and reckless negligence" and violation of some state's lemon law. The complaint does not identify where the vehicle was purchased, where the accident occurred, which state's lemon law Volkswagen has violated or which Volkswagen defendant is liable.[25] A recall notice for a defect in the Passat's braking system sent to the plaintiff is attached to the complaint, and offers repair of the defect free of charge. These allegations are not sufficiently detailed to permit either Volkswagen defendant to understand the precise claim being asserted against it or to permit an inquiry into whether the allegations might make out a claim and how to defend such a claim. Accordingly, the claims brought by plaintiff for damages to the vehicle must be dismissed for failure to comply with the pleading requirements of Rule 8, Fed.R.Civ.P.

*20 In its motion to dismiss, Volkswagen explicitly described these deficiencies in pleading and further noted that necessary conditions precedent for bringing suit under the lemon law had not been fulfilled. These defects were not cured in O'Diah's opposition or sur-reply to the motion to dismiss, and O'Diah has not requested leave to replead. Accordingly, O'Diah's claim for damages to the vehicle resulting from the auto accident, asserted as a negligence and lemon law claim, is dismissed with prejudice.

Any claims for injuries to the plaintiff's son, who is apparently a minor, must also be dismissed. This dismissal is without prejudice to filing in the jurisdiction in which the accident that injured the son occurred. The plaintiff is advised that many jurisdictions, including federal courts, require that any action brought on behalf of a minor be filed by an attorney. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,—F.3d —, 297 F.3d 195, 2002 WL 1560062, at *5 (2d Cir. July 16, 2002) (citing *Cheung v. Youth Orchestra Fdn. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990)); *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 124–25 (2d Cir.1998) (per curiam) (citation omitted).

F. *Request for an Injunction*

Defendants Puro, U.S. Filter, Tsunis, Sears, IPC, Allied, Volkswagen, and the City of Boston request an injunction preventing O'Diah from filing any actions or claims against them without the permission of the court in which any such action is filed. Such an injunction is only appropriate with respect to those defendants against whom the claims have been fully dismissed from this action with prejudice, namely, Puro, U.S. Filter, and Sears.

The Second Circuit has noted that the

> district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel.

*Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir.2000) (per curiam), *cert. denied,* 534 U.S. 833, 122 S.Ct. 81, 151 L.Ed.2d 44 (2001) (citations omitted); *see also Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir.1997); *In re Sassower*, 20 F.3d 42, 44 (2d Cir. Judicial Council 1994) ("the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints"). The issuance of a filing injunction is appropriate when a plaintiff "abuses

the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." *Lau,* 229 F.3d at 123 (citation omitted). In determining whether or not to restrict a litigant's future access to the courts, a court should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

***21** *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986). The ultimate question to be answered by the court is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* The " 'unequivocal rule" ' in this Circuit, however, is that the district court may not impose a filing injunction on a litigant " 'without providing the litigant with notice and an opportunity to be heard." ' *Lau,* 229 F.3d at 123 (quoting *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (per curiam)); *see also MLE Realty Assoc. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999).

This action is at least the fourth lawsuit filed by the plaintiff.[26] Three of these actions have named more than twenty defendants, and have asserted claims of alleged wrongs committed over several years and in several different states. These lawsuits have repeated claims arising out of the same events through complaints that are extremely difficult to interpret and understand. Two of O'Diah's prior lawsuits have been dismissed for failure to prosecute or failure to comply with court orders. His claims against several defendants in this lawsuit had already been dismissed in the 2000 Eastern District Action on *res judicata* grounds or pursuant to the doctrine of judicial immunity. The plaintiff has not honed his claims nor his list of defendants as time has gone on, but has instead added defendants including some of the judges to whom his prior actions were assigned. *See Sassower,* 20 F.3d at 45 (referring to "technique of other vexatious litigants of launching new complaints against judicial officers for their actions in dismissing his prior complaints"). He has failed each time to articulate sufficient facts to link the conduct of the co-defendants.

After several defendants in this action filed motions to dismiss, O'Diah moved for the issuance of a preliminary injunction to enjoin several entities, some of which are not named defendants in this action, from issuing false credit reports, and to bar pending proceedings at the DMV. An Order of May 21, 2002, indicated that briefing on the preliminary injunction motion would be scheduled should O'Diah's claims survive the pending motions to dismiss. Just over a week later, O'Diah filed an "Intermediate Intervention Request," referred to in his motion papers as a preliminary injunction request, asking the Court to enjoin several defendants from making misrepresentations in credit reports. An Order of June 5, 2002 repeated that a schedule for the plaintiff's request for injunctive relief would be addressed after consideration of the pending motions to dismiss.

In light of the above, an injunction is appropriate to prevent harassment through abuse of the legal system. O'Diah has received notice and an opportunity to be heard on the request made by several defendants for a filing injunction. In his opposition and sur-reply on those motions, the plaintiff did not oppose or even refer to the request for a filing injunction. An injunction shall be issued in connection with the filing of this Opinion.

CONCLUSION

***22** All claims pursuant to Section 1983, Section 1985, and the FCRA against all defendants who have filed motions to dismiss (*see supra* note 2) are dismissed with prejudice.

All claims against Puro Water Group, U.S. Filter, and Sears Roebuck and Company are dismissed with prejudice on the ground of *res judicata.* With the exception of plaintiff's defamation claim relating to Michigan State University, all claims against the Port Authority of Allegheny County are dismissed with prejudice on the ground of *res judicata.*

All remaining claims against the Village of Flower Hill and Judge Richard Ehlers are dismissed with

prejudice on the ground of judicial immunity.

Any remaining claims against New York State and the New York State Department of Motor Vehicles are dismissed with prejudice to refiling in federal court. With the exception of plaintiff's Civil Rights Act claim, all remaining claims against the New York State Workers' Compensation Board are dismissed with prejudice to refiling in federal court.

The claim pursuant to the Civil Rights Act of 1964 against Tsunis & Gasparis is dismissed with prejudice.

The defamation-related claims against I.C. Systems are dismissed with prejudice. The negligence and lemon law claims against Volkswagen of America and Volkswagen Credit relating to damage incurred by plaintiff's vehicle as a result of a car accident are also dismissed with prejudice.

The claim for wrongful termination against IPC International and the defamation-related claims against the City of Boston are dismissed with prejudice to refiling in any venue other than Massachusetts. Any claim against Volkswagen of America and Volkswagen Credit for injuries sustained by plaintiff's son as a result of a car accident is dismissed, without prejudice to filing by or on behalf of the son in the jurisdiction in which the accident occurred.

The Court declines to exercise supplemental jurisdiction over the defamation claims against Mercy Hospital of Pittsburgh and Mercy Providence, as well as any wrongful termination claim against Allied Spectaguard and any conversion claim against Ford Motor Credit Corporation. These claims are dismissed without prejudice to refiling in the jurisdictions appropriate to each claim.

The defamation-related claims against Nassau County and against the Port Authority of Allegheny County regarding Michigan State University, and the claim against the New York State Workers' Compensation Board pursuant to the Civil Rights Act of 1964, are dismissed with leave to replead. The schedule for filing any amended pleading is set forth in a scheduling order also issued today. Failure to comply with the scheduling order shall result in dismissal with prejudice of the claims for which plaintiff has been given leave to replead.

A filing injunction barring any future suit against Puro Water Group, U.S. Filter, and Sears Roebuck and Company without leave of the court in which suit is filed for claims relating to the transactions or occurrences alleged against these defendants in the complaint filed in this action is issued today.

***23** SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1941179

Footnotes

1 The complaint is 29 pages long, not including the 44 pages of exhibits appended to the complaint, and consists of 24 numbered paragraphs, some of which are greater than one full page in length.

2 Motions to dismiss have been filed by the following defendants: the City of Boston, Allied Spectaguard, Mercy Hospital of Pittsburgh (sued herein as Mercy Hospital), Mercy Providence Hospital (sued herein as Mercy Providence), New York State, the New York State Department of Motor Vehicles, the New York State Workers' Compensation Board, Volkswagen Credit, Inc., Volkswagen of America Inc., IPC International Corp. (sued herein as IPC International), New York City, Nassau County, the Nassau County Attorney, the Nassau County District Attorney (sued herein as the Nassau District Attorney), the Port Authority of Allegheny County (sued herein as PATransit Port Authority of Allegheny County in Pittsburgh), Puro Water Group, Inc., U.S. Filter Inc., Sears Roebuck and Company, the Honorable Judge Richard A. Ehlers (sued herein as Richard Ehlers), the Village of Flower Hill, I.C. System, Inc. (sued herein as I.C. Systems, Inc.), Ford Motor Credit Company (sued herein as Ford Motor Credit Corporation), and Tsunis & Gasparis, LLP (sued herein as Tsunis & Gasperis). Answers have been filed by the following defendants: Trans Union, the Village of Flower Hill, Nassau County, the Nassau County Attorney, the Nassau County District

Attorney, Volkswagen Credit Inc., Volkswagen of America, Inc., Experian, NCO Financial Systems, and Equifax Credit Information. The plaintiff has filed affidavits of service with respect to all defendants except Northern Glen Apartment Homes, for which the plaintiff has filed an affidavit of "attempted" service, and Experian.

3 Although the March 28 Order states only that the claims against these defendants are dismissed with prejudice, the hearing preceding the Order indicated that the dismissal was with prejudice in the Eastern District of New York but without prejudice to refiling in the proper jurisdiction.

4 In the 1999 Eastern District complaint, O'Diah alleged that U.S. Filter "trades" as Culligan Bottled Water and Nature Best.

5 O'Diah has named Sears Roebuck and Company ("Sears") as a defendant in this action.

6 O'Diah also asserted employment discrimination in the 2000 Eastern District Action, but does not appear to do so in the instant suit.

7 No final judgment was entered on the docket in the 2000 Eastern District Action.

8 Although IPC, the City of Boston, and Volkswagen have moved to dismiss O'Diah's claims against them on the ground of *res judicata* because of the dismissals in the Eastern District, the dismissals of claims against those defendants were without prejudice to the filing of such claims in a venue other than the Eastern District. "It is well established that a dismissal without prejudice has no *res judicata* effect on a subsequent claim." *Camarano v. Irvin,* 98 F.3d 44, 47 (2d Cir.1996) (per curiam).

9 In the 2000 Eastern District Action, O'Diah named Puro d/b/a U.S. Filter and Culligan as defendants.

10 Defendant Allied has also moved to dismiss the claims asserted against it in this action pursuant to the doctrine of *res judicata* . While O'Diah's claims against Allied were dismissed with leave to replead through the May 24 Order in the same way that his claims against Sears Logistic were, Allied had not filed an answer in the 2000 Eastern District Action. Because Allied had not answered, O'Diah was free to withdraw his action against Allied voluntarily and without obtaining permission from the court. Rule 41(a)(1), Fed.R.Civ.P.; *see also Hester Indus., Inc. v. Tyson Foods, Inc.,* 160 F.3d 911, 916 (2d Cir.1998).

11 While the Eleventh Amendment does not bar damages suits against state officials in their individual capacities or suits for prospective injunctive relief against state officers, *see Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,* 290 F.3d 476, 480 (2d Cir.2002); *Huang v. Johnson,* 251 F.3d 65, 69–70 (2d Cir.2001), O'Diah has not sued any individuals and asserts claims only against New York State and two of its agencies.

12 In a Section 1983 action for use of excessive force, false arrest or other violations of federal rights, the proper

defendant is the individual officer responsible for the alleged violation, unless a plaintiff is proceeding under a *Monell* theory. O'Diah may replead his claims that his rights under federal law were violated by filing separate lawsuits against the responsible individual officers in the jurisdictions in which the incidents occurred. If the plaintiff does not know the names of the individual officers, he may file a "John Doe" complaint, provide sufficient facts regarding the incidents to state a claim and to assist in identification of the officers, and seek the court's assistance in obtaining identification of the officers from their employers. *See Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997).

13 It should also be noted that to the extent O'Diah wishes to pursue a claim against the office of the District Attorney, his claim is not sufficiently pled as a *Monell* claim. To the extent O'Diah wishes to pursue this claim against the District Attorney individually, there is no indication from the allegations in the complaint that the District Attorney was personally involved in the conduct alleged.

14 O'Diah provides no factual background for these serious allegations. Defendants Ford, Volkswagen Credit and Volkswagen also ask the Court to strike these "scandalous" allegations pursuant to Rule 12(f), Fed.R.Civ.P. *See Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988).

15 O'Diah has not alleged that he notified a consumer reporting agency which in turn notified the furnisher of the incorrect information.

16 The complaint may also be read to allege that O'Diah's "medical history and condition" were made public as a result of the defendants' false credit reporting. The FCRA does contain provisions addressing the improper use of information contained in consumer credit reports. The complaint does not identify what medical information is at issue, who provided this information and to whom, or how it was made public. Each of these facts is a critical piece of information that any defendant would need to answer the allegation.

17 All claims against Judge Ehlers and the Village of Flower Hill are dismissed pursuant to the doctrine of judicial immunity as discussed above, or in the case of any attempted *Monell* claim against the Village of Flower Hill, dismissed with prejudice for failure to state a claim. Defendants Braunstein and Judge Wexler have neither answered nor moved to dismiss, although affidavits of service have been filed.

18 On the first page of his complaint, O'Diah has indicated his intent to pursue a claim for breach of fiduciary duty. There are no specific allegations in the complaint, however, which relate to such a claim nor are there allegations indicating which defendant or defendants against whom such a claim may be asserted, and the plaintiff has not alleged that any of the defendants named in this action owed him a fiduciary duty nor has he alleged any circumstances which would normally give rise to such a duty. A fiduciary is one who "owes to another the duties of good faith, trust, confidence, and candor" or one who has been entrusted with another's money or property and "must exercise a high standard of care in managing" it. Black's Law Dictionary 640 (7th ed.1999). For example, a trustee is a fiduciary of the beneficiaries of a trust, and a corporate officer is a fiduciary of shareholders in a corporation. In his sur-reply to the defendants' motions to dismiss, O'Diah indicates that his breach of fiduciary duty claims are directed at the Port Authority and Judge Ehlers. With the exception of one claim against the Port Authority, the claims against both of these defendants have been dismissed with prejudice on the grounds of *res judicata* and judicial immunity, respectively. In any event, neither defendant had a fiduciary relationship to O'Diah. The plaintiff was apparently a passenger on a Port Authority bus and alleges that the Port Authority breached a promise to pay all medical expenses incurred following an accident. Judge Ehlers presided over eviction

proceedings brought by Northern Glen against the plaintiff.

19 O'Diah has attached to his complaint copies of notices to consumers pursuant to the New York and Massachusetts lemon laws.

20 O'Diah's parallel claims against Puro and Sears are barred by the doctrine of *res judicata.*

21 O'Diah's allegations against his former employers for unlawful termination of his employment arise from his contention that others—such as New York State and Nassau County—provided his employers with "false information." Consequently, the wrongdoing at issue may be the defamation claims addressed below.

22 I.C. Systems has submitted an affidavit with attachments demonstrating that it made its credit report in early December 1997, and that O'Diah wrote to it and accused it of violating the FCRA in late December 1997. If O'Diah learned of the alleged violation in 1997, then his claims for defamation, libel and slander would be barred by New York's one year statute of limitations. N.Y. C.P.L.R. § 215(3). O'Diah is reminded that sanctions may be imposed on any litigant knowingly making a false statement to a court. *See* Rule 11, Fed.R.Civ.P.

23 The Mercy defendants indicate that the evidence will show that O'Diah was treated for chronic sinusitis and hearing loss, services unrelated to any bus accident.

24 Piping Rock has made no motion to dismiss.

25 Although the plaintiff has sued both Volkswagen of America, Inc. and Volkswagen Credit, Inc. in this action, the allegations in the complaint refer only to "Volkswagen."

26 The plaintiff may have filed a fifth suit. Ford indicates that it has previously been sued by the plaintiff in California.

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit D

Exhibit D

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 11 2012 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---X

AROR ARK O'DIAH,

Plaintiff,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY; et al.

Defendants.
---X

**ORDER**
05-CV-5297 (SJF)(LB)

FEUERSTEIN, J.

By order entered December 19, 2007, five (5) civil actions commenced by plaintiff either in this Court, or in another court and then transferred to this Court, were consolidated for all purposes, to proceed under docket number 05-cv-5297.[1] (docket entry 106 herein). In that December 19, 2007 order, plaintiff was cautioned that in light of, *inter alia*, his commencement of multiple actions involving similar facts and issues and his repeated assertion of frivolous claims that had previously been dismissed, "further filings of any complaint, petition or proceeding based upon the same facts and issues dating from November 6, 2002 to November 13, 2007, the date of filing of his [then] most recent complaint, may result in the issuance of an order prohibiting him from filing any future lawsuits in this Court without first obtaining leave of the Court." (Id.)

Nonetheless, plaintiff commenced a sixth action involving the same or related facts and issues in the United States District Court for the Northern District of New York, which was assigned civil docket number 08-cv-1646 and subsequently transferred to this Court. Accordingly,

[1] The five (5) consolidated actions had been assigned civil docket numbers 05-cv-5297, 06-cv-3602, 06-cv-4040, 07-cv-1169 and 07-cv-4731.

in the order consolidating that action with this consolidated action, entered May 7, 2008, (docket entry 115 herein), plaintiff was "enjoined from filing future lawsuits in the United States District Court for the Eastern District of New York without first obtaining leave of the Court and from filing any lawsuit in any other court based upon the same facts and issues dating from November 6, 2002 to November 13, 2007." (Id.)

By mandate entered January 21, 2011, the United States Court of Appeals for the Second Circuit, *inter alia*, vacated the May 7, 2008 filing injunction and remanded the case to this Court for further proceedings, with instructions: (1) to provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction; and (2) to limit the scope of any filing injunction to future filings made by plaintiff in this Court, or to narrowly tailor the extent to which the filing injunction applies to other courts in light of In re Martin-Trigona, 737 F.2d 1254, 1261-63 (2d Cir. 1984). See O'Diah v. Port Authority of New York and New Jersey, et al., Mandate, No. 10-2271-pr (2d Cir. Dec. 16, 2010) (docket entry 204 herein).

In accordance with the mandate, this Court issued an order, entered May 17, 2011, directing plaintiff to show cause, by filing an affidavit on or before June 20, 2011, why an injunction should not issue: (1) enjoining him from (a) filing any new civil action or proceeding in this Court without first obtaining leave of the Court and (b) commencing any new action or proceeding in any tribunal against any individual who has "encountered him in any capacity in litigation in [this Court], including, but not necessarily limited to, court personnel, counsel," and defendants, with the exception of complaints pursuant to 28 U.S.C. § 351, without first obtaining leave from this Court, Martin-Trigona, 737 F.2d at 1263; (2) requiring him (a) to annex a copy of any injunction order issued by this Court to the front of every complaint, petition or pleading he

seeks to file in any other federal court against any other person, (b) to inform the filing court of every action or proceeding pending in any other court against any of the named defendants therein and (c) to obtain leave of that court to file the action or proceeding, see, e.g. id. at 1262; and (3) requiring him, in the spirit of "cooperative federalism," Martin-Trigona, 737 F.2d at 1263, (a) to annex a copy of any injunction order issued by this Court to the front of every complaint, petition or pleading he seeks to file in any state court against any other person and (b) to inform that court of every proceeding pending in any other court against any of the named defendants therein, to allow the state court the opportunity to "take judicial notice of matters relevant to new litigation brought by [plaintiff]." Id. Plaintiff was advised that his failure to file an affidavit in accordance with the May 17, 2011 order to show cause, or to otherwise respond to the order to show cause, would result in the entry of the injunction order set forth therein.

On or about June 1, 2011, plaintiff filed a "Notice of Motion to Vacate pursuant to F. R. Civ. P., Rules 60(a)(b) [sic]; Motion to Vacate all Judgments and all Prior Orders, Opinions, and Memorandum, pursuant to Federal Rules of Civil Procedures, Rules 60(a)(b) [sic] * * *," accompanied by an "Affidavit in Support of Motion to Vacate, and to Show Cause * * *." (Docket entry 206 herein). In his affidavit, plaintiff, *inter alia*: (1) reiterates his claims of unlawful arrests, unconstitutional incarcerations, violations of his constitutional rights, conspiracy and judicial misconduct from October 2000 through present, which he has previously and repeatedly asserted, and which have been rejected, in this and related proceedings; and (2) contends that the proposed filing injunction set forth in the May 17, 2011 order (a) violates his First Amendment rights, (Aff., ¶¶ 3, 15, 17), and (b) does not comply with the Second Circuit's January 21, 2011 mandate, (Aff., ¶¶ 11-12, 16).

Contrary to plaintiff's contention, this Court complied with the January 11, 2011 mandate of the Second Circuit by: (1) issuing the May 17, 2011 order to show cause, thereby providing plaintiff with additional "notice and an opportunity to respond before reimposing a leave-to-file sanction;" and (2) "narrowly tailor[ing] the extent to which [the filing injunction] applies to courts other than the EDNY in light of * * * In re Martin-Trigona, 737 F.2d 1254, 1261-63 (2d Cir. 1984)." O'Diah, Mandate, No. 10-2271-pr. Moreover, in In re Martin-Trigona, the Second Circuit recognized the authority of federal district courts to impose filing injunctions against vexatious litigants such as plaintiff, 737 F.2d at 1261-62, and other circuit courts have rejected the contention that narrowly-tailored filing injunctions violate a vexatious litigant's First Amendment rights. See, e.g. Smith v. Krieger, 389 Fed. Appx. 789, 799 (2d Cir. July 27, 2010), cert. denied sub nom Smith v. Anderson, 131 S. Ct. 1511, 179 L.Ed.2d 307 (2011); Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1298 (11th Cir. 2002); Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987). As the Eleventh Circuit held in Riccard, "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings * * *." 307 F.3d at 1298.

Accordingly, for the reasons set forth above and in this Court's May 17, 2011 and prior orders, it is hereby:

ORDERED that plaintiff is enjoined from filing any new civil action or proceeding in this Court without first obtaining leave of the Court. Within twenty (20) days of the filing of any complaint, petition or pleading in this Court, plaintiff must file a motion for leave to commence the new action or proceeding, setting forth the good faith basis for the filing of the action or proceeding, or the action or proceeding will be dismissed with prejudice and without further notice to plaintiff. A copy of this injunction order shall be appended to any complaint, petition or

pleading plaintiff seeks to file in this Court and served upon all parties to the new action or proceeding with the summons and complaint, and all proceedings in any such new action or proceeding in this Court shall be stayed until the motion for leave to commence the action or proceeding is decided; and it is further,

ORDERED, that with the exception of complaints pursuant to 28 U.S.C. § 351, plaintiff is enjoined from commencing any new action or proceeding in any tribunal against any individual who has encountered him in any capacity in litigation in this Court, including, but not necessarily limited to, court personnel, counsel and defendants, without first obtaining leave to commence the action or proceeding **from this Court**. Within twenty (20) days of the filing of any complaint, petition or pleading in any other tribunal against such individuals or entities, plaintiff must file **in this Court** a motion for leave to commence the action or proceeding in such other tribunal, setting forth the good faith basis for the filing of the action or proceeding. A copy of this injunction order shall be appended to any complaint, petition or pleading sought to be filed in such other tribunal and served upon all parties to the action or proceeding with the summons and complaint; and it is further,

ORDERED that plaintiff shall annex a copy of this injunction order to the front of every complaint, petition or pleading he seeks to file in any other federal court against any other person, inform that court of every action or proceeding pending in any other court against any of the named defendants therein and obtain leave of that court to file the action or proceeding; and it is further,

ORDERED that plaintiff shall annex a copy of this injunction order to the front of every complaint, petition or pleading he seeks to file in any state court against any other person and inform that court of every proceeding pending in any other court against any of the named

defendants therein; and it is further,

ORDERED that nothing herein shall be construed to limit plaintiff's access to the United States Courts of Appeals or United States Supreme Court on any matter; and it is further,

ORDERED that the Clerk of the Court serve notice of entry of this Order on all parties to this consolidated action in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, see Fed. R. Civ. P. 5(b)(2)(C).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

/S/ SANDRA J. FEUERSTEIN
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 11, 2012
Central Islip, New York

# Exhibit E

Exhibit E

W.D.N.Y.
10-cv-6611
11-cv-6128
Larimer, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of November, two thousand eleven,

Present:

Dennis Jacobs,
*Chief Judge,*
Jon O. Newman,
Gerard E. Lynch,
*Circuit Judges.*

Aror Ark O'Diah,

*Plaintiff-Appellant,*

v.

11-2153-pr (L);
11-2373-pr (con)

New York State Secretary of Department of Health and Human Services, *et al.*,

*Defendants-Appellees,*

Brian Fischer, *et al.*,

*Defendants.*

Aror Ark O'Diah,

*Plaintiff-Appellant,*

v. 11-2166-pr (L); 11-2341-pr (con)

United States of America,

*Defendant-Appellee,*

State of New York,

*Defendant.*

We find that the imposition of a leave-to-file sanction is appropriate, in light of Appellant's litigation history. This Court's procedure for imposing leave-to-file sanctions involves three stages: (1) the court notifies the litigant that the filing of future frivolous appeals, motions, or other papers might result in sanctions, *see Sassower v. Sansverie*, 885 F.2d 9, 10 (2d Cir. 1989); (2) if the litigant continues to file frivolous appeals, motions, or other papers, the court orders the litigant to show cause why a leave-to-file sanction order should not issue, *see In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir. 1993); and (3) if the litigant fails to show why sanctions are not appropriate, the court issues a sanctions order, *see Board of Managers for 2900 Ocean Ave. Condo. v. Bronkovi*, 83 F.3d 44, 45 (2d Cir. 1996) (*per curiam*).

In December 2010, this Court warned Appellant that the "continued filing of duplicative, vexatious, or clearly meritless appeals, motions, or other papers in this Court, will result in the imposition of sanctions, which may include a leave-to-file sanction." *See* U.S.C.A. dkt. no. 10-2271-pr doc. 32 (Order). In October 2011, this Court dismissed the above-captioned appeals and ordered Appellant to show cause why a leave-to-file sanction should not be imposed. *See* U.S.C.A. dkt. no. 11-2153-pr doc. 62. On October 28, 2011, Appellant filed a response to the order to show cause.

Upon due consideration, because Appellant has failed to show cause why a leave-to-file sanction should not be imposed, it is hereby ORDERED that the Clerk of the Court refuse to accept for filing any further submissions from the Appellant unless he first obtains leave of the Court to file such papers.

Appellant has questioned the appropriateness of the various filing fees he was charged in connection with his appeals. Upon examination of the record, we conclude that fees were properly collected by the district court for the above-captioned appeals, and no fee has been collected for the appeal docketed under 11-2381-pr, which was dismissed as duplicative.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

UNITED STATES SECOND CIRCUIT COURT OF APPEALS

Catherine O'Hagan Wolfe

# Exhibit F

Exhibit F

FILED
FEB 14 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF CALIFORNIA

AROR-ARK O'DIAH,

Plaintiff,

v.

DISCOVER BANK /a/k/a/ DISCOVER/a/k/a/ DISCOVER BANK CREDIT CARD, DISCOVER BANK CREDIT CARD OPERATIONS MANAGERS, NEW YORK-PRESBYTERIAN LOWER MANHATTAN HOSPITAL, DR. COLLEEN MCCARTHY, JASON AUSMUS, SZEKUM TAM, ELLEN HAWA, WEILL CORNELL MEDICINE /a/k/a/ WEILL CORNELL INTERNAL MEDICINE ASSOCIATES, NEW YORK MEDICAL AND DIAGNOSTIC CENTER /a/k/a/ ORTHO-NEURO-MUSCULO-SKELETAL DIAGNOSTI AND TREATMENTCENTER, AND ALL CENTERS PHYSICIANS AND MEDICAL DOCTORS, NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, FLORENCE MERCER, COMMISSIONER SAMUEL ROBERTS FOR THE NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE, SOCIAL SECURITY ADMINISTRATION,

Defendants.

CV 19 816 EDL

Civil Action No.__________

COMPLAINT

(Jury Trial Demanded)

# ORIGINAL COMPLAINT
# WITH EXHIBIT "A" ATTACHED

**TABLE OF CONTENTS**


| DESCRIPTION OF CONTENTS | PAGES OF CONTENTS |
|---|---|
| ACTION CAPTION OF COMPLAINT | 1 |
| INTRODUCTION | 2 |
| JURISDICTION AND VENUE | 3 |
| PARTIES AND ADDRESSES | 4 |
| FACTS | 5-20 |
| FIRST CAUSE OF ACTION | 20-21 |
| CLAIM 1 to CLAIMS 14 AGAINST EACH DEFENDANT | 22-25 |
| TOTAL RELIEFS SOUGHT | 25 |
| JURY TRIAL DEMANDED | 25 |
| CONCLUSION | 25 |
| DECLARATION UNDER 28 U.S.C. SECTIONS 1746 | 26 |

## INTRODUCTION

This is civil action commenced pursuant to 42 U.S.C. Sections 1983 to redress the deprivations by the Defendants of rights secured to Plaintiff under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution which occurred when the Defendants treated Plaintiff's differently from others in the same situations and circumstances without rational basis in law and fact to denied Plaintiff Adequate Services and benefits and denied access to Courts upon the identification of Plaintiff's national origin;

And seized Plaintiff's properties including cash money, jewelry, merchandises, and thereafter, lured hard core criminals to physically attacked and injured the Plaintiff; and thereafter, placed false witnesses with fabricated testimonies and statement into evidence; and used to subjected Plaintiff to unjust convictions and imprisoned for crime Plaintiff NEVER committed, and thereafter, exposed Plaintiff to poisonous lethal gases and radioactive chemical to burnt Plaintiff Body to caused Plaintiff irreparable injuries without due process;

And denied Plaintiff adequate healthcare; and blackmailed, blackballed, slandered, defamed and made Plaintiff to become a victim of libel via deliberate misrepresentation to assassinated Plaintiff's character and reputation to private and public Establishments; and used the same discriminatory acts to denied Plaintiff Social Security Disability and Security Supplemental Income and State Supplemental Program Benefits while Plaintiff was subjected to Temporary and Permanent Disability effective from June 29, 2000 and continue to present due to injuries and damages caused by the Defendants via discriminatory and retaliatory acts after Plaintiff had publicly opposed joint racially motivated discriminatory practices nationwide in private and public Establishments.

**JURISDICTION AND VENUE**

1. This Plaintiff, Aror-Ark O'Diah maintain two residential places, one at 3403 Foster Avenue, Apt 4B, Brooklyn, NY 11210-6439; and the second at 1520 Jackson Street, Apt 303, Oakland, CA 94612, bring this civil rights lawsuit pursuant to 42 U.S.C. Sections 1983, 1985, 1986 to redress the deprivation, by the Defendants under color of state law, of rights secured to Plaintiff under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is conferred on this court by 28 U.S.C. Sections 1343(1), 28 U.S.C. Sections 1343(2), 28 U.S.C. Sections 1343(3) and 28 U.S.C. Sections 1343(4), which provide for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. Sections 1983. Jurisdiction is also conferred on this court by 28 U.S.C. Sections 1331(a), 42 U.S.C. Sections 18116, and 18 U.S.C. Sections 242, 247, and under the AFFORDABLE HEALTHCARE ACT violated; also because the causes of actions arises under the Constitution and Laws of the United States.

3. Venue properly lies in this Court pursuant to 28 U.S.C. Sections 1391 in that the Plaintiff maintains two residencies; and one of the residence is in this district. But many of the issues, and the omissions and violations took places nationwide; and for the interest of justice, this venue is proper because Plaintiff has been denied access to Courts repeatedly effective from October 31, 2000 to present in retaliatory and discriminatory practices in New York upon the identification of Plaintiff's national origin; but the issues in those matters has already been raised in the case currently pending at the United States Court of Appeals for the District of Columbia Circuit. But <u>none</u> of the parties named in this action is a party to pending D.C. case.

**PARTIES**

4. Discover Bank /a/k/a/ Discover /a/k/a/ Discover Bank Credit Card, and Discover Credit Card Operations Manager are United States citizens and corporation Head Office reside at 502 E. Market Street, Greenwood, Delaware 19950.

5. NewYork-Presbyterian Lower Manhattan Hospital, and Dr. Colleen McCarthy, and Jason Ausmus, and Szekum Tam, and Ellen Hawa are United States citizens operating Healthcare Services at 170 William Street, New York, NY 10038. And Defendant Weill Cornell Medicine /a/k/a/ Weill Cornell Internal Medicine Associates are United States citizens reside at 505 East 70th Street, HT4, New York, NY 10021-4872.

6. New York Medical and Diagnostic Center /a/k/a/ Ortho-Neuro-Musculo-Skeletal Diagnostic and Treatment Center, and All Center Physicians and Medical Doctors are United States citizens operating Healthcare Services at 80-46 Kew Gardens Road, Kew Gardens, NY 11415.

7. New York City Human Resources Administration are United States citizens as an extended Administrative Arms of the New York City Management Head Office of Legal Affairs and Subpoena Unit at 4 World Trade Center, 150 Greenwich Street, 38th Floor, New York, NY 10007.

8. Commissioner Samuel Roberts, and Florence Mercer are United States citizens, also employees of the New York State Office of Temporary and Disability Assistance located at the Office of Administrative Hearing at 40 North Pearl Street, Albany, NY 12243-0001.

9. Social Security Administration is an Agency of the United States, Branch Office involved located at 154 Pierrepont Street, 6th Floor, Brooklyn, NY 11201.

**FACTS**

10. Plaintiff Aror-Ark O'Diah, relied on the attached exhibit "A" having twenty four pages labeled from Page #1 through pages #24, in support of the facts stated in this above-captioned action complaint as true below.

11. On about the month of May 29, 2000, Plaintiff Aror-Ark O'Diah, was an employee of Sears Roebuck and Company as a Par-Time Warehouse Helper while at the same period, Plaintiff was also conducting Feasibilities Studies and Market Survey for Timespeed Consulting Tourism and Personal Services, Inc., a subsidiary of Timespeed Informations and Protective Services, Inc.

12. On about June 25, 2000, Sears Roebuck and Company verbally summoned Plaintiff to attend Sears Roebuck and Company Corporate Administrative Hearing about disputes between two Sears Roebuck and Company Employees Mr. Miles and Mr. Melo where Mr. Melo was promoted because he was a White Male over Mr. Miles Hispanic Male.

13. On about June 28, 2000, Plaintiff testified truthfully based on Plaintiff's knowledge and recollections to his ability during the Sears Roebuck and Company Corporate Administrative Hearing in support of Mr. Miles who has more seniority than Mr. Melo.

14. On about June 29, 2000, Mr. Melo and Sears Roebuck and Company were not pleased That Plaintiff testified in favor of Mr. Miles, who was Hispanic Males; as a result, Mr. Melo was encouraged and lured by Sears Roebuck and Company to physically maliciously attacked Plaintiff with the promise that Mr. Melo will be protected by designs to fire Plaintiff for opposing Discriminatory Employment Promotion based on Race and Skin Color.

15. On June 29, 2000, at about approximately 20pm, Mr. Melo physically maliciously attacked Plaintiff and explosively struck Plaintiff and knocked Plaintiff's down and Plaintiff fell on his face against the solid floor of the Sears Roebuck and Company Warehouse, and became temporarily unconscious.

16. On June 29, 2000, when Plaintiff recovered from unconsciousness, Plaintiff could barely Stand-up because of severe and excruciating Head Pains, including pains at both Legs and Shoulder and Back and Ribs.

17. On June 30, 2000, Plaintiff was taken to NASSAU COUNTY MEDICAL CENTER (NASSAU COUNTY UNIVERSITY MEDICAL CENTER); where, Plaintiff was diagnosed for fractured ribs and fractured right tibia and sprained and strained neck, lower and upper back.

18. On June 30, 2000, and thereafter, Plaintiff was not able to conduct his private Businesses Feasibilities Studies and Market Survey under Timespeed Consulting Tourism and Personal Services, Inc., a subsidiary of Timespeed Informations and Protective Services, Inc. And Plaintiff could not hold any job due to the injuries at Sears Roebuck and Company.

19. On about June 30, 2000, Plaintiff was assisted at the Nassau County Medical Center in Nassau County in New York to complete Disability Application which Plaintiff hand delivered to SOCIAL SECURITY ADMINISTRATION in Nassau County. But was rejected without any explanation.

20. On June 30, 2000, and thereafter, Plaintiff re-submitted SOCIAL SECURITY APPLICATION for Social Security Disability Benefit in Nassau County, also in Queens County, also in Kings County, also in State of New York Office of Temporary and Disability Assistance and also in Federal Courts and in New York State Courts. But Plaintiff's Disability Claims were not process and Plaintiff was repeatedly denied access to all these forums.

21. On June 2000, and continue thereafter, while Plaintiff was unable to drive Motor Vehicle but Plaintiff was receiving many parking tickets summons; even, Plaintiff's Motor Vehicles that were parked were towed by Nassau County Police and By New York City and by Port Authority Police until Plaintiff was told to move out of New York State or the alternative consequences will be terrible.

22. On about October 25, 2000, Two Nassau County Detectives came to Plaintiff Office in Holman Blvd, in Hicksville, in Nassau County, New York with an open warrant issued by Nassau County Family Court in Westbury, Nassau , New York alleged that Plaintiff owe the State of New York Child Support Arears. But Plaintiff has no child in needy of child support.

23. On about October 25, 2000, Plaintiff was unlawfully arrested, thrown into Nassau County Police Department Detention, and chained both legs, waist, and both hands against Metal Pole striped naked from October 25, 2000 through October 28, 2000. But the weather was extremely cold. Plaintiff was periodically unconscious during the physical and mental torture.

24. On October 28, 2000, when Plaintiff was brought to Family Court in Westbury, in Nassau County in New York, the Family Court released Plaintiff own his own recognition without any formal hearing.

25. Plaintiff did not owe Nassau County and New York State Child Support Collections Arears. Plaintiff has no child that need child support.

26. On January 11, 2001, while Plaintiff was still nursing accumulated multiple bodily injuries, again Plaintiff was robbed and physically attacked by five While Males in Gardens City in Nassau County in New York; where, Plaintiff's pre-existing medical conditions were re-aggravated; where Plaintiff was taken to Winthrop University Hospital in Mineola, Nassau County New York; where plaintiff was diagnosed for re-fractured ribs and right tibia, and head trauma, altered lumbar resulted to the development of SPINAL STENOSIS.

27. On January 12, 2000, the robbers were caught by the Garden City Police Department Police Officers, in Nassau County, New York but they were allowed to get away without any punishment upon the identification of Plaintiff's national origin.

28. On June 21, 2001, Nassau County Family Court dismissed their false child Support Arears Collection in Plaintiff's favor but Plaintiff was denied access to all the Courts in New York.

29. On about November 6, 2002 and November 26, 2002, Port Authority of New York and New Jersey Police Officers were directed to seize Plaintiff's Tourism Motor Vehicles and four Motor Vehicles were seized without due process and without reasonable basis in law and fact, and Plaintiff's Motor Vehicles and Merchandises were NEVER returned to Plaintiff until this present day. Plaintiff was falsely charges for unlawful soliciting for grant transportation.

30. On about July 7, 2003, Plaintiff was stopped on Northern Boulevard in Corona in Queens, New York by New York City Limousine and Taxi Commission, and removed Plaintiff from Plaintiff's Motor Vehicle, and took Plaintiff's Motor Vehicles with $40, 000.00 cash and businesses Merchandises inside the Plaintiff's Motor Vehicles.

31. On about April 20, 2004, Plaintiff was struck by ex-Nassau Police Officer, and damaged Plaintiff's Motor Vehicles; yet, Nassau Police Officer detained Plaintiff and framed up Plaintiff via false Police Report that Plaintiff left accident scene which was false. A District Court Judge O'Brien dismissed the criminal charges in Plaintiff favor.

32. On February 2, 2005, and February 5, 2005, Plaintiff was physically robbed and attacked and injured by armed robbers in Jamaica, in Queens, in New York where Plaintiff suffered many bruises and head trauma. Plaintiff was treated at Jamaica Hospital.

33. On June 16, 2005, Plaintiff was struck by Mr. USMAN PASHA, Motor Vehicle Operator for LT WHEEL. And Plaintiff suffered unconsciousness. But Plaintiff was not allowed to file any legal matter in New York Courts Systems upon the identification of Plaintiff's national origin and in retaliation because Plaintiff had opposed discriminatory practices in private and public Establishments.

34. On November 9, 2005, Plaintiff was struck with Motor Vehicle operated by Mr. Jerry Makulik insured by Hereford Insurance Company and caused Plaintiff periodic recurring dizziness. But Plaintiff was denied access to any Court in New York for redress.

35. On February 25, 2006 and April 228, 2006 and June 22, 2006, Port Authority of New York and New Jersey Police Officer THOMAS EDDINGS and many New York City Limousine and Taxi Commission falsely arrested Plaintiff on false charges that Plaintiff illegally parked his Tourism Services Motor Vehicles in unauthorized ZONE RESERVED for Drivers making dropped off and picked up. Plaintiff was beaten up and locked. Plaintiff was bailed.

36. On January 26, 2007, Plaintiff was tried at Queens County Court House where Port Authority Police Officer THOMAS EDDINGS placed a Police Officer who was NOT on the scene of Plaintiff unlawful arrests into evidence alleged that Plaintiff assaulted them. But Plaintiff has severe disability limiting Plaintiff motion and physical contact with other Human Beings.

37. On January 26, 2007, Port Authority of New York and New Jersey Police Officer THOMAS EDDINGS "framed up" Plaintiff.

38. On January 26, 2007, Plaintiff was unjustly convicted and held in the State of New York prison for seven years for crime of assaulting Police Officer. Plaintiff did not assault any Police Officer. Plaintiff has limited body movement because of disabilities; and Plaintiff has no reason to assault Police Officer.

39. The Police Officer THOMAS EDDINGS Placed in evidence who claimed that Plaintiff assaulted him later testified that he was not on the scene of unlawful arrest of Plaintiff; and further said that Plaintiff was already having his both hands handcuffed by Officer THOMAS EDDINGS and already placed inside Police Vehicle before he arrived at the scenes of unlawful arrests of the Plaintiff.

40. On January 26, 2007 through December 27, 2013, Plaintiff was knowingly, intentionally and deliberately exposed to poisonous lethal gases and radioactive chemicals inside prison whereby Plaintiff's Body was set on fire, and the chemicals and fire burned Plaintiff to caused periodic recurring heart attacks, dizziness, difficulties breathing, and both legs swelling and limiting Plaintiff motion and movement and difficulties walking reasonable distance to this presence day.

41. On about January 7, 2014, Plaintiff applied for assistance from the New York City Human Resources Administration for assistance; But the assistance was terminated in about the month of April 2, 2014 or June 2, 2014 without reasonable basis in law and fact.

42. On about April 2, 2014 or soon thereafter, Plaintiff took Appeal to Administrative Law Judge request for Fair Hearing at the New York State Office of Temporary and Disability Assistance;

43. On July 2, 2014, New York State Administrative Law Judge at the New York State Office of Temporary and Disability Assistance rendered decision in Plaintiff's favor with instruction to New York City Human Resources Administration to restore Plaintiff Benefit retroactively But the New York City Human Resources Administration failed to fully complied; and arbitrarily cut off benefit without due process.

44. On about July 2, 2014 through September 27, 2016, New York City Human Resources Administration, Florence Mercer and Commissioner Samuel Roberts owe Plaintiff Back Payment in the total sum of the amount of **$22, 359.00; WHEREFORE, Plaintiff hereby request, ask, demand for this Back Payment Right Away.**

45. On about September 27, 2016, Plaintiff re-submitted his Social Security Disability and Security Supplemental Income application rejected over the period of June 30, 2000 through September 27, 2016.

46. On about January 26, 2017, Plaintiff's application for Social Security Disability and Security Supplemental Income was denied without rational basis in law and facts.

47. On about January 31, 2017, Plaintiff appeal and requested for Administrative Law Judge Hearing.

48. On about December 14, 2018, Social Security Administrative Law Judge rendered decision in Plaintiff's favor with the direction that Plaintiff should be paid Security Supplemental Income retroactively effective from September 27, 2016.

49. On June 29, 2000, is when Plaintiff's disability began. Social Security Administration rejected Plaintiff's application submitted effective from June 30, 2000 through September 27, 2016.

50. On June 30, 2000 through Present, Social Security Administration owe Plaintiff's Back Payment in the total sum of the amount of **$166, 536.00** but Social Security Administration used incorrect information to derived **$7,692.67** as the Back Payment they owe Plaintiff. Plaintiff disputed the incorrect information Social Security Administration used to reached the erroneous **$7,692.67; WHEREFORE, Plaintiff hereby ask, request, pray and demand for Back Payment Right Away in the sum of the amount of $166,536.00.**

51. On about December 17, 2018 and January 17, 2019, Plaintiff discover that Social Security Administration has been knowingly, maliciously, via retaliatory and discriminatory deliberately misrepresented Plaintiff to Schools, Colleges, Universities, Employers, Businesses, Establishments, Financial Institutions, Financial Housing including Banks; and as a results, Plaintiff was denied admissions to Schools, Colleges, Universities, and denied Business Loans and Business Credits because Social Security Administration continue to give false and incorrect information about the Plaintiff's names to Private and Public Establishments who has inquire for more information about Plaintiff name; and the date Plaintiff became a citizen of the United States

52. On December 17, 2018, and continue thereafter, Plaintiff requested that Social Security Administration update his information. But Social Security Administration told Plaintiff that unless Plaintiff provides his birth certificate; and that without Plaintiff birth certificate that Social Security Administration would not be able to make any correction to plaintiff's name.

53. On December 17, 2018 and thereafter, Plaintiff provided his New York State Photo Identification Card, with his United States Passport and Certificate of Naturalization having the Plaintiff's correct names. But Social Security Administration refused to accept them as proof of Plaintiff's correct name; yet, Social Security Administration continue to furnished false information about the Plaintiff to Private and Public Establishments,

54. On December 17, 2018, and thereafter to present, Plaintiff discovered that Social Security Administration accepted State issued Photo Identification Card, with United States Passport and Certificate of Naturalization from Others persons in Plaintiff situations and circumstances.

55. On January 17, 2019, Plaintiff was shocked, surprised, humiliated and embarrassed when Plaintiff found out that Social Security Administration was treating Plaintiff differently from other in the same situation and circumstances without reasonable basis in law and fact but in bad faith effective from June 30, 2000 through present.

56. On about January 17, 2019, Ms. Hurley told Plaintiff that "YOU PEOPLE FROM NIGERIA COMES TO THE UNITED STATES TO CHANGE YOUR NAME SO YOU PEOPLE CAN COMMIT FRAUD."

57. On about January 17, 2019, and thereafter, Ms. HURLEY used SLURS remarks via systemic discriminatorily practices to stereotyped and retaliate against Nigerians.

58. On about January 17, 2019, Ms. HURLEY subjected Plaintiff to verbal assaults and disparity disparages treatment because Ms. HURLEY yelled and cream at Plaintiff after Plaintiff had told her that he saw her accepted State Photo Identification Card with United States Passport and Certificate of Naturalization from other except Plaintiff as proof of name and date of birth.

59. On about January 17, 2019, and thereafter, Ms. HURLEY, called Security Officer to attempt to remove Plaintiff from the SOCIAL SECURITY ADMINISTRATION OFFICE in retaliation via disparity disparages treatment solely because Plaintiff requested that his information held by Social Security Administration should be corrected.

60. On January 17, 2019, and thereafter, Ms. HURLEY used her power to attempted to silence Plaintiff by falsely accused Plaintiff that Plaintiff was by designed for the purpose of committing fraud since Plaintiff is from Nigeria; and that all Nigerian commit fraud in the United States. Plaintiff have NEVER committed any fraud for over 50 years Plaintiff have lived in the United States.

61. For many times Plaintiff has been mistreated in the Social Security Administration Offices without rational basis solely upon the identification of Plaintiff's national origin;

62. Plaintiff believes and asserts and alleges that he was intimidated, harassed, deter, hindered, threaten, verbally assaulted, and was subjected into fear, and worries to cause emotional distress and aggravated headache and trauma by Social Security Administration based upon the identification of his national origin.

63. Social Security Administration has damaged and assassinated plaintiff's character via slanderous defamation, deliberate misrepresentation via libel without rational basis. 

64. On about November 2, 2018, Plaintiff made medical payment arrangement via Dr. Gillman, Chiropractor at the New York Medical and Diagnostic Center /a/k/a/ Ortho-Neuro-Musculo-Skeletal Diagnostic and Treatment Center;

65. But on November 7, 2018, Plaintiff was at the NewYork-Presbyterian Lower Manhattan while Plaintiff was under severe and excruciating Chest pains and Dizziness while he was on his way to Social Security Administration Hearing Office.

66. On November 7, 2018, Mr. Jason Ausmus, Physician Assistant told Plaintiff that Plaintiff's Blood Pressure was extremely abnormally high, and that normally patient experiencing Chest pain and Dizziness that the NewYork-Presbyterian Lower Manhattan Hospital had the policy to hold the patient overnight.

67. On November 7, 2018, Plaintiff arrived at the NewYork-Presbyterian Lower Manhattan Hospital at about approximately 11:35 a.m.

68. On November 7, 2018, Mr. Jason Ausmus, Physician Assistant informed Plaintiff that Dr. Colleen McCarthy, MD., was trying to secure admission Bed for the Plaintiff.

69. On November 7. 2018, both Plaintiff's Legs were swollen, and Plaintiff was having difficulties standing or walking, along with severe and excruciating head pain like headache.

70. On November 7, 2018 at about 21:05 p.m., Mr. Jason Ausmus, Physician Assistant told plaintiff that he was still waiting to hear from Dr. Collen McCarthy, MD., who promised to get back to him whenever admission Bed was available.

71. On November 7, 2018, at about 21:10 p.m., a LADY, who introduced herself as 'Patient Services Administration Coordinator' asked Plaintiff if Plaintiff has Health Insurance.

72. On November 7, 2018, at about 21:11 p.m., the Patient Services Administration Coordinator said that Dr. Colleen McCarthy, MD., and Mr. Jason Ausmus, Physician Assistant told her to inform Plaintiff that Plaintiff will not be admitted without Health Insurance.

73. On November 7, 2018, at about 21:13 p.m., Plaintiff told the Patient Services Administration Coordinator that he would like to enter medical bill payment arrangement in the same manner he did entered into medical treatment arrangement with Dr. Gillman.

74. On November 7, 2018, at about 21:15 p.m., New York-Presbyterian Lower Manhattan Hospital Patient Services Administration Coordinator told Plaintiff that she was going to talk to Dr. Collen McCarthy, MD., and Mr. Jason Ausmus, Physician Assistant whether they would accept medical treatment payment arrangement. But both treated other unconditionally.

75. On November 7, 2018, at about 21:17 p.m., Patient Services Administration Coordinator returned to Plaintiff after talking to Dr. Colleen McCarthy, MD., and Mr. Jason Ausmus, Physician Assistant to tell Plaintiff that both Dr. Colleen McCarthy, MD., and Mr. Jason Ausmus, Physician Assistant said they will not provide healthcare without having Health Insurance.

76. On November 7, 2018, at about 21:19 p.m. NewYork-Presbyterian Lower Manhattan Hospital Patient Services Administration Coordinator handed three Pamphlets to Plaintiff by emphasizing to Plaintiff by encouraging Plaintiff to make sure that Plaintiff read the Pamphlets so that Plaintiff can know his right if he believes that he was being refused medical attention and treatment solely for not having Health Insurance. But soon thereafter, she departed. Plaintiff believes, asserts and alleges that he was treated differently from other in the same Or similar situations and circumstance since a Lady not having Health Insurance was treated.

77. On November 7, 2018, at about 21:20 p.m., Plaintiff requested to speak to Dr. Colleen McCarthy, MD., and Mr. Jason Ausmus, but Dr. Colleen McCarthy, MD., refused to speak to Plaintiff.

78. On November 7, 2018 at about 21:21 p.m. Mr. Jason Ausmus, Physician Assistant walked angrily and yelling and screaming with violent loud tone of voice toward Plaintiff location; and ORDERED Plaintiff to leave the emergency room now; and he re-emphasized it by saying "Mr. O'Diah, I want you to leave the Emergency room right now" otherwise he was going to use the Security to remove Plaintiff from the emergency room. O'Diah Surprised, shocked.

79. On November 7, 2018, at about 21:21 p.m., while Mr. Jason Ausmus, Physician Assistant was screaming loudly and yelling at the Plaintiff face, he spitted some saliva fluids from his mouth into Plaintiff face. At this moment Plaintiff believes, asserts and alleges verbal assault.

80. On November 7, 2018, at about 21:21 p.m., Plaintiff was shocked and traumatized at watching Dr. McCarthy, M.D.. and Mr. Jason Ausmus, Physician Assistant Medical Malpractices unethical conducts for denying Plaintiff Medical Healthcare Services for not having Health Insurance, even, Plaintiff was willing to make medical treatment payment arrangement.

81. On November 7, 2018, at about 21:21 p.m. Plaintiff requested for his medical impression report from Dr. Colleen McCarthy, MD., and Mr. Jason Ausmus, Physician Assistant. But both of them told Plaintiff that Plaintiff is not getting anything from both of them.

82. On November 7, 2018, at about 21:21 p.m., Plaintiff was sweating abnormally as if water was poured on the Plaintiff whole body because of emotional distress, trauma, shame, disgrace, humiliation, embarrassment, threat, intimidation, caused head pain and shaking.

83. On about November 8, 2018 through November 13, 2018, Plaintiff started receiving healthcare services via Dr. Gillman, Chiropractor where Plaintiff's cash payment arrangement per treatment visits were approved per visit;

84. But on November 14, 2018 at about 15:00 p.m., Plaintiff was shocked and surprised in dismay when Dr. Gillman told Plaintiff that their Healthcare Center would no long accept the cash payment per visit formerly approved on November 2, 2018.

85. On November 2, 2018 through November 14, 2018, Plaintiff pay Dr. Gillman and the New York Medical and Diagnostic Center with cash, Debit Card and Credit Card. But the Center want Plaintiff to prepay in full for all future scheduled medical tests and treatments in violations of prior arrangement pay per treatment.

86. On November 14, 2018, newly discovered evidences shows new revelations and new development that Social Security Administration, and Kings County Medical Center, and Queens Medical Center, and NewYork-Presbyterian Lower Manhattan Hospital contacted New York Medical and Diagnostic Center to discouraged the Center against cash payment per treatment by instructing New York Medical and Diagnostic Center to make sure that the Center ask Plaintiff to Pay in Advance all future scheduled treatment in one payment prior any treatment.

87. On November 30, 2018, Plaintiff had scheduled medical emergency visit at Weill Cornell Medicine with Dr. Amin Soltani, MD., (Internal Medicine) with payment arrangement. But before Plaintiff could see Dr. Amin Soltani, MD., already, NewYork-Presbyterian Lower Manhattan Hospital and New York Medical and Diagnostic Center, and Social Security Administration had already contacted Dr. Amin Soltani, MD, not to treat Plaintiff unless Plaintiff pay all future scheduled Medical Treatment in advance. Plaintiff was denied services. 

88. On December 19, 2018, Social Security, and New York Medical and Diagnostic Center contacted DISCOVER BANK via DISCOVER BANK CREDIT CARD OPERATIONS MANAGER to blackballed, attempted to blackmailed Plaintiff via libelous, defamation and slander by informing Discover Bank that Social Security Administration was going to make sure that Plaintiff do NOT get his back payment on time; and thereafter, warned DISCOVER BANK that Nigerian are extremely fraudulent people; Plaintiff is originally from Nigeria, and that the Bank was taking risk for granting Yonette Antoinette Grant Credit Card credit line to help Plaintiff.

89. On December 19, 2018, New York Medical and Diagnostic Center also attempted to use Plaintiff name to collect **$980.00** from Discover Bank on fraudulent schemes via deliberate misrepresentation by falsely alleged that Plaintiff owe a balance of **$980.00** which is false.

90. On December 20, 2018, based on the false information provided by Social Security Administration to DISCOVER BANK under the pretense that they were investigating Plaintiff; hence, DISCOVER BANK attempted to cut off Plaintiff and Yonette Antoinette Grant from having access to enjoying privilege to already approved Credit Card Credit line without due process.

91. **WHEREFORE,** Plaintiff believes, asserts and alleges that the Defendants agreed under color of state law to denied and deprived Plaintiff all constitutional rights, life, liberty, protection, privileges, immunities, properties, affordable healthcare, freedom of movement, access to any possible services to get medical treatment via discriminatory and retaliatory practices upon the identification of Plaintiff's national origin after Plaintiff had publicly opposed racially motivated discrimination at employments in Private and public Establishments. It is unconstitutional to retaliate and punish anyone who opposed racial discrimination.

88. On December 19, 2018, Social Security. And New York Medical and Diagnostic Center contacted DISCOVER BANK via DISCOVER BANK CREDIT CARD OPERATIONS MANAGER to blackballed, attempted to blackmailed via libelous, defamation and slander to inform the Bank that Social Security Administration was going to make sure that Plaintiff do get his back payment on time; and warned DISCOVER BANK that Nigerian are fraudulent people; and that the Bank was taking risk for grant Yonette Antoinette Grant Credit Card credit line to help Plaintiff.

89. On December 19, 2018, New York Medical and Diagnostic Center attempted to use Plaintiff name to collect $980.00 on fraudulent and deliberate misrepresentation by falsely alleged that Plaintiff owe a balance of $980.00 which is false.

90. On December 20, 2018, based on the false information provided by Social Security Administration to DISCOVER BANK under the pretense that they investigating Plaintiff hence DISCOVER BANK attempted to cut off Plaintiff and Yonette Antoinette Grant from having access to already approved Credit Card Credit line without due process.

91. **WHEREFORE,** Plaintiff believes, asserts and alleges that the Defendants agreed under color of state law to denied and deprived Plaintiff all constitutional rights, life, liberty, protection privileges, immunities, properties, affordable healthcare, freedom of movement, access to any possible means to get medical treatment via discriminatory and retaliatory practices upon the identification of Plaintiff's national origin after Plaintiff had publicly opposed racially motivated discrimination at employments in Private and public Establishments.

92. **FURTHERMORE**, newly discovered evidences show that the Defendants acted in bad faith to agree under color of state law to interfered via unconstitutional conspiracies to slander, defame, and assassinates Plaintiff character and reputation without rational basis in law and fact.

93. Szekum Tam and Allen Hawa jointly pretended as if both were Patient Services Administration but in disguise, they use deceit to con patient to gain their trust while at the same time, both were knowingly collecting information from patient and used the information both gathered to cover-up medical malpractices involving many Medical Doctors and Nurses.

94. Szekum Tam promised to submit Plaintiff grievances to Leadership of Patient Services Administration but she NEVER did; and Allen Hawa promised to review Plaintiff's administrative complaints and grievance within 30-day after Plaintiff submitted rebuttal but Allen Hawa and Szekum Tam acted in bad faith in their failure to submit Plaintiff grievances to Leadership of the Patient Services Administration for review in a timely manner.

95. Szekum Tam and Allen Hawa directly participated when they both use 'lies and coverup' in their 'PLAYBOOK' to keep secret many medical malpractices and unethical conducts both knew or should have known that exist at the NewYork-Presbyterian Lower Manhattan Hospital.

**FIRST CAUSE OF ACTION**

96. The allegations contained paragraphs 1 through 95 are hereby re-alleged and incorporated by reference herein.

97. Defendants Discover Bank /a/k/a/ Discover Bank Credit Card, and Discover Credit Card Operations Managers, New York-Presbyterian Lower Manhattan Hospital, Dr. Collen McCarthy, MD., Jason Ausmus, Szekum Tam, Ellen Hawa, New York Medical and Diagnostic Center /a/k/a/ Ortho-Neuro-Musculo-Skeletal Diagnostic and Treatment Center, and All Center Physicians, and Medical Doctors, New York City Human Resources Administration, Florence Mercer, Commissioner Samuel Roberts for The New York State Office of Temporary and Disability Assistance, Social Security Administration agree under color of state laws to violates the First, Fourth, Fifth, Eighth and Fourteenth Amendments rights to be secure against deprivation of rights, liberty, properties, equal protection, freedom of movement, employments, conduct business, access to courts, education, affordable healthcare, and pursues of happiness.

98. Plaintiffs allege that as a result of the violations of his civil rights described above Plaintiff has suffered and will continue to suffer for an as yet undermined length of time the following:

**(a)** Mental Pains and suffering; **(b)** Emotional distress; **(c)** Loss of enjoyment of life; **(d)** Lost $1.2 Billion projected revenue in private businesses; **WHEREFORE,** Plaintiff hereby demand **$50,000,000.00** (Fifty Million U.S. Dollar) against each Defendant named in the above-caption action whose names appeared At paragraph #97 above **in addition to the Claims I through Claims XIV below;** Also, Award Back Payment of **$22, 359.00** against New York City Human Resources Administration; and Back Payment in the amount of **$166,536.00** against Social Security Administration;

CLAIM I: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR ALL THE DEFENDANTS KONWINGLY AND DIRECTLY PARTICIPATED TO AGREE TO SUBJECTED PLAINTIFF TO DEPRIVATION OF CONSTITUTIONAL RIGHTS TO SERVICES AND BENEFITS PROVIDED BY THE CITY, COUNTY, STATE AND FEDERAL GOVERNMENT AFTER PLAINTIFF BECAME INJURED AND DISABLE UPON PLAINTIFF'S NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDS. 1, 4, 8, 14 TO U.S. CONSTITUTION; 42 U.S.C. SECTIONS 1983,1985, 1986.

CLAIMS II: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR VIOLATION OF "SUBSTANTIAL DUE PROCESS" WITH CORRUPTED INTENT TO DENIED PLAINTIFF SERVICES, BENEFITS, CLAIMS, PRIVILEGES, PROPERTIES, LIBERTY, RIGHTS, EXPRESSION, MOVEMENT, EDUCATION, AND PURSUES OF HAPPINESS UPON NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING PROTECTED UNDER U.S.C.A. CONST. AMENDMENTS 1, 5, 8 AND 14; 42 U.S.C. SECTIONS 18116; 18 U.S.C. SECTIONS 242, 247; 42 U.S.C. SECTIONS 1983, 1985, 1986...

CLAIMS III: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS KNOWINGLY USED DILATORY TACTICS, THREATS, INTIMINDATIONS, FEAR, COERCIONS, LIES AND DECEIT WITH THE INTENT TO VIOLATES FAIRNESS, DUE PROCESS AND EQUAL PROTECTION WITH BAD FAITH PURPOSE TO DEPRIVED PLAINTIFF RIGHT TO SERVICES, BENEFITS AND MONEY THE DEFENDANTS OWE TO PLAINTIFF UPON NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5 AND 14; Title 18 U.S.C. SECTIONS 242, 247; Title 42 U.S.C. SECTIONS 18116; 42 U.S.C. SECTIONS 1983, 1985 AND 1986...

CLAIMS IV: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS CONSPIRED TO DENIED PLAINTIFF CONSTIUTIONAL PRIVILEGES, SERVICES AND OPPORTUNITIES UPON THE IDENTIFICATION OF NATIONAL ORIGIN TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5, AND 14; Title 42 U.S.C. SECTIONS 18116; Title 18 U.S.C. 242, 247; 42 U.S.C. SECTIONS 1983, 1985 1986..

CLAIMS V: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS PARTICIPATED TO CARRIED OUT JOINT RACIALLY MOTIVATED CONSPIRACIES TO ENGAGED AND CARRIED OUT UNCONSTITUTIONAL POLICIES WITH THE INTENTS TO OBSTRUCT JUSTICE VIA THREATS AND INTIMIDATION WITH THE MALICIOUS INTENT TO CAUSE PLAINTIFF IRREPARABLE BODILY HARM UPON NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING UNDER COLOR OF STATE LAW U.S.C.A. CONST. AMENDMENTS 5, 8, AND 14 AND 42 U.S.C. SECTION 1983, 1985, 1986, VIOLATED.

CLAIMS VI: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTION ACTION FOR THE DEFENDANTS PARTICIPATION TO CARRY OUT JOINT RACIALLY MOTIVATED SYSTEMIC DISCRIMINATORY STEREOTYPIC PRACTICES AND FURTHER USED THE SAME OMISSIONS TO DENIED PLAINTIFF HIS LIBERTY VIA RECKLESS DISREGARD FOR THE TRUTH; AND FOR THE UNITED STATES CONSTITUTION AND LAWS UPON THE IDENTIFICATION OF NATIONAL ORIGIN TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5, 14 TO U.S. CONSTITUTION' AND 42 U.S.C. SECTIONS 1983, 1985 AND 1986...

CLAIMS VII: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS RECKLESS USE OF DELIBERATE MISREPRESENTATION IN BAD FAITH BY SHOWING RECKLESS DISREGARD FOR THE TRUTH VIA USE OF PERJURED STATEMENTS, LIES AND COVERUP BUT IN VIOLATIONS OF "SUBSTANTIAL DUE PROCESS" WITH THE INTENT TO HIDE THE TRUTH TO CAUSE PLAINTIFF IRREPARABLE INJURIES UPON NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 5 AND 14; AND 18 U.S.C. SECTIONS 242, and 247; and 42 U.S.C. SECTION 18116; AND 42 U.S.C. SECTIONS 1983, 1985, 1986;

CLAIMS VIII: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS USE OF THREATS AND INTIMIDATION AND COERCION VIA USE OF VERBAL AND PHYSICAL ASSAULTS MALICIOUSLY TO AGGRAVATE PLAINTIFF'S PRE-EXISTING MEDICAL CONDITION UPON THE IDENTIFICATION OF NATIONAL ORIGIN TO INVOKED PLEADING UNDER U.S.C. A. CONST. AMENDMENTS 8 AND 14; AND 42 U.S.C. SECTIONS 1983, 1985, 1986; AND 18 U.S.C. SECTIONS 242, 247; 42 U.S.C. SECTIONS 18116 VIOLATED

CLAIMS IX: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANT PARTICIPATION IN JOINT RACIALLY MOTIVATED SYSTEMIC BREACHES OF AFFORDABLE HEALTHCARE ACT VIA JOINT RACIALLY MOTIVATED RETALIATORY AND DISCRIMINATORY PRACTICES UPON THE IDENTIFICATION OF PLAINTIFF'S NATIONAL ORIGIN TO INVOKED PLEADING UNDER 18 U.S.C. SECTIONS 242, AND 247; 42 U.S.C. SECTIONS 18116; U.S.C.A CONST. AMENDMENTS 1, 4, 5, 8 AND 14; and 42 U.S.C. SECTIONS 1983, 1985 and 1986...

CLAIMS X: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR THE DEFENDANTS JOINT CONSPIRACIES TO DISCRIMINATES, RETALIATES, DENIED PLAINTIFF PRIVILEGES, PROTECTION, OPPORTUNITIES, AND PURSUES OF HAPPINESS UPON NATIONAL ORIGIN IDENTIFICATION TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5, 8, AND 14; 18 U.S.C. SECTIONS 242, 247; 42 U.S.C. SECTIONS 1983, 1985, 1986; 42 U.S.C. SECTIONS 18116; AND VIOLATIONS PURSUANT TO CONSUMER FINANCIAL PROTECTION...

CLAIMS XI: AWARD $50,000,000.000 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR SUBJECTING PRO SE PLAINTIFF TO DISPARITY DISPARAGES TREATMENT WHERE PLAINTIFF WAS TREATED DIFFERENTLY FROM OTHERS IN THE SAME SITUATIONS AND CIRCUMSTANCES WITHOUT RATION BASIS UPON THE IDENTIFICATION OF NATIONAL ORIGIN TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5 AND 14; Title 42 U.S.C. SECTIONS 18116; TITLE 18 U.S.C. SECTIONS 242, 247; AND 42 U.S.C. SECTIONS 1983, 1985 AND 1986 FOR FAILURE TO PREVENT...

CLAIMS XII: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR PLAINTIFF BEING SINGLED OUT, TARGETED AND SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENTS CONFINEMENT FOR NOT HAVING HEALTH INSURANCE; AND UNJUSTLY CONVICTED AND IMPRISONED FOR CRIME HE NEVER COMMITTED VIA RETALIATORY AND DISCRIMINATORY PRACTICES AFTER PLAINTIFF HAD OPPOSED WIDESPREAD AND VAST DISCRIMINATORY PRACTICES IN PRIVATES AND PUBLIC ESTABLISHMENTS TO INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENT 8 AND 14 ; 42 U.S.C. SECTION 18116; AND 18 U.S.C. SECTIONS 242, 247, 42 U.S.C. SECTIONS 18116; AND 42 U.S.C. SECTIONS 1983, 1985 AND 1986...

CLAIMS XIII: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR DEFENDANTS FAILURE TO PROVIDE TIMELY BENEFITS, HEALTHCARE SERVICES, GENERAL CITY HUMAN RESOURCES SERVICES, PAY SOCIAL SECURITY SUPPLEMENTAL INCOME, STATE SUPPLEMENTAL PROGRAM BENEFIT; AND IRRATIONAL DELAYS OF BACK PAYMENT RIGHT AWAY OF SECURITY SUPPLEMENTAL INCOME AND THE POLICY USED FOR REDUCTION OF FULL BACK PAYMENT RIGHT AWAY IS UNCONSTITUTIONAL AND THESE OMISSIONS INVOKED PLEADING UNDER U.S.C.A. CONST. AMENDMENTS 1, 5 AND 14; AND Title 42 U.S.C. SECTIONS 1983, 1985, 1986; AND Title 18 U.S.C. SECTIONS 242, 247; AND Title 42 U.S.C. SECTIONS 18118;

**CLAIMS XIV: AWARD $50,000,000.00 CLAIMS AGAINST EACH DEFENDANT ALREADY NAMED ON PAGE #1, IN THIS ABOVE-CAPTIONED ACTION FOR DEFENDANTS JOINTLY DELIBERATELY MISREPRESENTED PRO SE PLAINTIFF TO PRIVATE AND PUBLIC ESTABLISHMENT VIA LIBEL WITH CALCULATED MALICIOUS INTENT TO BLACKBALL, BLACKMAIL, SLANER, DEFAME, AND CAUSE PLAINTIFF PHYSICAL BODILY INJURIES, AND BUSINESSES DAMAGES IN BAD FAITH; UPON THE IDENTIFICATION OF PLAINTIFF NATIONAL ORIGIN TO INVOKED PLEADINGS UNDER U.S.C. SECTIONS 1, 5 and 14; AND 42 U.S.C. SECTIONS 18116; AND 18 U.S.C. SECTIONS 242, 247; AND 42 U.S.C. SECTIONS 1983, 1985 AND 1986 FOR FAILURE TO PREVENT...**

**TOAL RELIEFS SOUGHT**

WHEREFORE, Pro Se Plaintiff hereby pray, request, ask and demand for Judgment on the pleading on the merit, including equitable reliefs, summary and declaratory judgments for the interest of fairness in the total of $100,000,000.00 against each Defendants to a total sum of reliefs sought at $1.2 Billion against all the 12-defendants in equal reliefs.

**TRIAL BY JURY**

Plaintiff hereby demands trial by Jury.

**CONCLUSION**

**WHEREFORE,** Pro Se Plaintiff Aror Ark O'Diah hereby prayed, asked, request and demand that this Honorable Court issued DECLARATORY JUDGMENTS in Pro Se Plaintiff Aror-Ark A. O'Diah's favor.

I, Aror Ark O'Diah, certified under penalty of perjury under the law of the United States of America pursuant to 28 U.S.C. Sections 1746, that the above statements and the enclosed are true and correct.

Respectfully Submitted By:

02/11/2019 Aror-Ark A. O'Diah

**Aror-Ark Ark O'Diah, Pro Se Plaintiff**
GLOBAL JUDICIAL WATCH COORDINATOR FOR
WORLDWIDE WITNESSES, INC., AND FOR
TIMESPEED CONSULTING TOURISM AND
PERSONAL SERVICES, INC., a Subsidiary of
TIMESPEED INFORMATIONS & PROTECTIVE SERVICES INC.
**1520 JACKSON STREET, APT. 303, OAKLAND, CA 94612.**
**3403 FOSTER AVENUE, 4B, BROOKLYN, NY 11210-6439**
PHONE: (347) 614-8799/ (347) 62-7252, (510) 838-9001
(510) 710-2475
Email: GlobalJudicalWatch@gmail.com
aror@timespeedworldwideinfo.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

---

AROR-ARK O'DIAH

Plaintiff,

DISCOVER BANK, et al.,

Defendants.

---

TABLE OF
**EXHIBIT "A"**

# TABLE OF EXHIBIT "A"

**DESCRITPTION OF EXHIBIT "A":** **# OF PAGES OF EXHIBIT "A":**

Discover Bank Letters Dated 01/24/2018 and 01/24/2019........................................................1-4

NewYork-Presbyterian Lower Manhattan Hospital Discharge Instruction Given Dated 11/07/2018 Disputed By Plaintiff And Letters Dated 11/14/2018 and Discharged Instruction Dated 11/30/2018 Disputed By Plaintiff and Letter Dated 12/21/2018..................5-8

Ortho-Neuro-Musculo-Skeletal Diagnostic And Treatment Center /a/k/a/ New York Medical And Diagnostic Center Letter Dated 12/19/2018 Demanded For Payment For Services And Treatment That Were Never Provided Disputed By Plaintiff While The CENTER Attempted To Collect Payment From DISCOVER BANK on 12/19/2018 and 12/20/2018, And Medical Bills Paid By Plaintiff Dated 11/12/2018, 11/12/2018.........................................9-13

Legal Appeals Unit New York State Workers' Compensation Board Memorandum Of Board Panel Decision issued as Filed 10/06/2005 Relevance to 06/29/2000 Malicious Physical Attacks And Bodily Injuries That Resulted To Initial Disability Related to Social Security Disability Benefit Claim Filed On About 06/30/2000 But Rejected Continuously By Social Security Administration until September 27, 2016 Without Rational Basis ..........................................................................................................14-15

New York State Office of Temporary and Disability Assistance Administrative Law Judge Decision issued in Plaintiff's Favor on 07/02/2014 But Decision was NEVER Enforced; Hence, Payment Were Arbitrarily Stopped and resulted to Accumulated Unpaid Back Payment in the sum of the amount of **$22,359.00** unpaid By New York City Human Resources Administration and New York State Office of Temporary and Disability Assistance implicated FLORENCE MERCER and Commissioner SAMUEL ROBERTS..............16-17

Social Security Administrative Law Judge Decision in Favor of Plaintiff Dated 12/14/2018 that Disability Began on 09/27/2016 but Disability Actually Began on 06/29/2000 Based on Disability Claims Submitted on about 06/30/2000 Rejected By SOCIAL SECURITY ADMINISTRATION, Without Due Process and Without Rational Basis in Law and Facts..........................................................................................................18-21

SOCIAL SECURITY ADMINISTRATION Denied Reconsideration Appeal on 01/24/2019 According To SOCIAL SECURITY ADMINISTRATION Letter Dated 01/25/2019; And on 01/03/2019, SOCIAL SECURITY ADMINISTRATION Used Incorrect Dates as to when Disability Began and Incorrect Information to Calculate Security Supplemental Income To Derived at Incorrect Amount of **$7,692.67** instead of **$166,536.00**, And the State of New York Office of Temporary and Disability Assistance used the Incorrect Information Provided by SOCIAL SECURITY ADMINISTRATION Disputed By Plaintiff to Calculate The State of New York State Supplemental Program Benefit to Derived at $23.00 Per Month which were Incorrectly Untimely Paid..........................................................................22-24

DISCOVER®

PO Box 30943
Salt Lake City, UT 84130-0943

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
DFS

LF11RA01 040697
YONETTE A GRANT
3403 FOSTER AVE APT 4B
BROOKLYN, NY 11210-6439

Received
1/29/2019

KBFFSP1 11210

1

DISCOVER

January 24, 2019

PO Box 30943
Salt Lake City, UT 84130-0943

Dear YONETTE A GRANT,

A copy of your requested letter is enclosed.

Thank you,
Discover Card

**Discover.com**
Discover Card, issued by Discover Bank, Member FDIC

GEN 100459

PO Box 30943
Salt Lake City, UT 84130-0943

LF11RA01 040697
YONETTE A GRANT
3403 FOSTER AVE APT 4B
BROOKLYN, NY 11210-6439

2

DISCOVER

PO Box 30203
Salt Lake City, UT 84130-0203

Account number ending in 3527
December 20, 2018

REPRINT

Dear Yonette Grant,

As a result of a recent review, we have reduced the credit line on your Discover it® card account. Your account remains OPEN and you can charge up to your available credit line. As your situation changes, future account reviews may allow us to reconsider your credit line on this account.

We've taken this action for the following reason(s):

Increasing balance history on your account(s)
Bureau reports insufficient credit history
Bureau reports history of increasing total balances

As a result:
Your NEW credit line is $2,700 of which $700 is available as cash.

Should you have any questions regarding the actions taken on your account, our service specialists are available to assist you, Monday - Friday 9 AM - 7 PM ET, by calling 1-866-836-7143. For helpful financial tips and information on managing your credit, visit Discover.com and search "Credit Management".

If you would like to know more about your Discover Card benefits or if you are in need of a new card, please contact us by calling 1-800-347-3085 or visit Discover.com.

Sincerely,

Credit Operations

Discover.com
Discover Card, issued by Discover Bank, Member FDIC

ADA 100040



PO Box 30203
Salt Lake City, UT 84130-0203

Yonette Grant
3403 Foster Ave Apt 4b
Brooklyn, NY 11210-6439

3

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

For a free copy of your credit bureau report, contact:

TRANSUNION CONSUMER RELATIONS
PO BOX 1000
CHESTER, PA 19022
800-916-8800
WWW.TRANSUNION.COM

LF11R0240406970Z

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Type of credit score FICO
Your credit score 665
Date December 14, 2018
Scores range from a low of 300 to a high of 850
Key factors that affected your credit score were as follows:
Key Factor 1 Length of time accounts have been established
Key Factor 2 % of balances to credit limits is too high on revolving accounts
Key Factor 3 Lack of recent installment loan information
Key Factor 4 Length of time revolving accounts have been established

This information was provided to us by TRANSUNION CONSUMER RELATIONS, a consumer reporting agency.

If you have any questions regarding this letter, you should contact Discover Bank, issuer of the Discover card, at P.O. Box 15410, Wilmington, DE 19850-5410.

FEDERAL EQUAL CREDIT OPPORTUNITY ACT NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency which administers compliance with this law concerning Discover Bank, the issuer of the Discover Card, is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington DC 20006.

4

REPRINT

NewYork-Presbyterian
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS

## LMH Adult Emergency Department

**Patient Name:** O'DIAH, AROR ARK

**MRN:** 312 33 72
**Visit Number:** 000420842 622
**Visit Date and Time:** 11/07/2018 11:35

**Date of Birth:** 05-Jan-1958

**ED Attending MD:** McCarthy, Colleen Jason Ausmus, PA

**Discharge Date and Time:** 11/07/2018 21:21

**Discharge Instructions Given:**

Angina Pectoris - 11/07/2018

**Follow-Up Instructions:**

**Special Instructions**

Thanks for visiting us at New York Presbyterian. Your evaluation today did not show that you were having a heart attack. Please know that no evaluation is complete without follow-up with Cardiology within one week. Show them the results of what was done here in the ER and please continue taking any usual medications as prescribed.

Cardiology

**Return to Emergency Department for persistent, worsening, or new symptoms**

including: fever above 101, increasing chest pain, shortness of breath.

**Radiology:**

XR Chest Standard (Pa, Lat)

**Procedures:**

No major procedures were performed in this visit

**Patient Signature:**

**I Have fully understood what was explained to me:**

discharged unsatisfied.

x Aror-Ark Ark O'Diah 11/7/2018

Patient or Guardian Signature
O'DIAH, AROR ARK

Signature acknowledges that Patient and/or Guardian has received this instructions and understands them. Patient and/or Guardian also understands that he/she should follow up with his/her primary care physician once discharged.

5

Case 3:19-cv-00816-WHA Document 1 Filed 02/14/19 Page 36 of 54

NewYork-Presbyterian

**Lower Manhattan Hospital**
170 William Street
New York, NY 10038
TEL: (212)312-5000

November 14, 2018

Aror-Ark Ark O'Diah
3403 Foster Avenue, Apt #4B
Brooklyn, NY 11210

Dear Mr. O'Diah,

This letter is to acknowledge receipt of your letter dated November 8, 2018 regarding your Emergency Department visit on November 7, 2018 at NewYork-Presbyterian Lower Manhattan Hospital. The Office of Patient Services Administration is the Hospital's central mechanism for receiving and responding to inquiries and concerns from patients and families.

I appreciate you for taking the time to share your concerns with us. I forwarded your concerns to the supervisory staff in the Departments of Emergency Medicine and Physician Assistant Service for further review. You will receive a written follow-up letter at the completion of this review within 30 days.

Again, thank you for providing us this opportunity to review your concerns. If I may be of further assistance, please do not hesitate to contact me at (212) 312-5034.

Sincerely,

Szekum Tam, Senior Coordinator
Patient Services Administration

6

Weill Cornell Medicine

# O'Diah, Aror Ark

MRN: 3123372

**Appointment** 11/30/2018 Provider: Amin Soltani, MD (Internal Medicine)

Weill Cornell Internal Medicine Associates
505 East 70th Street, HT4
New York, New York 10021-4872

## Visit Information

| | |
|---|---|
| MRN: | 3123372 |
| Scheduled: | Amin Soltani |
| Dept Address: | 505 East 70th Street, HT4<br>New York, NY 10021-4872 |
| Home/Work Phone: | 347-614-8799 / 516-361-2449 |
| Visit Type: | POST DISCHARGE VISIT **LOC: Post Discharge Initial** |
| Epic Visit #: | 83749815 |
| External Visit #: | 420849790 |
| Visit Time: | 3:30 PM |
| Length: | 60 |
| Scheduling Notes: | Procedure Notes: |
| Payor/Plan: | / *No Plan* |

## Additional Documentation

| | |
|---|---|
| Epic Visit Number: | 83749815 |
| External Visit Number: | 420849790 |
| Encounter Reports: | Pt Entered Questionnaires |

## Orders Placed

None

## Medication Renewals and Changes

As of 11/30/2018 3:30 PM

None

## Visit Diagnoses

None

## Level Of Service

None

7

NewYork-Presbyterian

**Lower Manhattan Hospital**
170 William Street
New York, NY 10038
TEL: (212)312-5000

December 21, 2018

Aror-Ark Ark O'Diah
3403 Foster Avenue, Apt #4B
Brooklyn, NY 11210

Dear Mr. O'Diah,

This letter is to acknowledge receipt of your letter dated December 18, 2018 requesting for a re-review of your Emergency Department visit on November 7, 2018 at NewYork-Presbyterian Lower Manhattan Hospital. I appreciate you for taking the time to share your additional concerns with us.

Your concerns will be reviewed by the appropriate leadership staff. You will receive a written follow-up letter at the completion of this review within 30 days.

Again, thank you for providing us this opportunity to review your concerns. If I may be of further assistance, please do not hesitate to contact me at (212) 312-5034.

Sincerely,

Ellen Hawa

Ellen Hawa, Msc.N, R.N.
Director, Patient Services Administration

8

SR

ORTHO-NEURO-MUSCULO-SKELETAL DIAGNOSTIC
AND
TREATMENT CENTER
at NYMDC
*80-46 Kew Gardens Road, Kew Gardens, NY 11415*

NY 200

UNITED STATES POSTAGE
PITNEY BOWES
02 1P $ 000.47⁰
0000279949 DEC 27 2018
MAILED FROM ZIP CODE 11415

Mr. Aror O'dian
3403 Foster Ave, Apt # 4B 20181107121
Brooklyn NY 11210

9

112 SE411 C015

NEW YORK MEDICAL AND DIAGNOSTIC CENTER
8046 Kew Gardens Road
Kew Gardens, NY 11415
Telephone#: 718-261-1000; Fax#: 718-261-0336

Wednesday December 19, 2018

Mr. AROR O'DIAH
3403 Foster Ave.Apt#4B2018110771121
Brooklyn NY 11210

Medical Record #: 36495

Dear Mr. O'DIAH,

We currently show a balance of $ 980.00 on your account.

( ) Deductible
( ) Denied by the Insurance Company
(✓) Unpaid balance for the services that were provided.
( ) Co-Insurance
( ) Co-payment
( ) Insurance Expired
( ) Non covered service
( ) We do not have your insurance information

( ) If you have/had any health insurance, it is your responsibility to call your insurance company and find out they why they have not paid for the services you have received at New York Medical and Diagnostic Center.

Please send us a check or provide us with your credit card information in the space below.

If we can be of any assistance, please do not hesitate to contact us at 718-261-1000.

Sincerely,

Billing Department

**PS:** If we do not receive payment or contact our office within the next 10 business days to clarify your outstanding bills, your account will be sent to collection agency.

**Your credit card information:**

Type ( ) Visa ( ) Mastercard ( ) American Express
Name of Card Holder: ____
Credit Card#: ____
Security Code: ____
Expiration Date: ____

126Partial.rtf

10

| | |
|---|---|
| Terminal ID | XXXXXXXXXXXX945 |
| Trans ID | 000000002156 |
| Receipt # | 36495 |
| Trans Type | Purchase |
| Clerk ID | Kelly |
| Date/Time | 2018-11-13 13:28:57 |
| Card Type | Discover |
| Card Number | XXXXXXXXXXXX3527 |
| Entry Legend | CHIP READ |
| Entry Method | CONTACT |
| Approval Code | 01328B |
| AC | DA3BBC2A28A57C80 |
| ATC | 0004 |
| AID | A0000001523010 |
| AID NAME | Discover Credit |
| TVR | 0000008000 |
| TSI | E800 |
| Resp CD | 00 |
| TRN REF # | 068274373375399 |
| VAL CODE | 5000 |

Total Amount USD$90.00

Description: Payment

Approved - Thank You

x Aror-A-K A-K O'Neal
Cardholder Signature

B - agrees to pay total amount above according to cardholder's agreement with issuer.

Customer Copy

11/13/18 paid $90
toward $3 more
sessions
for Chiropractor Dr. Gillman

[stamp:] 80-46 KEW GARDENS ROAD
KEW GARDENS, NY 11415

[stamp:] NEW YORK MEDICAL & DIAGNOSTIC CENTER
80-46 KEW GARDENS ROAD
KEW GARDENS, NY 11415
(718) 261-1000

11

| | |
|---|---|
| Terminal ID | XXXXXXXXXXXX945 |
| ...s ID | 000000002125 |
| Receipt # | 36495 |
| Trans Type | Purchase |
| Clerk ID | Kelly |
| Date/Time | 2018-11-12 12:35:17 |
| Card Type | Visa |
| Card Number | XXXXXXXXXXXX1148 |
| Entry Legend | CHIP READ |
| Entry Method | CONTACT |
| Approval Code | 073512 |
| AC | 04395B68B53ACA87 |
| ATC | 0057 |
| AID | A0000000031010 |
| AID NAME | VISA DEBIT |
| TVR | 8080008000 |
| TSI | 6800 |
| Resp CD | 00 |
| TRN REF # | 468316633174316 |
| VAL CODE | CSCN |

Total Amount USD$200.00

Description: Payment

Approved - Thank You

x [signature]
Cardholder Signature

P...r agrees to pay total amount above according to cardholder's agreement with issuer.

Customer Copy

NEW YORK MEDICAL & DIAGNOSTIC CENTER INC.
80-46 KEW GARDENS ROAD
KEW GARDENS, NY 11415
(718) 261-1000

Nerve Testing

ABI $250 — 250
NCV $400 (2 parts) — 800
SSEP $200 (2 parts) — + 400

1,450
-200 = paid $200 11/12/1
$1,250 balance

12

| | |
|---|---|
| minal ID | XXXXXXXXXXXX945 |
| ans ID | 000000002123 |
| Receipt # | 36495 |
| Trans Type | Purchase |
| Clerk ID | Lillian |
| Date/Time | 2018-11-12 11:06:27 |
| Card Type | Visa |
| Card Number | XXXXXXXXXXXX1148 |
| Entry Legend | CHIP READ |
| Entry Method | CONTACT |
| Approval Code | 070611 |
| AC | D13FFEB1F370026C |
| ATC | 0056 |
| AID | A0000000031010 |
| AID NAME | VISA DEBIT |
| TVR | 8080008000 |
| TSI | 6800 |
| Resp CD | 00 |
| TRN REF # | 308316579878969 |
| VAL CODE | BK8N |

Total Amount USD$150.00

Description: Payment

Approved - Thank You

X [signature]
Cardholder Signature

Buyer agrees to pay total amount above according to cardholder's agreement with issuer.

Customer Copy

NEW YORK MEDICAL & DIAGNOSTIC CENTER INC.
80-46 KEW GARDENS ROAD
KEW GARDENS, NY 11415
(718) 261-1000

LEGAL APPEALS UNIT
WORKERS' COMPENSATION BOARD
20 PARK ST
ALBANY, NY 12207
www.wcb.state.ny.us

David F. Wehner
Chairman

State of New York - Workers' Compensation Board

In regard to Aror A. O'Diah, WCB Case #4000 7001

# MEMORANDUM OF BOARD PANEL DECISION

*keep for your records*

Opinion By: A. Edel Groski
Jeffrey R. Sweet
Robert M. Zinck

In an application filed April 16, 2004 the carrier requests review of the Workers' Compensation Law Judge's decision filed March 18, 2004, which, inter alia, made the following awards, without prejudice to possible apportionment:

June 30, 2000 to January 1, 2001 at a weekly rate of $72.93, actual reduced earnings
January 1, 2001 to January 1, 2002 at a weekly rate of $55.92, actual reduced earnings
January 1, 2002 to March 12, 2004 no medical evidence.

The carrier contends that the claimant has worked and attended school since his accident and therefore should be found to have had no compensable lost time. Additionally, the carrier maintains that there is insufficient medical evidence to support awards. The carrier also argues that the claimant filed a subsequent claim for a January 11, 2001 accident. The carrier asks that the decision be rescinded with a finding of no compensable lost time subsequent to June 30, 2000 or, in the alternative, no medical evidence from June 30, 2000 to October 19, 2000 with the claimant to produce clarifying medical evidence from October 19, 2000 to January 11, 2001 with no compensable lost time thereafter on the question of new accident.

In rebuttal, the pro se claimant contends that he "was attacked and injured on June 29, 2000 at the influence of the...employer...because ..[he]challenged the practices of discriminatory promotion of ...[another employee] based on Race". The claimant contends that he was "prematurely terminated" because of this and because he was contemplating filing for Workers' Compensation benefits. The claimant maintains that he was denied reasonable accommodations by his employer. The claimant maintains that he has submitted all medical reports in his possession to the Board which support the finding of an ongoing injury.

Upon review of the evidence and testimony, the Board Panel finds that awards are warranted, based upon the

*** Continued on next page ***

| | | | |
|---|---|---|---|
| Claimant - | Aror A. O'Diah | Employer - | Sears Roebuck & Company |
| Social Security No. - | | Carrier - | Liberty Mutual Group |
| WCB Case No. - | 4000 7001 | Carrier ID No. - | W124002 |
| Date of Accident - | 06/29/2000 | Carrier Case No. - | WC205-136755 |
| District Office - | Hempstead | Date of Filing of this Decision - | 10/06/2005 |

ATENCION:
Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBRB-1 (4/99)

14



14

testimony of the claimant, the credible medical evidence, the claimant's 2000 and 2001 income tax returns, and the October 28, 2002 Memorandum of Board Panel Decision, as follows:

June 30, 2000 to September 6, 2000 at an actual reduced earnings rate of $72.93
October 23, 2000 to December 18, 2000 at an actual reduced earnings rate of $72.93
May 10, 2001 to August 26, 2001 at an actual reduced earnings rate of $55.92
August 26, 2001 to March 12, 2004 no medical evidence

Accordingly, the Workers' Compensation Law Judge's decision filed March 18, 2004 is MODIFIED to amend awards as indicated in the preceding paragraph. Awards are made without prejudice to possible apportionment. The decision is otherwise affirmed. No further action is planned by the Board at this time.

All concur.

| | | |
|---|---|---|
| A. Edel Groski | Jeffrey R. Sweet | Robert M. Zinck |

Interest is due to the claimant on the unpaid portion of the award, if any, pursuant to WCL section 20 or DBL section 221. However, interest is not due on any portion of the award rendered as a credit or reimbursement to an employer for compensation already paid, unless the claimant's leave credits have value and have not been fully restored pursuant to a collective bargaining agreement.

| | | | |
|---|---|---|---|
| Claimant - | Aror A. O'Dish | Employer - | Sears Roebuck & Company |
| Social Security No. - | | Carrier - | Liberty Mutual Group |
| WCB Case No. - | 4000 7001 | Carrier ID No. - | W124002 |
| Date of Accident - | 06/29/2000 | Carrier Case No. - | WC205-136755 |
| District Office - | Hempstead | Date of Filing of this Decision - | 10/06/2005 |

ATENCION:
Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EBAB-1 (4/99)

15



15

# FH# 6768158Z

ENCLOSED IS THE DISPOSITION OF YOUR FAIR HEARING REQUEST

46

Aror O'Diah
P.o. Box 330187
Brooklyn, NY 11233-0187

PLEASE NOTE:
A FAIR HEARING WILL NOT BE SCHEDULED FOR THE ACTIONS OF WHICH YOU REQUESTED REVIEW BECAUSE THEY WERE ALL RESOLVED IN YOUR FAVOR

If you do not feel that the New York City Human Resources Administration (NYCHRA) has complied with this Fair Hearing Disposition document, state the reason below and return this entire form to:

New York State Office of Temporary and Disability Assistance
Office of Administrative Hearings
Compliance Unit
P.O. Box 1930
Albany, NY 12201 - 1930
OR :
1-800-342-3334 http://www.otda.ny.gov/oah

Please note any change of address here: 3403 Foster Avenue, APT. 4B
APT. 4B
BROOKLYN, NY 11210-6439

Please be as specific as you can in describing what action has not been complied with or what benefits have not been provided – giving dollar amounts and dates where possible.

I do not feel that the New York City Human Resources Administration (NYCHRA) has complied with my Disposition of Fair Hearing because:
I hereby Request for the enforcement of BACK-Payment of the decision issued on July 02, 2014 in the amount of ~~$251~~.00 effective on April 2014 to September 27, 2016 to total = $22,359.00

Be sure to include your social security number and a phone number where you can be reached in the space below.

| Aror Ark Ark O'Diah | 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 | 347-614-8999 | 01/08/2019 |
|---|---|---|---|
| Signature | Social Security Number | Phone Number | Date |

16

STATE OF NEW YORK
OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE

REQUEST: July 2, 2014
FH#: 6768158Z
CASE #: 00032793665E
CENTER: N064

47

In the Matter of the Appeal of

Aror O'Diah

from a determination by the
New York City Department of Social Services

**DISPOSITION OF FAIR HEARING REQUEST**

The above-named Appellant requested a fair hearing on July 2, 2014, to review the following determination(s):

| ACTION | ISSUE | | NOTICE ID | NOTICE DATE |
|---|---|---|---|---|
| REDU | PA | 700 EMPLOYABILITY EXEMPTION / RESTRICTION - MEDICAL | | |
| REDU | PA | 705 FAILURE TO COMPLY WITH EMPLOYMENT REQUIREMENTS | | |

Upon receipt of the Appellant's hearing request, the New York State Office of Temporary and Disability Assistance, Office of Administrative Hearings, forwarded such request to the Agency for their review of the determinations in issue. After such review, the agency has agreed to take no further action on the notice(s) in question.

Inasmuch as the Agency agreed to take no further action regarding the determination(s) listed above, all of the issues for which the Appellant requested this hearing have been resolved in the Appellant's favor. Therefore, instead of scheduling a fair hearing, this Disposition of Fair Hearing Request, which has the same force and effect as a fair hearing decision, is being issued to all of the parties.

**Since the issue(s) above have been resolved in the Appellant's favor, a fair hearing will NOT be scheduled.**

The Agency is hereby directed to comply with its agreement to take no further action on the notice(s) in question. Should the Agency in the future determine to implement its previous action(s), it is directed to procure and review the Appellant's complete relevant case record, to issue a new Notice of Intent and to produce the required case record at any subsequent fair hearing.

If it has not already done so, the Agency should immediately take action to restore any assistance and benefits lost by the Appellant as a result of the Agency's action.

By: NYS OTDA - Office of Administrative Hearings Dated: 9/29/2014

Darla P. Ota

17

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Aror Ark Odiah<br>(Claimant) | Supplemental Security Income |
| | 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<br>(Social Security Number) |
| (Wage Earner) | |

**JURISDICTION AND PROCEDURAL HISTORY**

This case is before me on a request for hearing dated January 31, 2017 (20 CFR 416.1429 *et seq.*).

The claimant appeared and testified at a hearing held on November 14, 2018, in New York, NY. Alida V. Coles, an impartial vocational expert, also appeared at the hearing. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After careful consideration of the entire record, I make the following findings:

**1. The claimant has not engaged in substantial gainful activity since September 27, 2016, the date the application for supplemental security income was filed (20 CFR 416.920(b) and 416.971 *et seq.*).**

**2. The claimant has the following severe impairments: obesity; hypertension; degenerative changes of the cervical spine; degenerative changes of the lumbar spine; angina; degenerative changes of the right foot (20 CFR 416.920(c)).**

Dr. Flach's opinion and Dr. Rozelman's opinion are given great weight. In December 2016, Dr. Christopher Flach, Ph.D., consultative examiner, reviewed the evidence and reported mostly normal findings (Ex. 4F). Dr. Flach opined the claimant has no more than mild functional limitations. Dr. H. Rozelman, Ph.D., State agency psychological consultant, reviewed the evidence and opined that the claimant does not have a severe mental impairment (Ex. 1A). These opinions are given great weight because they are supported by the mostly normal examination findings.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).**

18

See Next Page

**4. The claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 416.967 except the claimant can occasionally climb ramps and stairs; cannot climb ladders, ropes, and scaffolds; and cannot stoop, crouch, or kneel. The claimant must avoid concentrated exposure to pulmonary irritants. Due to a combination of medical conditions and pain, the claimant is unable to engage in sustained work activity for a full 8-hour work period on a regular and consistent basis.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929.

The X-ray results showing degenerative changes to the spine, right foot, and right leg and the claimant's treatment notes showing obesity and heart problems support the finding the claimant is limited to performing work at the RFC. In April 2014, X-rays of the claimant's lumbar spine revealed degenerative changes (Ex. 1F at pg. 25). X-rays of the claimant's right foot revealed mild degenerative changes and mild hallux valgus deformity (Ex. 1F at pg. 26). X-rays of the claimant's cervical spine revealed degenerative disc disease (Ex. 1F at pg. 28). In July 2014, X-rays of the claimant's right leg revealed an old fracture and right tibia deformity (Ex. 17F at pg. 5). In August 2014, X-rays of the claimant's right leg revealed mild medial compartment narrowing at the knee (Ex. 3F at pg. 23). On August 10, 2016, the claimant was hospitalized due to bradycardia, chest pain, and shortness of breath (Ex. 7F at pgs. 3, 7, 110). An examination noted high blood pressure (Ex. 7F at pg. 40). An ECG revealed sinus tachycardia (Ex. 7F at pg. 39). In September 2016, it was noted the claimant is status post cardiac catheterization (Ex. 18F at pg. 17). In October 2016, the claimant reported having difficulty climbing stairs and walking even a block (Ex. 12F at pg. 19). A physical examination noted obesity and mild tremor in the fingers (Ex. 12F at pg. 22). In January 2017, an examination noted obesity and high blood pressure (Ex. 18F at pg. 203). As stated, the X-ray results showing degenerative changes to the spine, right foot, and right leg and the claimant's treatment notes showing obesity and heart problems support the finding the claimant is limited to performing work at the RFC.

Dr. Jakobsen's opinion supports the finding the claimant is limited to performing work at the RFC. In October 2016, Dr. Glenn Jakobsen, M.D., opined the claimant can stand/walk for 2 hours and sit for 5 hours in an 8-hour workday; requires the ability to alternate positions at will; can lift/carry up to 10 pounds; can occasionally twist and climb stairs; can rarely stoop; cannot crouch or climb ladders; has symptoms that frequently interfere with his ability maintain attention and concentration; and would miss work more than 4 days per month (Ex. 14F). This opinion is given great weight because it is supported by the X-ray results showing degenerative changes to the spine, right foot, and right leg and the claimant's treatment notes showing obesity and heart problems.

Dr. Kropsky's findings support the finding the claimant is limited to performing work at the RFC. In December 2016, Dr. Benjamin Kropsky, M.D., consultative examiner, noted the claimant's history of lower extremity fractures, lower back pain, shortness of breath, chest pain, and dizziness (Ex. 5F). Upon examination, Dr. Kropsky reported such clinical signs as high blood pressure, obesity, slow gait, inability to walk on toes, limited ability to squat, abdominal tenderness, limited range of motion of the cervical spine, limited range of motion of the lumbar



See Next Page

spine, limited range of motion of the hips and knees, and no deep tendon reflexes in the lower extremities. Dr. Kropsky noted X-rays of the claimant's lumbosacral spine revealed degenerative changes. Dr. Kropsky opined the claimant has moderate to severe limitations in his ability to carry, lift, and squat; has moderate limitations in his ability to walk and climb; is limited in activities due to chest pain and shortness of breath; requires help with household chores; and occasionally needs help with showering and dressing. This opinion is given great weight because it is supported by the examination findings, the X-ray results showing degenerative changes to the spine, right foot, and right leg, and the claimant's treatment notes showing obesity and heart problems.

**5. The claimant has no past relevant work (20 CFR 416.965).**

**6. The claimant was an individual of advanced age on the established disability onset date (Ex. 2A) (20 CFR 416.963).**

**7. The claimant has at least a high school education and is able to communicate in English (Ex. 2E) (20 CFR 416.964).**

**8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

Even if the claimant had the residual functional capacity for the full range of sedentary work, a finding of "disabled" would be directed by Medical-Vocational Rule 201.04.

**10. The claimant has been under a disability as defined in the Social Security Act since September 27, 2016, the date the application was filed (20 CFR 416.920(g)).**

## DECISION

The claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since September 27, 2016, the date the application for supplemental security income was filed.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

*0506CIPA1003340*NOTAFP.X3.CIPAFP.ODAR9.R181211.P91K
0000000000000000CP01B61B1211S079400101075

See Next Page

/s/ *Janet McEneaney*

Janet McEneaney
Administrative Law Judge

December 14, 2018
Date

Social Security Administration
**Supplemental Security Income**
Notice of Reconsideration

SOCIAL SECURITY
2250 NOSTRAND AVE
BROOKLYN, NY 11210-3099
Date: January 30, 2019
BNC#: 19D1862D12218
CLSOUT

AROR-ARK O'DIAH
3403 FOSTER AVENUE
APT 4B
BROOKLYN, NY 11210-6439

Dear AROR-ARK O'DIAH

Reconsideration Filed:
January 25, 2019

At your request we took another look at your case.
We are going to dismiss your appeal request, because it repeats the reason for reconsideration filed 01/09/2019 and denied 01/24/2019. We consider the issue already decided (or res judicata). We have enclosed the latest reconsideration determination notice for your reference.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

For general information about Social Security we invite you to visit our website at www.socialsecurity.gov on the Internet. For general questions and specific questions about your case, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 866-592-0802 and ask for Ms. ANY CLAIMS REP. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY/TDD number 718-338-8805. If you do call or visit an office, please have this letter with you. It will help us answer your questions.

If you plan to visit an office you may call ahead to make an appointment. This will help us serve you more quickly.

*Social Security Administration*

22

# Social Security Administration
# Supplemental Security Income
Notice of Award

SOCIAL SECURITY
2250 NOSTRAND AVE
BROOKLYN NY 11210

Date: January 3, 2019
Claim Number: 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 DI

0000877 00000877 5 MB 1.545 SB9FNA T12 P1
SSI M06 12/27 127 19S1832G62954
AROR-ARK O'DIAH
3403 FOSTER AVENUE
APT 4B
BROOKLYN NY 11210-6439

On December 11, 2018, we made a decision on the request for hearing that you filed on a Supplemental Security Income (SSI) claim dated September 27, 2016. The decision was that you meet the medical requirements to receive SSI. We now find that you meet the non-medical rules. Because of this, you are eligible for SSI as of November 2016 based on being disabled.

The rest of this letter explains your current monthly payment, your back payments, how we figured your payment amount, information about Medicaid, your reporting responsibilities, and your appeal rights.

## Your Current Monthly Payment

Your current monthly payment is $434.00 for February 2019. This amount will continue unless there is a change in the information we use to determine your SSI eligibility and payment amount.

## Your Back Payments

| From | Through | Monthly Payment Amount | Total |
|---|---|---|---|
| December 2016 | December 2016 | $408.67 | $408.67 |
| January 2017 | March 2017 | $410.00 | $1,230.00 |
| April 2017 | April 2017 | $310.00 | $310.00 |
| May 2017 | May 2017 | $190.00 | $190.00 |
| June 2017 | June 2017 | $370.00 | $370.00 |

23

See Next Page

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
01/03/2019



| | | | |
|---|---|---|---|
| July 2017 | July 2017 | $410.00 | $410.00 |
| August 2017 | August 2017 | $0.00 | $0.00 |
| September 2017 | November 2017 | $250.00 | $750.00 |
| December 2017 | December 2017 | $210.00 | $210.00 |
| January 2018 | January 2018 | $320.00 | $320.00 |
| February 2018 | February 2018 | $180.00 | $180.00 |
| March 2018 | March 2018 | $0.00 | $0.00 |
| April 2018 | June 2018 | $300.00 | $900.00 |
| July 2018 | July 2018 | $400.00 | $400.00 |
| August 2018 | August 2018 | $320.00 | $320.00 |
| September 2018 | September 2018 | $420.00 | $420.00 |
| October 2018 | October 2018 | $0.00 | $0.00 |
| November 2018 | December 2018 | $420.00 | $840.00 |
| January 2019 | January 2019 | $434.00 | $434.00 |
| | Total Back Payments Due To You | | $7,692.67 |

We explain how we figured the monthly payment amounts on the worksheets at the end of this letter. The explanation shows how your income, other than any SSI payments, affects your SSI payment.

**Information About Your Back Payments**

We will send you another letter about your back payments.

**When You Will Receive Your Payments**

Your bank or other financial institution will receive your monthly payment of $434.00 around February 1, 2019, and on the first of each month after that.

**Information Used To Determine Your Payments**

We based the decision on these facts:

- You meet all the rules to be eligible for SSI beginning November 1, 2016. Our rules do not allow us to pay SSI until the month after you first meet all of our eligibility rules. Therefore, the first month we can pay you is December 2016.

3:19-816EDL

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
AROR-ARK O'DIAH

(b) County of Residence of First Listed Plaintiff *(EXCEPT IN U.S. PLAINTIFF CASES)*
KINGS / ALAMEDA COUNTIES

(c) Attorneys *(Firm Name, Address, and Telephone Number)* PRO SE
AROR-ARK O'DIAH
(1) 3403 FOSTER AVE, 4B, BROOKLYN, NY 11210
(2) 1520 JACKSON STR, APT. 303, OAKLAND, CA 94612

**DEFENDANTS**
DISCOVER BANK, et al.,

County of Residence of First Listed Defendant *(IN U.S. PLAINTIFF CASES ONLY)* SUSSEX COUNTY
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
UNKNOWN

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

1 U.S. Government Plaintiff
✓3 Federal Question *(U.S. Government Not a Party)*
2 U.S. Government Defendant
4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
110 Insurance
120 Marine
130 Miller Act
140 Negotiable Instrument
150 Recovery of Overpayment Of Veteran's Benefits
151 Medicare Act
152 Recovery of Defaulted Student Loans (Excludes Veterans)
153 Recovery of Overpayment of Veteran's Benefits
160 Stockholders' Suits
190 Other Contract
195 Contract Product Liability
196 Franchise

**REAL PROPERTY**
210 Land Condemnation
220 Foreclosure
230 Rent Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers' Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Personal Injury -Medical Malpractice

**PERSONAL INJURY**
365 Personal Injury – Product Liability
367 Health Care/ Pharmaceutical Personal Injury Product Liability
368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

**CIVIL RIGHTS**
✓440 Other Civil Rights
441 Voting
442 Employment
443 Housing/ Accommodations
445 Amer. w/Disabilities–Employment
446 Amer. w/Disabilities–Other
448 Education

**PRISONER PETITIONS**

**HABEAS CORPUS**
463 Alien Detainee
510 Motions to Vacate Sentence
530 General
535 Death Penalty

**OTHER**
540 Mandamus & Other
550 Civil Rights
555 Prison Condition
560 Civil Detainee– Conditions of Confinement

**FORFEITURE/PENALTY**
625 Drug Related Seizure of Property 21 USC § 881
690 Other

**LABOR**
710 Fair Labor Standards Act
720 Labor/Management Relations
740 Railway Labor Act
751 Family and Medical Leave Act
790 Other Labor Litigation
791 Employee Retirement Income Security Act

**IMMIGRATION**
462 Naturalization Application
465 Other Immigration Actions

**BANKRUPTCY**
422 Appeal 28 USC § 158
423 Withdrawal 28 USC § 157

**PROPERTY RIGHTS**
820 Copyrights
830 Patent
835 Patent—Abbreviated New Drug Application
840 Trademark

**SOCIAL SECURITY**
861 HIA (1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g))
864 SSID Title XVI
865 RSI (405(g))

**FEDERAL TAX SUITS**
870 Taxes (U.S. Plaintiff or Defendant)
871 IRS–Third Party 26 USC § 7609

**OTHER STATUTES**
375 False Claims Act
376 Qui Tam (31 USC § 3729(a))
400 State Reapportionment
410 Antitrust
430 Banks and Banking
450 Commerce
460 Deportation
470 Racketeer Influenced & Corrupt Organizations
480 Consumer Credit
490 Cable/Sat TV
850 Securities/Commodities/ Exchange
890 Other Statutory Actions
891 Agricultural Acts
893 Environmental Matters
895 Freedom of Information Act
896 Arbitration
899 Administrative Procedure Act/Review or Appeal of Agency Decision
950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
✓1 Original Proceeding 2 Removed from State Court 3 Remanded from Appellate Court 4 Reinstated or Reopened 5 Transferred from Another District *(specify)* 6 Multidistrict Litigation–Transfer 8 Multidistrict Litigation–Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. Sections 1343 (1) to (4); 28 U.S.C. Sections 1331; 42 U.S.C. Sect. 1983, 1985, 1986; 18 U.S.C. Sect. 247; 18 U.S.C. Sections 242; 42 U.S.C. Section 18116
Brief description of cause: Denied access to courts, subjected to bodily injuries, denied Healthcare, Deprived rights, privileges, services, properties, liberty, life, protection

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.
DEMAND $ 1.2 Billions
CHECK YES only if demanded in complaint:
JURY DEMAND: ✓Yes No

**VIII. RELATED CASE(S), IF ANY** *(See instructions)*: JUDGE DOCKET NUMBER

**IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)**
(Place an "X" in One Box Only) ✓SAN FRANCISCO/OAKLAND SAN JOSE EUREKA-MCKINLEYVILLE

DATE 02/11/2019 SIGNATURE OF ATTORNEY OF RECORD Aror-Ark A. O'Diah

# Exhibit G

Exhibit G

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AROR-ARK O'DIAH,

Plaintiff,

v.

DISCOVER BANK a/k/a DISCOVER a/k/a DISCOVER BANK CREDIT CARD, DISCOVER BANK CREDIT CARD OPERATIONS MANAGERS, NEW YORK-PRESBYTERIAN LOWER MANHATTAN HOSPITAL, DR. COLLEEN McCARTHY, JASON AUSMUS, SZEKUM TAM, ELLEN HAWA, WEILL CORNELL MEDICINE a/k/a WEILL CORNELL INTERNAL MEDICINE ASSOCIATES, NEW YORK MEDICAL AND DIAGNOSTIC CENTER a/k/a ORTHO-NEURO-MUSCULO-SKELETAL DIAGNOSTIC AND TREATMENT CENTER, AND ALL CENTERS PHYSICIANS AND MEDICAL DOCTORS, NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, FLORENCE MERCER, COMMISSIONER SAMUEL ROBERTS FOR THE NEW YORK STATE OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE, and SOCIAL SECURITY ADMINISTRATION,

Defendants.
________________________________/

No. C 19-00816 WHA

**ORDER ADOPTING REPORT AND RECOMMENDATION TO DISMISS COMPLAINT AND TO TRANSFER SINGLE CLAIM TO PROPER VENUE**

## INTRODUCTION

In this civil rights action, Magistrate Judge Elizabeth Laporte has filed a Report and Recommendation regarding plaintiff's *in forma pauperis* application and complaint. For the reasons below, the Report and Recommendation is **ADOPTED**, plaintiff's application to proceed

United States District Court
For the Northern District of California

*in forma pauperis* is **GRANTED**, and all claims are **DISMISSED WITHOUT PREJUDICE** against defendants, except for claims related to a Social Security disability decision dated December 14, 2018. Claims related to that decision will be **TRANSFERRED** to the proper venue, the Eastern District of New York.

## STATEMENT

On February 14, plaintiff Aror-Ark O'Diah, proceeding *pro se*, brought this action against Discover Bank, Discover Bank Credit Card Operations Managers; New York-Presbyterian Lower Manhattan Hospital, Dr. Colleen McCarthy, Jason Ausmus, Szekum Tam, and Ellen Hawa; Weill Cornell Medicine; New York Medical and Diagnostic Center; New York Human Resources Administration; Commissioners Samuel Roberts and Florence Mercer of the New York State Office of Temporary and Disability Assistance; and the Social Security Administration. This case was related to C 19-01854 by April 29 order of the undersigned (Dkt. No. 18). That case named forty-six other defendants, included some overlapping allegations to this complaint, and is dealt with in a separate order.

Here, plaintiff's complaint contains nearly 100 paragraphs alleging such wide-ranging misconduct against him from improper calculations of his Social Security benefits to being set on fire while he was in prison to being refused medical treatment due to his lack of health insurance (Dkt. No. 1). In fourteen separate claims alleging violation of his constitutional rights due to discrimination for his national origin or failure to provide timely government benefits, plaintiff seeks $50 million against each defendant, for $1.2 billion in damages. Plaintiff also filed a motion to proceed *in forma pauperis* (Dkt. No. 3).

On March 15, Magistrate Judge Elizabeth Laporte filed a report and recommendation that: (1) granted plaintiff's application to proceed *in forma pauperis*; (2) recommended dismissal of all claims without prejudice, except for plaintiff's claim relating to his appeal of the Social Security Administrative Law Judge's decision that plaintiff's period of disability began only as of September 2016, rather than June 2000 as plaintiff contends; and (3) recommended transfer of the Social Security claim to the Eastern District of New York, which appears to be the proper venue for plaintiff's social security appeal (Dkt. No. 9). Any objection to Judge

Laporte's report and recommendations was due within 14 days after being served with a copy. Service was completed on March 15, 2019 (Dkt. No. 9-1). As of the date of this order, plaintiff has not filed any objection.

**ANALYSIS**

For the reasons set forth in Magistrate Judge Laporte's Report and Recommendation, plaintiff has failed to state any claims against defendants that are not frivolous (Dkt. No. 9).

In defining the meaning of "frivolous" under Section 1915(e)(2)(B), the United States Supreme Court has held that the *in forma pauperis* statute gives judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). "A court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations . . . [A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

Plaintiff has two claims that need to be addressed in other forums. *First*, plaintiff claims that he was denied relief from the New York City Human Resources Administration for welfare assistance in 2014, in spite of an order, supposedly issued by an administrative law judge, that benefits be given retroactively. If there is a legal basis for that claim, plaintiff needs to seek relief in the proper jurisdiction. This court cannot enter the relief that plaintiff seeks against a state agency for failure to pay welfare benefits. *Second*, plaintiff has filed his claim concerning a Social Security disability decision in the wrong district. Plaintiff has two residences, one in Oakland, California, and the other in Brooklyn, New York, evinced by documents attached to his complaint (Dkt. No. 13-3). A complaint for judicial review of a Social Security decision must be filed "in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court

United States District Court
For the Northern District of California

for the District of Columbia." 42 U.S.C.§ 405(g). Generally, a Social Security case that is improperly venued will be transferred to the proper court. *See Barrett-Barksdale v. Colvin*, 2014 WL 4929444 at *1 (E.D. Cal. Sept. 30, 2014).

**CONCLUSION**

The court has reviewed and hereby **ADOPTS IN FULL** Judge Laporte's report and recommendations. Accordingly, plaintiff's claims against all defendants except for those related specifically to his appeal of the Social Security administrative law judge's decision regarding his date of disability are **DISMISSED**. The clerk shall transfer this action to the United States District Court for the Eastern District of New York. Plaintiff's ex parte application re issuance of summons and service of the complaint (Dkt. No. 13) shall be **HELD IN ABEYANCE** and ruled on by the district to whom this case is transferred.

**IT IS SO ORDERED.**

Dated: May 7, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AROR-ARK O'DIAH,

Plaintiff,

v.

JUDGE WILLIAM DUANE BENTON, JUDGE KENT A. JORDAN, JUDGE RONALD LEE GILMAN, JUDGE TREVOR NEIL MCFADDEN, SEARS ROEBUCK AND COMPANY, LIBERTY MUTUAL INSURANCE, NASSAU COUNTY, PORT AUTHORITY POLICE OFFICER THOMAS EDDINGS, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, COMMISSIONER KENNETH LIPPER AND SUPERINTENDENT/DIRECTOR MICHAEL A. FEDORKO, ACTING COMMISSIONER ANTHONY J. ANNUCCI, AND NEW YORK STATE, DISTRICT ATTORNEY RICHARD BROWN AND NEW YORK CITY, JUDGE ARTHUR COOPERMAN, JUDGE RANDALL ENG, JUDGE SANDRA J. FEUERSTEIN, JUDGE DENIS JACOBS, COURT CLERK CATHERINE O'HAGAN WOLF, ACTING DIRECTOR AND CONSUMER FINANCIAL PROTECTION BUREAU, UNITED STATES DEPARTMENT OF STATE, CEO MEGAN J. BRENNAN AND INSPECTOR GENERAL FOR THE UNITED STATES POSTAL SERVICE AND THE UNITED STATES POSTAL SERVICE, INTERNAL REVENUE SERVICE COMMISSIONER JOHN KOSKINEN AND INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF EDUCATION, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, KINGS COUNTY HOSPITAL CENTER, QUEENS HOSPITAL CENTER, ELMHURST HOSPITAL CENTER, EXECUTIVE DIRECTOR HENCH AND DIRECTOR KOLLER LEE

No. C 19-01854 WHA

**ORDER RE MOTION TO DISMISS**

United States District Court
For the Northern District of California

AND THE STATE OF PENNSYLVANIA, HERTZ CORPORATION RENT A CAR, JERRY OLIK MARK AND HEREFORD INSURANCE COMPANY, USMAN PASHA AND LT WHEELS AND BECKMAN COULTER INC., UNITED PARCEL SERVICE, HEWLET-PACKARD a/k/a HP, JP MORGAN CHASE & CO. a/k/a JP MORGAN CHASE CORPORATE a/k/a CHASE BANK, WESTERN UNION, STAPLES STORE #0065 a/k/a STAPES, INC. a/k/a STAPLES CORPORATION, STEPHEN BILKIS AND MEIR MOZA,

Defendants, Named and Sued in their individual and in their Official Capacities.

_______________________________________/

## INTRODUCTION

In this civil rights action, plaintiff has filed an *in forma pauperis* application and a complaint with over one hundred allegations. For the reasons below, plaintiff's application to proceed *in forma pauperis* is **GRANTED**, and this case is **DISMISSED** without prejudice.

## STATEMENT

In April 2019, plaintiff Aror-Ark O'Diah, requesting to proceed *pro se*, brought this action against forty-six defendants, among whom are federal judges, heads of federal agencies, employees of state and local agencies in New York, and various corporate entities. This case was related to C 19-0816 by April 29 order of the undersigned (Dkt. No. 8). That case has a Referral and Recommendation from a Magistrate Judge, so is dealt with in a separate order.

Here, plaintiff alleges wide-ranging conspiracy against him, from judges retaliating for judicial misconduct complaints he filed, to Sears and Roebuck encouraging a fellow employee to assault plaintiff, to false imprisonment for failing to pay child support. Plaintiff alleges improper calculations of his Social Security benefits, being set on fire while he was in prison, being refused medical treatment due to his lack of health insurance, and a litany of other disjointed allegations (Dkt. No. 1). Plaintiff filed a motion to proceed *in forma pauperis* (Dkt. No. 4).

## ANALYSIS

Congress' goal in creating the *in forma pauperis* statute was to put indigent plaintiffs on a similar footing with paying plaintiffs. Congress recognized, however, that a litigant whose

filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. To prevent such abusive litigation, 28 U.S.C. Section 1915(e)(2) requires federal courts to dismiss a claim filed *in forma pauperis* if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

In defining the meaning of "frivolous" under Section 1915(e)(2)(B), the United States Supreme Court has held that the *in forma pauperis* statute gives judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). "A court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations . . . [A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

Rule 8(a) requires that a complaint contain a short and plain statement of the grounds upon which the court's jurisdiction depends, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks. The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense and to determine whether the doctrine of *res judicata* applies.

In this complaint, plaintiff throws a wide net, naming dozens of defendants, including federal judges, the United States Department of State, the United States Postal Service, the Consumer Financial Protection Bureau, the Internal Revenue Service, United Parcel Service, Hewlett-Packard, Chase Bank, Staples Store, Western Union, such disparate individuals as a driver who allegedly hit plaintiff with his car, and health providers in several locations where plaintiff sought treatment on multiple occasions. The allegations are inter-woven between unconnected defendants over nearly two decades. In the 146 sequentially-numbered paragraphs

United States District Court
For the Northern District of California

of the complaint, not a single viable legal claim is plainly alleged, and no defendant reasonably could be expected to prepare a proper response to this pleading in its current form.

Plaintiff provides no support for his allegations other than his characterizations and therefore his broad conspiracy allegations fail. As drafted, the complaint does not comply with Rule 8(a) and it will be dismissed without prejudice.

**CONCLUSION**

Accordingly, plaintiff's claims against all defendants are DISMISSED.

**IT IS SO ORDERED.**

Dated: May 14, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

# Exhibit H

Exhibit H

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 6 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AROR ARK O'DIAH,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>WILLIAM DUANE BENTON, Judge; et al.,<br><br>Defendants-Appellees. | No. 19-16052<br><br>D.C. No. 3:19-cv-01854-WHA<br>Northern District of California,<br>San Francisco<br><br>ORDER |

Before: FERNANDEZ, SILVERMAN, and TALLMAN, Circuit Judges.

The district court certified that this appeal is not taken in good faith and revoked appellant's in forma pauperis status on appeal. *See* 28 U.S.C. § 1915(a). On December 3, 2019, this court ordered appellant to explain in writing why this appeal should not be dismissed as frivolous. *See* 28 U.S.C. § 1915(e)(2) (court shall dismiss case at any time, if court determines it is frivolous or malicious).

Upon a review of the record, response to the December 3, 2019 order, and opening brief received on October 8, 2019, we conclude this appeal is frivolous. We therefore deny appellant's motion to proceed in forma pauperis (Docket Entry No. 4) and dismiss this appeal as frivolous, pursuant to 28 U.S.C. § 1915(e)(2).

All other pending motions are denied as moot.

**DISMISSED.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------------X
AROR-ARK ARK O'DIAH

**INDEX NO. 1:23-CV-00653-RDM**

**PLAINTIFF**

-against-

CHIEF JUSTICE JOHN G. ROBERTS, ET AL.

DEFENDANTS
------------------------------------------------------------------------X

STATE OF NEW YORK )
)ss.:
COUNTY OF NASSAU )

JONNA SCALICI, being sworn says: I am not a party to the action, am over 18 years of age

That on May 8, 2023 I served a true copy of the annexed **NOTICE OF MOTION, DECLARATION IN SUPPORT WITH EXHIBITS** by depositing the same with an **overnight** delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below :

***Fed-Ex No.*** 7720 7707 2097
Timespeed Worldwide
Aror-Ark Ark O'Diah
3403 Foster Avenue, Apartment 4B
Brooklyn, New York 11210-6439

JONNA SCALICI

Sworn to before me on the
8TH day of MAY 2023

**NOTARY PUBLIC**

**Brian Hasher**
**Notary Public, State of New York**
**No. 02HA6152617**
**Qualified in Nassau County**
**commission Expires Sept. 18, 2026**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------------------------------------------X

AROR-ARK ARK O'DIAH

INDEX NO. 1:23-CV-00653-RDM

PLAINTIFF

-against-

CHIEF JUSTICE JOHN G. ROBERTS, ET AL.

DEFENDANTS

--------------------------------------------------------------------X

NOTICE OF MOTION, DECLARATION IN SUPPORT WITH EXHIBITS

HORING WELIKSON ROSEN & DIGRUGILLIERS P.C.

BY: Richard T. Walsh

RICHRD T. WALSH, ESQ. *Cert (130-1.1)*

Attorneys for Defendant
11 Hillside Avenue

Williston Park, New York 11596

(516) 535-1700